IN THE

# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

KRISTIN ANN TIX, now known as Kristin Ann McGowan,

*Plaintiff-Appellant,*

—v.—

ROBERT WILLIAM TIX,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

## BRIEF FOR PLAINTIFF-APPELLANT

MARK FIDDLER
FIDDLER OSBAND FLYNN LLC
12800 Whitewater Drive,
  Suite 100
Minnetonka, Minnesota 55343
(612) 822-4095

ROLF T. FIEBIGER
THOMAS D. FIEBIGER
FIEBIGER LAW, LLC
6800 France Avenue, S.,
  Suite 190
Edina, Minnesota 55435
(612) 888-6084

*Attorneys for Plaintiff-Appellant*

**SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT**

This case concerns a tribal court holding that it had jurisdiction over a divorce proceeding between a member of the tribe and his nonmember spouse, where neither parents nor their children resided on the reservation. In her complaint below, the nonmember, Plaintiff-Appellant Kristin Ann McGowan, sought a declaratory judgment and injunctive relief alleging that the tribal court lacked jurisdiction over her as a nonmember and therefore the tribal court's rulings as to her marriage were null and void. The parties filed cross-dispositive motions and agreed that the relevant facts are not in dispute and the issues in this case are purely legal. The District Court by Order dated November 26, 2024 denied Appellant's motion for summary judgment and granted summary judgment to Respondent pursuant to Fed. R. Civ. P. 56(f)(1). Appellant timely appealed.

Appellant requests 30 Minutes Oral argument because of the novel issues raised concerning the scope of tribal adjudicatory jurisdiction over nonmembers for off-reservation conduct.

# TABLE OF CONTENTS

PAGE

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT..................................................................i

TABLE OF AUTHORITIES.................................................. iv

JURISDICTIONAL STATEMENT ........................................ 1

STATEMENT OF ISSUE..................................................... 1

STATEMENT OF CASE ....................................................... 2

SUMMARY OF ARGUMENT................................................ 10

STANDARD OF REVIEW .................................................... 12

ARGUMENT......................................................................... 13

I.  The district court erred as a matter of law in finding that the tribe had jurisdiction over appellant as a nonmember based upon the *Montana* consent exception ............................................................ 13

   A. Appellant exhausted her tribal remedies before commencing this federal action............................. 13

   B. Appellant did not consent to tribal adjudicatory jurisdiction by entering into a marital relationship.... 13

   C. The Prairie Island Community Tribal Court of Appeals Erred in Finding Jurisdiction Under *Montana* ........................................................ 22

   D. The District Court's Consensual Relationship Analysis Fails To Find A Nexus Between Nonmember Conduct And Tribal Regulation At Issue............................................................ 26

   E. The Presumption Against Jurisdiction Over Non-Members Carries the Day..................................... 32

PAGE

CONCLUSION ........................................................ 33

CERTIFICATE OF COMPLIANCE ........................................ 35

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Atkinson Trading Co. v. Shirley*,
532 U.S. 645 (2001)........................................... 13, 24, 27, 30

*Attorney's Process and Investigation Services, Inc. v. Sac & Fox Tribe of Mississippi in Iowa*,
609 F.3d 927 (8th Cir. 2010) ........................... 14, 15, 16, 17

*Belcourt Pub. Sch. Dist. v. Herman*,
786 F.3d 653 (8th Cir. 2015) ......................................... 12

*DISH Network Serv. L.L.C. v. Laducer*,
725 F.3d 877 (8th Cir. 2013) ......................................... 26

*Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*,
746 F.3d 167 (5th Cir. 2014) ......................................... 25

*Duro v. Reina*,
495 U.S. 676, 110 S. Ct. 2053 (1990)....................... 12, 30, 31

*Fort Yates Pub. Sch. Dist. #4 v. Murphy*,
786 F.3d 662 (8th Cir. 2015) ....................... 2, 12, 14, 17, 19

*Hornell Brewing Co. v. Rosebud Sioux Tribal Court*,
133 F.3d 1087 (8th Cir. 1998)......................................... 25

*Iowa Mut. Ins. Co. v. LaPlante*,
480 U.S. 9, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987)............ 1, 23

*Johnson v. Jones*,
2005 U.S. Dist. LEXIS 60249 (M.D. Fl. 2005) .................... 23

*Lexington Ins. Co. v. Smith*,
94 F.4th 870 (9th Cir. 2024).................................... 20, 29

*Montana v. United States*,
450 U.S. 544, 101 S. Ct. 1245, 67 L.Ed.2d 493 (1981) .... *passim*

*National Farmers Union Ins. Cos. v. Crow Tribe*,
471 U.S. 845, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985)...... 1, 13

iv

*Nevada v. Hicks*,
 533 U.S. 353 (2001).................................................. 32

*Plains Commerce Bank v. Long Family Land & Cattle Co.*,
 554 U.S. 316, 128 S. Ct. 2709 (2008)........................... 1, 18

*Richter v. Richter*,
 625 N.W.2d 490 (Minn. Ct. App. 2001) ......................... 21

*Sanders v. Robinson*,
 1988 U.S. App. LEXIS 17047 (9th Cir. 1988) ............... 23, 24

*Turpen v. Muckleshoot Tribal Court*,
 No. C22-0496-JCC, 2023 U.S. Dist. LEXIS 119988
 (W.D. Wash. July 12, 2023) ........................................ 21

*Van Aernam v. Nenno*,
 2006 U.S. Dist. LEXIS 38402, 2006 WL 1644691 ............... 22

**Statutes**

25 U.S.C. § 1302 ........................................................ 10

25 U.S.C. § 1903(1) ...................................................... 7

28 U.S.C. § 1291 ......................................................... 1

28 U.S.C. § 1331 ......................................................... 1

Minn. Stat. § 517.01 ................................................... 20

Minn. Stat. § 518.552.................................................... 9

Minn. Stat. § 518B........................................................ 8

Minn. Stat. § 518D.201(a)(1) .......................................... 6

Minn. Stat. § 518D.201(b)............................................... 7

**Other Authorities**

F. Cohen, Cohen's Handbook of Federal Indian Law § 7.01
(5th ed. 2005)........................................................... 14

# JURISDICTIONAL STATEMENT

The district court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. A federal court may determine whether a tribal court has exceeded the lawful limits of its jurisdiction. Whether a tribal court has adjudicative authority over nonmembers is a federal question. *Plains Commerce Bank v. Long Family Land & Cattle Co.,* 554 U.S. 316, 324, 128 S. Ct. 2709, 2716 (2008); *Iowa Mut. Ins. Co.* v. *LaPlante*, 480 U.S. 9, 15, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987); *National Farmers Union Ins. Cos.* v. *Crow Tribe*, 471 U.S. 845, 852-853, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985). The District Court's November 27, 2024 Order disposed of all claims between the parties. This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291. The Notice of Appeal was filed on December 6, 2024.

# STATEMENT OF ISSUE

1. Where an Indian father, a non-Indian mother, and their children, have at all relevant times resided off the reservation, and only the father and children are enrolled members of the Prairie Island Indian Community, does the Tribal Court have jurisdiction over the mother for the purposes of adjudicating dissolution proceedings brought by the father?

The District Court held: in the affirmative.

1

Apposite cases: *Montana v. United States,* 450 U.S. 544, 566, 101 S. Ct. 1245, 67 L.Ed.2d 493 (1981); *Fort Yates Pub. Sch. Dist. #4 v. Murphy*, 786 F.3d 662, 668 (8th Cir. 2015).

## STATEMENT OF CASE

Although this case arose as a divorce proceeding in Hennepin County District Court, State of Minnesota, the matter before the Court now does not invite this Court to entertain or decide *any* matters of state family law. It is purely a jurisdictional question. However, the history of the case is necessary for the Court to understand how this matter got to federal court, and the exhaustive lengths to which Appellant went to challenge tribal jurisdiction in state and tribal courts.

'Appellant Kristin Ann McGowan[1] and Appellee Robert Tix were married on September 27, 2008, in Minneapolis, Minnesota. They have three joint children: RRT, age 15; PCT, age 13; and GMMT, age 7. App. 18 R. Doc. at 1.

Tix and the minor joint children are enrolled members of the Prairie Island Mdewakanton Dakota Indian Community. McGowan is not an

---

[1] Because the tribal court lacked jurisdiction, Plaintiff-Appellant maintains that both parties retain their married surname, Tix. However, for ease of identification Plaintiff-Appellant will be referred to by her maiden name, McGowan, throughout this brief.

enrolled member of the Prairie Island Mdewakanton Dakota Indian Community or any other recognized American Indian Tribe, nor is she eligible for enrollment with any such tribe. The parties have never lived on the reservation. App. 18 R. Doc. at 1

McGowan was a stay-at-home mother for almost the entire marriage—from shortly after RRT's birth forward while Tix continued his education and advanced his career as a physician's assistant in the medical field. The parties' marriage was tumultuous. McGowan testified to ongoing financial control, infidelity, and physical and emotional abuse perpetrated by Tix. App. 18 R. Doc. at 1.

On February 9, 2022, McGowan filed a summons and petition for dissolution with children in Hennepin County District Court, State of Minnesota, Court File No. 27-FA-22-739. That same day, Tix filed a summons and petition for dissolution of marriage in tribal court. Both parties and their children resided in Edina, Minnesota for more than 180 days prior to the simultaneous dissolution filings, a factor which - in the ordinary course of things - would have established exclusive jurisdiction of the state over their divorce. In attempting to serve Tix with the

Hennepin County pleadings, the process server reported difficulties serving Tix. He reported that:

> We spoke with Roberts (*sic*) father who said that Robert has some problems with the law and that he can't have him here. Our server identified himself, said he had some documents and asked where we could find him. His father said he is on the "run" and last he heard, he was staying in a hotel or motel down in Rochester.

App. 18-19 R. Doc. at 1.

On February 18, 2022, the Hennepin County District Court issued an Order for Service by Alternate Means authorizing service by U.S. Mail. That same date, Tix was served with McGowan's pleadings by U.S. Mail. *Id.*

On February 17, 2022, McGowan also filed a petition for an Order for Protection ("OFP") against Tix for herself and on behalf of the three minor children in Hennepin County District Court (District Court File No. 27-DA-FA-22-877). An *ex parte* OFP was issued that same day granting McGowan temporary custody of all three minor children. McGowan testified that she feared for herself and the children, given Tix's history of erratic anger responses, verbal and physical abuse, and the information from the process server about Clayton Tix's report that Tix was "on the run." An evidentiary hearing was set for May 24, 2022.

Tix never moved to contest state jurisdiction in that proceeding. App. 19 R. Doc. at 1.

On March 9, 2022, the Hennepin County District Court held an Initial Case Management Conference ("ICMC") in the dissolution matter, 27-FA-22-739. At the ICMC, the court, counsel, and the parties discussed the issue of jurisdiction in the District Court and the tribal court. On March 16, 2022, Tix filed a notice of motion and motion requesting: (1) dismissal and/or a stay of McGowan's petition for dissolution of marriage in Hennepin County and (2) dismissal of the parties' children from the OFP. *Id.*

While this motion was pending, a petition for children in need of protective services was filed against McGowan by Prairie Island Family Services ("PIFS") in the tribal court on March 23, 2022 (Tribal court File No. CC-0323-22). An admit/deny hearing on that issue was scheduled in the tribal court for April 20, 2022. The parties participated in a facilitated settlement conference with PIFS on March 23, 2022, and March 29, 2022, and agreed Tix would have supervised visits on Mondays, Wednesdays, Fridays, and Saturdays, with PIFS coordinating the supervision. App. 20 R. Doc. at 1.

On March 30, 2022, McGowan filed a responsive notice of motion and motion requesting denial of Tix's March 16 motion. On April 4, 2022, the tribal court issued an order denying McGowan's motion to dismiss the dissolution proceeding in tribal court. The tribal court determined it had jurisdiction over all issues in the dissolution, even though McGowan is not an Indian, not a member of the Tribe, and had never resided on tribal lands. It further asserted jurisdiction over the ongoing child protection proceedings. The tribal court declined to enforce the *ex parte* OFP issued on behalf of the children in Hennepin County, finding that the delay from February 17, 2022, to May 24, 2022, to hear the matter was not in accordance with Minnesota law and that the procedure was irregular under due process of law with regard to denying the father any contact with his children and thus not entitled to full faith and credit under federal law. This despite the fact that regular visitation had already been agreed to by the parties and had been arranged for. Tix App. 20 R. Doc. at 1.

Following a hearing held on April 6, 2022, the State District Court entered an order on the parties' motions regarding dismissal of the dissolution action filed by McGowan in Hennepin County. In its order,

the district court concluded that Minnesota, not the Prairie Island Mdewakanton Dakota Community, was the "home state" for the minor children under Minn. Stat. §518D.201(a)(1), and that accordingly, the State District Court had jurisdiction to make an initial custody determination at the commencement of the proceedings under Minn. Stat. §518D.201(b). The district court also concluded that the Indian Child Welfare Act did not apply to these proceedings under 25 U.S.C. §1903(1). However, the district court still deferred jurisdiction to the tribal court, issuing a stay of the dissolution matter filed by McGowan in that court pending resolution of the dissolution and custody proceeding in the tribal court. App. 21 R. Doc. at 1.

McGowan filed two separate appeals of the state court order transferring jurisdiction to the tribe to the Minnesota Court of Appeals, one on May 11, 2022 and the other on October 12, 2022. These appeals were ultimately dismissed by the state appellate court as non-final and nonappealable orders owing to the stay entered by the district court. App. 21 R. Doc. at 1.

The parties appeared for an evidentiary hearing in district court on McGowan's OFP petition on May 24, 2022. The District Court heard

testimony from the parties, including the children's guardian ad litem, and from other witnesses. The district court found that McGowan had not met her burden of proof necessary for an OFP on behalf of the minor children, but the court did find that McGowan sufficiently established that domestic abuse as defined by Minn. Stat. § 518B was committed against her by Tix. *Id.*

After the case was transferred to tribal court, the evidentiary hearing on the dissolution occurred on May 8, 9, 10, and 12, 2023. The tribal court, by and through the Honorable B.J. Jones, entered its Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree on July 21, 2023. This order *reduced* McGowan's parenting time with her children from a state District Court ordered 50:50 split between her and Tix to a 65:35 split and denied McGowan *any* spousal maintenance. App. 22 R. Doc. at 1.

According to evidence produced at trial, Tix's *per capita* payments fluctuated, but his 1099s from Prairie Island show he received $198,573.38 from Prairie Island in 2021 and $172,068.02 in 2022. Based upon this largely per capita based income (deriving from casino revenues), McGowan proposed a final order to include a permanent

award of spousal maintenance at $5,000 per month. Instead, the tribal court awarded McGowan zero spousal maintenance, finding that "tribal law cannot award spousal support to a non-member if said support is to be paid from per capita benefits," citing the tribe's code, which states:

> The Court may not consider the distribution of net gaming proceeds made from the Community to qualified Community members under the Community's Gaming Revenue Allocation Ordinance (Per Capita Payments) when establishing or amended an order for maintenance." *Id.* Chapter VI, Section 6(d).

By contrast, Minnesota's Family Code does not exclude tribal income from the income counted for any purpose. App. 22 R. Doc. at 1. *See* Minn. Stat. § 518.552. This difference in how the state and tribe define property—and how per capita benefits are sheltered—serves as the backdrop for this jurisdictional dispute and provides at least one motivating factor for Tix's interest in adjudicating the dissolution in tribal court.

Ultimately, the tribal court issued two orders, which were both appealed to the Prairie Island Community Court of Appeals: one, an order denying a Motion to Dismiss for lack of jurisdiction (April 4, 2022); and two, the Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree (July 21, 2023). App. 22 R. Doc. at 1.

On January 26, 2024, the Prairie Island Indian Community Court of Appeals affirmed both Orders of the lower tribal court, finding, *inter alia*, that the tribal court had jurisdiction over McGowan because she consented to tribal adjudicatory jurisdiction based upon her consent to marriage to Tix. It also held that that McGowan had sufficient "minimum contacts" with tribal forum to comport with due process under the Indian Civil Rights Act, 25 U.S.C. § 1302. App. 27 R. Doc. at 30.

On February 16, 2024, McGowan filed her Complaint in the court below requesting injunctive and equitable relief, including an Order finding that the tribal court orders concerning her are null and void and barring the Tix from seeking to enforce them in tribal or state courts, and remanding the parties' dissolution claims to state court as the parties see fit. App. 16 R. Doc. at 1.

## SUMMARY OF ARGUMENT

Under settled federal law, Indian tribes do not have jurisdiction over non-members, except for limited circumstances — none of which are present in this case. The Supreme Court has held, the "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the

tribes, and so cannot survive without express congressional delegation."

*Montana v. United States*, 450 U.S. 544, 564, 101 S. Ct. 1245, 1258 (1981).

The Court enunciated two narrow exceptions to the bar on jurisdiction

over nonmembers:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter **consensual** relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. *Williams* v. *Lee, supra*, at 223; *Morris* v. *Hitchcock*, 194 U.S. 384; [*566] *Buster* v. *Wright*, 135 F. 947, 950 (CA8); see *Washington* v. *Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152-154. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana v. United States*, 450 U.S. 544, 565-66, 101 S. Ct. 1245, 1258

(1981). This case only concerns the issue of whether the Tribe's assertion

of jurisdiction over McGowan falls within the first *Montana* "consensual

relationships" exception. Federal law is clear it does not, as no case has

ever held that an agreement to marry, by itself, is the sort of "consensual

relationship" that would permit tribes to regulate the domestic life of the

nonmember and her children. And regardless of whether Appellant had

entered into a "consensual relationship" with Appellee, tribal jurisdiction

over her fails because she has not voluntarily submitted herself to tribal regulatory jurisdiction by the "arrangements" (marriage) that she has entered into that involve *on-reservation* conduct. *Fort Yates Pub. Sch. Dist. #4 v. Murphy,* 786 F.3d 662, 668 (8th Cir. 2015). Finally, the district and tribal courts' reliance on so called contacts Appellant has had with the tribe (such as going to pow wows or tribal dentists) are inapplicable because the Supreme Court has rejected the significant contacts test in determining the scope of tribal jurisdiction over nonmembers. *Duro v. Reina,* 495 U.S. 676, 683, 110 S. Ct. 2053, 2058 (1990).

## STANDARD OF REVIEW

"The extent of tribal court subject matter jurisdiction over claims against nonmembers of the Tribe is a question of federal law which we review de novo." *Fort Yates Pub. Sch. Dist. #4 v. Murphy*, 786 F.3d 662, 666 (8th Cir. 2015). Likewise, a grant of summary judgment is also reviewed de novo. *Belcourt Pub. Sch. Dist. v. Herman,* 786 F.3d 653, 657 (8th Cir. 2015).

# ARGUMENT

## I. The district court erred as a matter of law in finding that the tribe had jurisdiction over appellant as a nonmember based upon the *Montana* consent exception.

### A. Appellant exhausted her tribal remedies before commencing this federal action.

Challenges to tribal jurisdiction must in general be made to the tribal court in the first instance, and remedies must be exhausted in the tribal court before moving to federal court. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985) (emphasis added) (citations omitted). Cognizant of this tribal court "exhaustion" requirement, McGowan exhausted her tribal remedies by challenging tribal jurisdiction over her in the tribal court system—at both trial and on appeal to the tribal court of last resort - the Prairie Island Court of Appeals. Therefore, this case is properly before the federal court.

### B. Appellant did not consent to tribal adjudicatory jurisdiction by entering into a marital relationship.

At the tribal court trial, the tribal court did not identify any federal statute or treaty that specifically authorized its exercise of jurisdiction over McGowan. As such, the tribal court's adjudicatory authority must stem from its "retained or inherent sovereignty." *See Atkinson Trading*

*Co. v. Shirley*, 532 U.S. 645, 649–50 (2001). The limits of that retained power as it relates to tribal civil jurisdiction have been established primarily through judicial decisions. *See* Felix Cohen, Cohen's Handbook of Federal Indian Law § 7.01 (5th ed. 2005).

The Eighth Circuit Court of Appeals has summarized the law regarding tribal jurisdiction over non-members as follows:

> The federal principles which govern tribal civil jurisdiction over non-members were set out in *Montana v. United States*, and that decision remains the 'pathmarking case' on the subject." *Hicks*, 533 U.S. at 358 (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 445 (1997)). In *Montana*, the Supreme Court concluded that the Crow Tribe lacked the power to prohibit hunting and fishing by non-members on non-Indian fee land *within the reservation* because "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes." 450 U.S. at 564. As a general matter, the Court held, "the inherent sovereign powers of an Indian tribe do not extend to the activities of non-members of the tribe." Id. at 565. Accordingly, "efforts by a tribe to regulate non-members, especially on non-Indian fee land, are *presumptively invalid.*'" *Plains Commerce Bank,* 128 S. Ct. at 2720 (quoting Atkinson, 532 U.S. at 659).

*Attorney's Process and Investigation Services, Inc. v. Sac & Fox Tribe of Mississippi in Iowa*, 609 F.3d 927, 936 (8th Cir. 2010) (emphasis added); *Fort Yates Pub. Sch. Dist. #4 v. Murphy,* 786 F.3d 662, 668 (8th Cir. 2015).

In *Montana*, the U.S. Supreme Court recognized two categories of non-member conduct that may be regulated by tribes, commonly termed the "*Montana* exceptions:"

1. A "tribe may *regulate*, through taxation, licensing, or other means, the activities of non-members who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements."

2. A "tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians ... *within its reservation* when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."

*API,* 609 F.3d at 936 (quoting *Montana*) (emphasis added). This case only involves application of the first *Montana* exception, as Tix did not argue the second exception applied.

While the *Montana* case turned on the question of whether a tribe could *regulate* the activities of non-members on fee land (the Court held it could not), the Eighth Circuit applied the *Montana* test in *API* to determine whether tribes possess *adjudicatory* jurisdiction over non-members.

In analyzing whether a tribal court had adjudicatory jurisdiction over the non-member API, the Eight Circuit held:

Although the issue in the *Montana* case was about tribal regulatory authority over non-member fee land within the reservation, *Montana,* 450 U.S. at 547, 101 S.Ct. 1245, *Montana's* analytic framework now sets the *outer limits* of tribal civil jurisdiction-both regulatory and adjudicatory-over non-member activities *on tribal and non-member land.* The Supreme Court held in *Strate v. A-1 Contractors* that "[a]s to non-members ... a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." *Strate,* 520 U.S. at 453, 117 S.Ct. 1404. Tribal court jurisdiction thus "turns upon whether the actions at issue in the litigation are regulable by the tribe." *Hicks,* 533 U.S. at 367 n. 8, 121 S.Ct. 2304.

*API,* 609 F.3d at 936 (emphasis added). The Court added:

Because "efforts by a tribe to regulate non-members ... are presumptively invalid," the Tribe bears the burden of showing that its assertion of jurisdiction falls within one of the *Montana* exceptions. *Plains Commerce Bank,* 128 S.Ct. at 2720 (quotation marks omitted). Those exceptions are narrow ones and "cannot be construed in a manner that would 'swallow the rule.' " *Id.* (*quoting Atkinson Trading Co.,* 532 U.S. at 655, 121 S.Ct. 1825).

*API* at 936 (emphasis added). The Eighth Circuit determined that API's actions menaced the "political integrity, the economic security, and the health and welfare of the tribe" to such a degree that it imperiled the subsistence of the tribal community, such that tribe's trespass and conversion of tribal trade secret claims fell within jurisdiction of tribal court under the *Montana* exceptions to the principle that tribe generally lacked authority to regulate non-member conduct. *Id*. at 939. As such, the *on-reservation conduct* of a non-Indian contractor was regulable due

to its severity, and therefore was subject to adjudicatory jurisdiction by the tribal court. *API* demonstrates how strictly this Court construes the *Montana* exceptions.

This case is solely focused on the the first *Montana* exception, where this Court has held the consensual relationship must be based upon voluntary private "arrangements" tied to tribal self-government or land. As this Court has held:

> The [*Montana*] Court (this is an opinion, bear in mind, not a statute) obviously did not have in mind States or state officers acting in their governmental capacity; *it was referring to private individuals **who voluntarily submitted themselves to tribal regulatory jurisdiction** by the arrangements that they (or their employers) entered into. This is confirmed by the fact that all four of the cases in the immediately following citation involved private commercial actors. See* [*Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152, 100 S. Ct. 2069, 65 L. Ed. 2d 10 (1980)] (nonmember purchasers of cigarettes *from tribal outlet*); [*Williams v. Lee*, 358 U.S. 217, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959)] (general store *on the Navajo reservation*); [*Morris v. Hitchcock*, 194 U.S. 384, 24 S. Ct. 712, 48 L. Ed. 1030 (1904)] (ranchers *grazing livestock and horses on Indian lands* "under contracts with individual members of said tribes"); *Buster v. Wright*, 135 F. 947, 950 (8th Cir. 1905) (challenge to the [**11] "permit tax" charged by a tribe to nonmembers for "the privilege . . . of *trading within the borders*"). *Id.* at 372 (emphasis added).

*Fort Yates Pub. Sch. Dist. #4 v. Murphy,* 786 F.3d 662, 668 (8th Cir. 2015) (emphasis added).

The basis for the consent requirement reflects the fact that the Bill of Rights and the right to petition government for redress of grievances does not apply to nonmembers of tribes who are compelled to appear in tribal courts:

> The Bill of Rights does not apply to Indian tribes… Consequently, those laws and regulations may be fairly imposed on nonmembers only if the nonmember has consented, either expressly or by his actions. *Even then, the regulation must stem from the tribe's inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations.* See *Montana*, 450 U.S., at 564, 101 S. Ct. 1245, 67 L. Ed. 2d 493.

*Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337, 128 S. Ct. 2709, 2724 (2008) (emphasis added).

Here, the tribal court had no basis under the *Montana consensual relationship* exception to regulate, much less adjudicate, McGowan's off reservation domestic relations matters, including the marital dissolution issues, custody, and parenting rights over her children, allocation of the real and personal property acquired during the marriage, child support, and spousal maintenance. Yet remarkably, Tix and the tribal court relied exclusively on the first *Montana* exception. In assuming jurisdiction over this case, the tribal court asserted:

> [T]his case involves the consensual relationship of marriage between the Parties. The Respondent voluntarily entered into

that relationship with the Petitioner and benefited from his membership and the Parties' children's membership in the Community during the marriage, but now asserts that the Community's courts have no authority to dissolve her marriage and allocate the rights of the parties."

App. 10. But as noted in *Fort Yates,* this admittedly private marital relationship is not contractual in nature, was not based on the reservation, and was not an arrangement that put Appellant on notice that she would be subject to tribal regulation.

The types of consensual relationships intended to be covered by *Montana* are further demonstrated in decisions from other Courts of Appeal. For example, the 9th Circuit has held the *Montana* exception applies based on multiple insurance contracts between an insurance company (Lexington) and the tribe, contracts that covered tribal lands:

> Lexington's insurance contract with the Tribe squarely satisfies *Montana*'s consensual-relationship exception. The insurance policy establishes a contract between Lexington as the insurer and the Tribe, Port Madison, and subsidiary entities as beneficiaries. In exchange for coverage, Lexington received premiums from the Tribe and Port Madison, and Lexington renewed the policies [**24] many times over the course of several years. Thus, Lexington entered into a "relationship[ ] with the tribe . . . through commercial dealing [and] contracts." *See Montana*, 450 U.S. at 565. There is no dispute that [*884] the relationship was mutual and consensual.

> We must also "consider the circumstances and whether under those circumstances the non-Indian defendant should have reasonably

anticipated that his interactions might 'trigger' tribal authority." *Water Wheel*, 642 F.3d at 818 (quoting *Plains Commerce*, 554 U.S. at 338). *It should have been no surprise to Lexington that its contract with the Tribe would trigger tribal authority.* **The transaction had tribe and tribal lands written all over it.** Because of its participation in the Tribal Program—an insurance program marketed specifically to tribes—Lexington was objectively on notice that it was taking advantage of a program targeted at providing insurance to tribes. Additionally, Lexington knew that it was contracting with the Tribe to *provide insurance coverage for businesses and properties on tribal trust land. See id.* at 817 (holding that a consensual relationship was established when the nonmember "corporation had full knowledge the leased land was tribal property").

*Lexington Ins. Co. v. Smith,* 94 F.4th 870, 883-84 (9th Cir. 2024) (emphasis added).

Appellant can find no case law holding that a marriage—standing alone— constitutes the sort of consensual "arrangement" that gives rise to tribal jurisdiction over a nonmember marital partner. And even if the marriage between the parties were deemed a consensual and contractual relationship with the tribe and or a tribal member—which McGowan does not concede—that relationship was not one that put McGowan on notice that the tribe might regulate her.[2] It was not a contract between

---

[2] Marriage, "so far as its validity in law is concerned," is a contract. Minn. Stat. § 517.01 [**7] (2000). That marriage is a contract for determining its *validity* does *not* mean marriage is a contract in the

McGowan and *the tribe*. To use the language of the 9th Circuit, the marriage "contract" between *the parties* here did not have "tribe and tribal lands written all over it."

By contrast, the single case cited by the district court to find tribal jurisdiction over nonmember who resides off reservation, *Turpen v. Muckleshoot Tribal Court,* in fact supports McGowan's argument. There, the court found a non-Indian plaintiff had anticipated tribal regulation, where, "Plaintiff entered into a consensual marriage with a tribe member, *lived and worked on the Tribe's reservation*, and **consented to numerous contracts** directly with the Tribe to help with housing payments. Viewed in totality, this is sufficient to show consent needed for the Tribal Court to have subject matter jurisdiction here." *Turpen v. Muckleshoot Tribal Court*, No. C22-0496-JCC, 2023 U.S. Dist. LEXIS 119988, at *8-9 (W.D. Wash. July 12, 2023) (emphasis added). And here, where McGowan and Tix were married under Minnesota state law, which deems marriage a contract, nothing under state law put her

---

usual sense of that term." *Richter v. Richter*, 625 N.W.2d 490, 493 (Minn. Ct. App. 2001). In the usual sense of the term, a formal "contract" may have provisions for governing law, which is absent in this case.

on notice that her marriage and the terms of its dissolution would be governed by tribal law.

## C. The Prairie Island Community Tribal Court of Appeals Erred in Finding Jurisdiction Under *Montana.*

The Prairie Island Community Tribal Court of Appeals affirmed the lower tribal court order finding jurisdiction, holding "[s]everal federal district courts have also addressed the question of tribal jurisdiction over non- members in divorce and child custody proceedings." Interestingly, none of them are on point. Because none identify which *Montana* exception applies giving rise to jurisdiction over nonmembers. Each is examined in turn.

The court cited *Van Aernam v. Nenno,* 2006 U.S. Dist. LEXIS 38402, 2006 WL 1644691 (finding that the Seneca Nation Peacemaker Court properly exercised jurisdiction over a divorce proceeding involving a Seneca citizen and a non-member). This case is inapposite. In *Van Aernam,* the federal district court found subject matter jurisdiction over a §1983 claim seeking to enjoin a state court judge from exercising jurisdiction over a case involving concurrent jurisdiction between state and tribal courts. So the central question is different. Additionally, that

court undertook no "consensual dealings" analysis under *Montana* whatsoever. Moreover, the facts are plainly distinguishable, as they show an Indian husband and non-Indian wife had lived together for several years *on the reservation.*

The tribal court of appeals also cited *Johnson v. Jones*, 2005 U.S. Dist. LEXIS 60249 (M.D. Fl. 2005) (Tribal court had "inherent sovereign authority" to determine *dependency* of member children who, along with their parents, did not reside on tribal land). But that court never addressed the *Montana* consensual dealings argument on the merits because the case was dismissed for failure of the plaintiff to exhaust their tribal court remedies as required by *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987). *See Johnson v. Jones*, No. 6:05-cv-1256-Orl-22KRS, 2005 U.S. Dist. LEXIS 60249, at *9 (M.D. Fla. Nov. 3, 2005). So the central question was never addressed there, either.

The tribal court of appeals also held, "[f]ederal appellate courts have also favored tribal jurisdiction over divorce and child custody matters. *See Sanders v. Robinson*, 1988 U.S. App. LEXIS 17047 (9th Cir. 1988) (Tribal court had jurisdiction over divorce between Northern

Cheyenne Indian member and non-Indian who resided on the Reservation and had three children who were Tribal members)." Again, *Sanders* is also distinguishable because the husband and wife resided on the reservation. Even the *Sanders* court found it a relevant detail that *both* parents and children resided on the reservation. For in *Sanders*, the 9th Circuit Court noted:

> Two leading treatises on Indian law have assumed that tribal courts would have at least concurrent jurisdiction in divorce cases involving an Indian plaintiff and non-Indian defendant, *where the non-Indian defendant resided on the reservation during the marriage.* W. Canby, *American Indian Law* 146 (1981) (referring specifically to divorce jurisdiction); F. Cohen, *Handbook of Federal Indian Law* 342 (1982 ed.)(civil jurisdiction generally)."

*Sanders v. Robinson*, No. 87-4192, 1988 U.S. App. LEXIS 17047, at *6 (9th Cir. Dec. 8, 1988) (emphasis added). Consequently, the difference that residing on tribal lands makes is that it gives rise to the required nexus established in *Atkinson Trading* between a tribal government power to regulate domestic relations and tribal lands (discussed in more detail *infra*). In any event*, Sanders* did not address the underlying issue presented here—whether Appellant consented to tribal jurisdiction within the meaning of *Montana*.

Thus the tribal court of appeals cites *no* federal authority establishing *Montana* consent-based authority to warrant its exercise of jurisdiction over a nonmember, where neither husband, wife, nor children resided on the reservation. This distinction is entirely consistent with other 8th Circuit holdings. See *Hornell Brewing Co. v. Rosebud Sioux Tribal court*, 133 F.3d 1087, 1091 (8th Cir. 1998) ("Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring *outside their reservations*."). The district court below attempts to distinguish *Hornell* because the case applied the second *Montana* exception, but it failed to recognize that the limits against off-reservation regulation apply irrespective of which *Montana* exception applies. *Hornell Brewing*, 133 F.3d 1087 at 1091 ("the parties fail to cite a case in which the adjudicatory power of the tribal court vested over activity occurring outside the confines of a reservation").

This is not a one-off analysis, as the 5th Circuit has stated agreement with this Court's analysis in *Hornell*. *See Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*, 746 F.3d 167, 176 n.7 (5th Cir. 2014)("Although the Supreme Court has never explicitly held that Indian

tribes lack inherent authority to regulate nonmember conduct that takes place outside their reservations, this is at least strongly implied"). And in *dicta*, this Court has suggested that the *Montana* exceptions are applicable where some but not all alleged tort claims concern conduct that took place on reservation lands. *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 884 (8th Cir. 2013) ("Even if the alleged abuse of process tort occurred off tribal lands, jurisdiction would not clearly be lacking in the tribal court because the tort claim arises out of and is intimately related to DISH's contract … and that contract relates to *activities on tribal land*."). It is clear that jurisdiction of the tribal court requires more than is present in this case.

> **D.    The District Court's Consensual Relationship Analysis Fails To Find A Nexus Between Nonmember Conduct And Tribal Regulation At Issue.**

Likewise, the district court's consent analysis is flawed, as it fails to show how McGowan's consensual relation with Tix has a nexus to the tribe's marriage laws – or tribal lands. The Supreme Court has held:

> *Montana*'s consensual relationship exception requires that the tax or *regulation imposed by the Indian tribe have a nexus to the consensual relationship itself*. In *Strate*, for example, even though respondent A-1 Contractors was on the reservation to perform landscaping work for the Three

Affiliated Tribes at the time of the accident, we nonetheless held that the Tribes lacked adjudicatory authority because the other nonmember "was not a party to the subcontract, and the Tribes were strangers to the accident." 520 U.S. at 457 (internal quotation marks [***901] and citation omitted). A nonmember's consensual relationship in one area thus does not trigger tribal civil authority [**1834] in another -- it is not "in for a penny, in for a Pound."

*Atkinson Trading Co. v. Shirley,* 532 U.S. 645, 656, 121 S. Ct. 1825, 1833-34 (2001) (emphasis added). In *Atkinson*, a non-Indian who owned a hotel on Indian lands was subjected to a hotel occupancy tax by the Navajo Nation. He objected, arguing that where he was an "Indian trader" who did commerce with the tribe on tribal lands, the occupancy tax had nothing to do with his relationship as hotelier with tribal non-member guests who reached his hotel on public rights of way. *Atkinson*, 532 U.S. at 647, The Supreme Court found the imposition of the tax was not valid. *Id.* There, the consent exception did not apply.

But the district court below adopted precisely this "in for a penny, in for a pound analysis." For below, the court found:

- McGowan voluntarily entered a marriage with Tix, a member of the PIIC. Although the couple did not live on the tribal land, throughout their marriage, the couple's financial needs were primarily met through the per capita payments Tix received

from the Tribe. In addition, the couple's children received health and dental insurance coverage through the Tribe. Ex. G.¶ 24 ("Father shall continue to maintain health and dental insurance coverage for the minor children through the Prairie Island Mdewakanton Dakota Community for the benefit of the minor children.").[3]

- Kristin and Robert themselves also received medical and dental insurance coverage from the Tribe. Ex. A ¶ 11 ("Petitioner [and] Respondent . . . have been provided free medical and dental insurance coverage from the Prairie Island Mdewakanton Dakota Community.").

- And during the marriage, Kristin "attended pow wows with the minor children." *Id.* ¶ 12. Based on this record, the Court finds that McGowan entered a consensual relationship with Tix, a member of the Tribe, and McGowan could reasonably anticipate

---

[3] It is unclear how the district court may rely on a tribal court order for father to maintain tribal insurance, and then rely on this order to assert mother has a consensual relationship with the tribe justifying its jurisdiction over her.

from her dealings with Tix and the tribe that the Tribal Court could exercise jurisdiction over their marriage dissolution.

First, Appellant's receipt of per capita funds was incidental. By sharing in those funds, she did not consent to regulation of her marriage off reservation. There is simply no nexus. "[Courts] must … consider the circumstances and whether under those circumstances the non-Indian defendant should have reasonably anticipated that his interactions might 'trigger' tribal authority." *Lexington Ins. Co. v. Smith*, 94 F.4th 870, 884 (9th Cir. 2024). How does Appellant's visit to a tribal dentist show consent to marital regulation by the tribe? If father visited a dentist in a county outside where he and his family lived, would that mean that county's court would have jurisdiction over him? That is "in for a penny" reasoning. Is McGowan triggering tribal authority over her family life by going to a pow wow?

Because McGowan participated in one activity, whether visiting a tribal dentist, receiving per capita funds that she did not contract for and which in fact were *denied to her* for spousal maintenance purposes, or attending a pow wow, the court has shown no nexus with tribal marriages and dissolution laws that would trigger their application. If anything, it

appears the district court adopted its own version of an *International Shoe* "contacts" test, implicitly holding Appellant's contacts with the tribe constituted consent to regulation.

And this is the crux of the court's error. The receipt of benefits from the tribe does not create consent. In *Atkinson*, the Supreme Court held:

> a nonmember's actual or potential receipt of tribal police, fire, and medical services does not create the requisite consensual-relationship connection; a broad reading of the consensual-relationship rule--on the basis of an argument that all non-Indian fee lands within a reservation benefit, to some extent, from the advantages of a civilized society that are offered by the Indian tribe--is to be rejected, as such a reading ignores the dependent status of Indian tribes and subverts the territorial restriction upon tribal power.

*Atkinson*, 532 U.S. at 647.

Nor can the receipts of benefits or participation in tribal cultural life be considered as contacts indicating consent to jurisdiction, for the Supreme Court has rejected a contacts test as relevant in defining the scope of tribal jurisdiction over nonmembers. In *Duro v. Rena*, the Supreme Court considered whether one tribe may assert criminal jurisdiction over an Indian from another tribe. It held it could not, absent express Congressional delegation. In *Duro*, the 9th Circuit Court of Appeals in an opinion below had justified tribal jurisdiction over

petitioner by his significant contacts with the Pima-Maricopa Community, such as residing with a member of the Tribe on the reservation and his employment with the Tribe's construction company. *Duro v. Reina,* 495 U.S. 676, 683, 110 S. Ct. 2053, 2058 (1990). Yet the Court rejected this test, holding:

> The Court of Appeals sought to address some of these concerns [gaps in tribal jurisdiction over other nonmember Indians] by adopting a "contacts" test to determine which nonmember Indians might be subject to tribal jurisdiction. *But the rationale of the test would apply to non-Indians on the reservation as readily as to Indian nonmembers.* Many non-Indians reside on reservations, and have close ties to tribes through marriage or long employment. Indeed, the population of non-Indians on reservations generally is greater than the population of all Indians, both members and nonmembers, and non-Indians make up some 35% of the Salt River Reservation population. See U.S. Dept of Commerce, Bureau of Census, Supplementary Report, American Indian Areas and Alaska Native Villages: 1980 Census of Population 16-19. **The contacts approach is little more than a variation of the argument that any person who enters an Indian community should be deemed to have given implied consent to tribal criminal jurisdiction over him. We have rejected this approach for [****40] non-Indians.** It is a logical consequence of that [*696] decision that nonmembers, who share relevant jurisdictional characteristics of non-Indians, should share the same jurisdictional status.

*Duro v. Reina,* 495 U.S. at 695-96 (emphasis added). The district court's analysis is nothing more than a significant contacts test, a test rejected by the Supreme Court and which should be reversed here.

### E. The Presumption Against Jurisdiction Over Non-Members Carries the Day.

The tribal court simply had no authority to assert extra-territorial adjudicatory jurisdiction over Appellant in the dissolution matter under the first *Montana* exception. The tribal court's subjection of Appellant to its jurisdiction, which resulted in a highly prejudicial process, with a fundamentally different treatment of marital property than would be expected in state court, is contrary to federal law:

> …a presumption against tribal-court civil jurisdiction squares with one of the principal policy considerations underlying *Oliphant*, namely, an overriding concern that citizens who are not tribal members be "protected ... from unwarranted intrusions on their personal liberty," 435 U.S., at 210, 98 S.Ct. 1011.

*Nevada v. Hicks*, 533 U.S. 353, 384 (2001) citing *Oliphant v. Suquamish Tribe*, 435 U.S. 191, 210 (1978)(holding tribe had no criminal jurisdiction to try nonmember). The tribal court's rationale, and its purported vindication by the district court below, fails to rebut the *presumption against* exercising tribal jurisdiction over nonmembers. The tribal court's exercise of jurisdiction resulting in determinations regarding the entirety of the marital dissolution issues, are presumptively invalid and constitute an error of federal law.

# CONCLUSION

The tribal court's assumption of jurisdiction against her is a gross intrusion into her personal liberty. But to have such power and sway over McGowan and her children, liberty requires that the courts of the land having power over her are ones of the *sovereign to her* (and Tix)—the sovereign courts of the State of Minnesota. The parties' marital business was conducted in the State of Minnesota. The State of Minnesota is the only proper jurisdiction for the parties to dissolve their marriage. That is what is compelled by the *Montana* decision.

For the above-stated reasons, Plaintiff-Appellant respectfully requests that the Eighth Circuit Court of Appeals reverse the order granting summary judgment for Tix and find the tribal court orders dissolving her marriage are null and void for lack of jurisdiction over her as a nonmember.

Respectfully submitted,

Dated: January 21, 2025

**FIDDLER OSBAND FLYNN LLC**

By: /s/ Mark D. Fiddler
Mark D. Fiddler (#197853)
12800 Whitewater Drive, Suite 100
Minnetonka, MN  55343
Tel: (612) 822-4095
mark@fiddlerosband.com

and

Rolf T. Fiebiger (#391138)
FIEBIGER LAW, LLC
6800 France Ave S., Suite 190
Edina, MN 55435
Telephone: 612.888.6084
rolf@fiebigerlaw.com

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

The above signed hereby certify that Appellant's Brief conforms to the to the requirements of the applicable rules for a brief, is produced with a proportional font, Century Schoolbook, 14 point, and the length of this document is 7,077 words. This document was prepared using Microsoft Word for Mac, Version 16.87.