IN THE

# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

KRISTIN ANN TIX, now known as Kristin Ann McGowan,

*Plaintiff-Appellant,*

—v.—

ROBERT WILLIAM TIX,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

## ADDENDUM TO BRIEF FOR PLAINTIFF-APPELLANT

MARK FIDDLER
FIDDLER OSBAND FLYNN LLC
12800 Whitewater Drive,
  Suite 100
Minnetonka, Minnesota 55343
(612) 822-4095

ROLF T. FIEBIGER
THOMAS D. FIEBIGER
FIEBIGER LAW, LLC
6800 France Avenue, S.,
  Suite 190
Edina, Minnesota 55435
(612) 888-6084

*Attorneys for Plaintiff-Appellant*

# ADDENDUM INDEX

PAGE

Prairie Island Mdewakanton Dakota Community
Court of Appeals Opinion, Published on
January 26, 2024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ADD.001

United States District Court, District of Minnesota
Complaint and Prayer for Declaratory and
Injunctive Relief, Filed on May 16, 2024 . . . . . . . ADD.016

United States District Court, District of Minnesota
Order on Motion for Summary Judgment,
Filed on November 26, 2024 . . . . . . . . . . . . . . . . . . . . ADD.025

United States District Court, District of Minnesota
Order on Motion for Summary Judgment,
Filed on November 26, 2024 . . . . . . . . . . . . . . . . . . . . ADD.025

Judgment Appealed From, Filed on
November 27, 2024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ADD.048

**PRAIRIE ISLAND MDEWAKANTON DAKOTA COMMUNITY**

**IN THE COURT OF APPEALS**

In Re Matter of:

Kristin Ann Tix, n/k/a Kristin Ann McGowan,

      Appellant,

v.                                  No. CA-0209-22

Robert William Tix,                    **OPINION**

      Respondent.

_____

Justices Deer, Soule, WhiteEagle.

## CASE BACKGROUND

This matter came before the Prairie Island Indian Community (PIIC) Court of Appeals on the appeal of the final court order filed on July 21, 2023, by the Honorable B.J. Jones following a four-day trial in May 2023, which included findings of fact, conclusions of law, and order for judgment and decree. The PIIC held its oral argument on December 12, 2023.

The record establishes that the parties were married on September 27, 2008, in the City of Minneapolis, County of Hennepin, State of Minnesota. During their marriage, the parties had three children: R.R.T., DOB 06/27/2009, P.C.T., DOB 11/23/2011, and G.M.M.T., DOB 08/08/2017. Mr. Tix and the three children are enrolled members of the Prairie Island Mdewakanton Dakota Community. Ms. McGowan is not an enrolled member of PIIC. The parties resided in Edina, Minnesota before commencement of dissolution proceedings.

The pertinent facts are as follows. Respondent commenced an action for dissolution in the PIIC Community Court. Appellant commenced an action for dissolution in Hennepin County, Minnesota, District Court. In April 2022, the Hennepin County Court issued a 13-page Order, concluding that "there is concurrent jurisdiction over all aspects of the dissolution, including child custody" and staying the Hennepin County action "pending resolution of the dissolution and custody proceeding in the tribal court of the Prairie Island Mdewakanton Dakota Community."

After this case commenced in PIIC Court, Ms. McGowan filed a motion to dismiss based on lack of jurisdiction. The Honorable B.J. Jones oversaw a hearing on this matter, and issued an order denying motion to dismiss on April 5, 2022. The Prairie Island Tribal Court held a 4-day dissolution trial in May 2023. On July 21, 2023, the Prairie Island Tribal Court issued its 65-page *Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree*, which contemplated and determined the complex issues before it, including but not limited to jurisdiction. The Court's findings of fact pertinent to the jurisdictional issues are discussed in this Opinion.

## LEGAL ANALYSIS

Appellant's "sole issue on appeal is whether the Tribal Court had personal jurisdiction over Appellant, a non-member and non-Indian party, in the dissolution proceedings initiated by Respondent." Appellant's Brief, p. 10. Appellant contends that the Community has not authorized its courts to exercise jurisdiction over a nonmember who does not reside on the reservation. Appellant also argues that "Federal law does not allow the . . . Community's Tribal Court to exercise personal jurisdiction regardless of Tribal Law." Appellant's Brief, p. 13. While Appellant states that "[u]nder settled federal law, Indian tribes do not have **personal jurisdiction** over non-members, except for limited circumstances," Appellant's Brief, p. 14 (emphasis added), Appellant goes on to cite federal law cases that govern authority of Tribal Courts to exercise **subject matter jurisdiction** over cases involving nonmembers.[1]

In response, Respondent addresses whether the Community Court may exercise personal jurisdiction over Appellant and whether the Community Court has subject matter jurisdiction over this case involving a nonmember. Respondent contends that the Community's Domestic Relations Ordinance authorizes personal jurisdiction over Respondent and subject matter jurisdiction over the parties' dissolution action, that the Community Court's exercise of personal jurisdiction over Respondent does not offend the U.S. Constitution's Due Process Clause, and that the Community Court is not precluded from exercising subject matter jurisdiction over the parties' dissolution by federal common law, i.e., *Montana v. U.S.*, 450 U.S. 544 (1981) and its progeny.

In denying Appellant's motion to dismiss, the Community Court held that it had concurrent jurisdiction (with Minnesota state court) over certain aspects of the parties' domestic relationship and exclusive jurisdiction over other aspects. The Court also found that Appellant had "sufficient contacts with the Community to warrant the 'minimum contacts' standard of *International Shoe*,"

---

[1] The Court recognizes that federal law aspects of personal jurisdiction and subject matter jurisdiction under *Montana* are sometimes expressed in similar terms. *See Smith v. Salish Kootenai College*, 434 F.3d 1127, 1138 (9th Cir. 2006) ("The Court's 'consensual relationship' analysis under *Montana* resembles the Court's Due Process Clause analysis for purposes of personal jurisdiction."). As explained infra, for a court to exercise personal jurisdiction over a defendant, such exercise must meet the fair play required by the Due Process Clause. For a Tribal Court to have subject matter jurisdiction over a dispute involving a nonmember, the Court must have authority under common law or a Congressional grant. The legal principles are different and will be discussed separately in this opinion. Although Appellant characterized the legal issue herein as personal jurisdiction, the Court will address both personal and subject matter jurisdiction.

and that "[t]his case involves the consensual relationship of marriage between the Parties" that fits within the first "*Montana* exception" that allows a Tribal Court to "adjudicate the interests of non-Indians." Order Denying Motion to Dismiss, April 4, 2022, p. 6.

Both parties agree that jurisdiction is an issue of law subject to *de novo* review by this Court. *See Baker v. Baker*, Prairie Island Mdewakanton Dakota Community Court of Appeals, AP-1030-18 (Aug. 2018).

In this opinion, we analyze whether the Community's Court may exercise personal jurisdiction over Appellant, a nonmember, and whether the Community Court has subject matter jurisdiction over a dissolution action between member-husband and nonmember-wife who do not reside on the Prairie Island Indian Community Reservation. Concerning both issues, we look first to the Community's ordinances to determine whether the Community has authorized its courts to exercise jurisdiction over the parties and the action. Tribal courts are best positioned to understand and articulate jurisdiction under tribal law. *See City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554 (8th Cir. 1993).

We also examine federal law to determine whether the U.S. Constitution or federal common law precludes the Community Court's exercise of jurisdiction over Appellant and the action.

We conclude that the Community Court may exercise personal jurisdiction over Appellant and has subject matter jurisdiction over the parties' dissolution proceeding. Therefore, we affirm the Community Court's Order Denying Motion to Dismiss (April 4, 2022) and Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree (July 21, 2023).

**THE COMMUNITY COURT MAY EXERCISE PERSONAL JURISDICTION OVER RESPONDENT**

Appellant contends that the Community's courts may not exercise personal jurisdiction over her, as she is a non-member who has never resided on the Prairie Island Reservation. She argues that the Community's ordinances do not authorize the courts to exercise such jurisdiction over her or the dissolution action between her and Respondent.

In determining personal jurisdiction, we examine whether the Community's laws authorize its courts to exercise authority over a non-resident, nonmember in the circumstances of the action. If the Community has authorized such an exercise of authority, we determine whether the U.S. Constitution's Due Process Clause permits such reach of authority.

In contending that the Community has not authorized its courts to exercise jurisdiction over nonmembers, Appellant cites the Community's Domestic Relations Code, Section 2(a):

> The Community has the inherent sovereign power to regulate the domestic relations of its members concurrently with the State of Minnesota. Indian Tribes exercise no more important power than the power to protect and govern the domestic relations of their members. The purpose of this Ordinance is to inform Community members of that inherent

ADD.003

sovereign authority and enable them to use their own Tribal forum to resolve domestic relations issues.[2]

This Purpose Statement authorizes the Community's courts to govern the domestic relations of members. This section does not require that two or more Community <u>members</u> be involved in domestic relations for the courts to regulate those relations. The ordinance references "members" plural because it is intended to apply to all Prairie Island members (including those who may have non-Native spouses). It is evident that the Community also granted authority to its courts to regulate domestic relations between a member and nonmember in other sections of the Domestic Relations Ordinance.

The Prairie Island Indian Community Courts Ordinance, Section 6,[3] establishes the reach of the Tribal Court over prospective parties. In relevant respects, the Ordinance provides:

> a. <u>Prairie Island Mdewakanton Dakota Community Tribal Court Jurisdiction</u>. The jurisdiction of the Tribal Court shall extend to: . . .

>> 3. All members of the Tribe, wherever located, exercising tribal rights pursuant to federal, tribal, or state law.

>> 4. All persons and property outside the exterior boundaries of the Reservation included within the jurisdiction of the Tribe pursuant to federal or tribal law, including any person who personally or through an agent does any of the following insofar as a cause(s) of action arises from the doing of such act:

>>> …E. Any Prairie Island Indian Community member and their spouse living in a marital union as authorized by the Domestic Relations Ordinance.

Thus, we conclude that the first step in determining personal jurisdiction is satisfied – the Community has authorized the court's authority to exercise authority over Appellant, the "spouse [of a member] living in a marital union."

The second step in deciding personal jurisdiction is determining whether exercising judicial authority over the party in this case would violate the U.S. Constitution's Due Process Clause.

---

[2] Appellant cites to Prairie Island Indian Community Domestic Relations Code, Title 3, Chapter III, § 3, which is now Section 2(a) of the Domestic Relations Ordinance. The provisions are substantively the same.

[3] Section 6(a)(6) provides: "The jurisdiction invoked by this Ordinance over any person, cause of action, or subject shall be concurrent with any valid jurisdiction over the same of the courts of the United States, any state, or any political subdivision thereof; provided, however, this Ordinance does not recognize, grant, or cede jurisdiction to any other political or governmental entity in which jurisdiction does not otherwise exist in law."

The U.S. Supreme Court held in *Talton v. Mayes*, 163 U.S. 376 (1896), that Tribal governments were not subject to Fifth Amendment protections, including due process. But the Indian Civil Rights Act (ICRA), 25 U.S.C. §1302, passed in 1968, extended those protections to Tribal actions:

> (a) In general. No Indian tribe in exercising powers of self-government shall— . . . (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law…

In the seminal case of *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that a court's exercise of personal jurisdiction over a defendant was subject to due process protections. In *Int'l Shoe*, the defendant, a corporation with its principal place of business in Missouri, claimed that subjecting the defendant to jurisdiction in Washington courts would deny the defendant due process. The U.S. Supreme Court held that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. at 316. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Id*. at 319. *See also Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565 (Minn. 2004).

Appellant contends that "[t]he Tribal Court's subjection of Appellant to its jurisdiction . . . result[ed] in a highly prejudicial process with fundamentally different treatment that would be expected in a non-tribal court," Appellant's Brief, p. 19.  However, Appellant has not identified any aspects of the Court's process or treatment that it claims were prejudicial or fundamentally different. The Community Court held a four-day trial on the parties' disputes and issued a detailed 65-page order with its findings and conclusions. Nothing on the record indicates that the Appellant has been denied proper notice, and there is no evidence that the Community Court somehow violated individual liberties.[4]

Here, Appellant had numerous contacts with the Prairie Island Indian Community, listed in the Community Court's opinions.[5] She married a Community member. Her children with Respondent are Community members. The family derived their principal income and their assets from per capita payments that Respondent received from the Community. Both parties and their children received health insurance from the Community. Appellant supported the children's connections with the Community by attending cultural events in the Community with the children.

---

[4] While the federal Indian Child Welfare Act does not apply to this matter, it is clear that Congress has articulated a policy that tribal courts are uniquely situated to make decisions about tribal children. *Haaland v. Brackeen,* 599 U.S. __ (2023). In the case at bar, the Appellant provides no evidence that the tribal court is "unfair" to outsiders.

[5] In contesting only jurisdiction on this appeal, Appellant has not challenged any of the Community Court's findings of fact in the Order Denying Motion to Dismiss or the final Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree.

ADD.005

The burden of participating in the Community's Court is negligible. Appellant's residence and the Prairie Island Community are within the same state – Minnesota – and are less than 50 miles apart.[6] While the couple, in this case, did not reside on the reservation itself, it is worth noting that the PIIC reservation is quite small. According to the PIIC, "[t]he reservation, which is located on the shores of the Mississippi and Vermillion Rivers, just north of Red Wing in southeastern Minnesota's Goodhue County, consists of approximately 534 acres of original reservation land and 2,774 acres of other trust land close to the existing reservation. Much of that land is located in the 100-year floodplain, including 1,295 acres of non-buildable land and open water."[7]

It is geographically impossible for all PIIC members to reside on the small reservation. If this Court were to restrict access to the Tribal Court to reservation residents only, it would foreclose most tribal members' opportunities to seek remedies in Tribal Court. This Court is also persuaded by *In re Custody of K.K.S.,* wherein the Minnesota Court of Appeals concluded that leaving the geographic area of the reservation did not foreclose tribal court jurisdiction. 508 N.W.2d 813 (Minn. Ct. App. 1993).

Not only are Appellant's contacts with Prairie Island numerous, but they are also specifically tied to the Community's interests in regulating the subjects of the dissolution action. It is self-evident that the Community has an interest in the domestic relations of its members. The Community also has vital interests in the health, safety, education, and cultural growth of the parties' children. Since the parties' income and assets primarily come from the Community's per capita payments, the Community has an interest in the disposition of those monies.

The Hennepin County District Court, in which Respondent filed a dissolution action, clearly acknowledged the Community's Court's jurisdiction over the parties and recognized the Community's interests in concluding that "there is concurrent jurisdiction over all aspects of the dissolution" and staying the state court action "until the conclusion of the concurrent matter in tribal court." Findings of Fact, Conclusions of Law, and Order, Hennepin County, Minnesota, District Court, May 11, 2022.

The record establishes the Community's interests in the subjects of the dissolution action in other ways. Prairie Island Family Services filed a petition in the Community Court for children in need of protection and assisted the parties in negotiating a parenting time schedule. The children's paternal grandfather also filed a petition in the Community Court to secure grandparenting time with the children.

We conclude that Appellant has sufficient contacts with the Community so that its Court's exercise of jurisdiction over Appellant does not offend fair play.

---

[6] This case is unlike cases in which courts sustained challenges to personal jurisdiction when objecting spouse lived far from the forum state. *See Kulko v. Superior Court of Cal.*, 436 U.S. 84 (1978) (in action for child support, California court did not have jurisdiction over spouse who lived in New York); *Mahoney v. Mahoney*, 433 N.W.2d 115 (Minn. Ct. App. 1988) (in a dissolution action, Minnesota court did not have jurisdiction over a spouse who lived in Alabama).

[7] Prairie Island Indian Community, Good Stewards, https://prairieisland.org/who-we-are/our-land (2024).

ADD.006

This case is similar to *Harder v. Roberts*, Prairie Island Mdewakanton Dakota Community Court of Appeals, CA-01-11 (October 27, 2011). That case involved the divorce of a Prairie Island member (wife) from a nonmember (husband), and the parties resided in Farmington, Minnesota, off the Prairie Island Reservation. Husband challenged the personal (and subject matter) jurisdiction of the Prairie Island Community Court, citing the Indian Civil Rights Act and *Int'l Shoe Co. v. Washington*. This Court concluded that husband had sufficient contacts with the Community for its Court to exercise personal jurisdiction over him:

> The essential inquiry is whether the quality and nature of the Appellant's connection with the Community is such that it is reasonable, fair, and just to require him to present his case before the Community's court. *See* [*Kulko v. Superior Court of Calif.*, 436 U.S. 84 (1978)]. The Appellant's connections with the Community in this case are many. He was married to a member of the Community. The family homes in Arizona and Minnesota were purchased with funds provided by the Community. His three children are members of the Community. The Community has provided the Appellant and his family with health insurance. His three children have trust funds provided by the Community. The Community, with the Appellant's permission, funded his children's daycare and education at private schools. The family home in Minnesota, although located outside the Community's territory, is less than a 35-mile drive from the location of the Community Court. The Appellant has visited the Community numerous times. Under these circumstances, we conclude that the Appellant has had substantial and continuous contact with the Community. Accordingly, subjecting Appellant to the jurisdiction of the Community Court is reasonable, fair, and just.

*Harder*, at p. 11. This Court concluded that the Community's codes "establish[ed] the Community Court's jurisdiction over the parties, their children, and their property." *Id.* at 7. The facts in this case are very similar to those in *Harder*, and it provides settled law on this matter.

However, Appellant instead relies on this Court's opinion in *Roach v. Papes*, Prairie Island Mdewakanton Dakota Community Court of Appeals, APP-2012-1 (March 11, 2013), to support her argument that the Community Court may not exercise personal jurisdiction over her. In *Roach*, a Prairie Island member grandparent sought visitation in Community Court over a member child, born of member father (then deceased) and nonmember mother (Respondent). Father and mother were never married. Neither Appellant nor Respondent resided within the Community. They litigated child custody and support in Dakota County, Minnesota, District Court. Respondent challenged the personal jurisdiction of the Community's Court, the Court denied Respondent's motion to dismiss, and the Court of Appeals reversed, sustaining the jurisdictional challenge.

*Roach* is distinguishable from this case for several reasons. First, the Court of Appeals concluded that Respondent in *Roach* had "no contacts with the Tribe," in contrast to Appellant's many contacts with the Community in this case, as outlined above. Second, the Court of Appeals relied on the fact that the state court had already "awarded custody of the child to the Respondent and determined parenting time," unlike the present case in which the state court (Hennepin County) deferred to the Community Court. Third, the *Roach* Court found that the Community's codes (at that time) did not provide for jurisdiction over Appellant:

ADD.007

If the Community seeks to exercise such jurisdiction over the non-Indian parents of enrolled members of the Community, the avenue is to rewrite the Community's Tribal Judicial Code to allow for such jurisdiction due to the cultural and traditional beliefs held by the community as to the parents of their community children. Until such a change is made, there is no basis in the Tribal Judicial Code that grants personal jurisdiction over the parents of the enrolled children of the Community.

*Roach*, at p. 5. In contrast, as we have explained above, the Community's ordinances now extend the Court's reach in a dissolution matter to a nonmember who resides outside the Community in the circumstances of this case. Thus, *Roach* does not persuade us that the Community Court lacks jurisdiction over Appellant.

For all these reasons, we conclude that the Community Court can properly exercise personal jurisdiction over Appellant.

**THE TRIBAL COURT HAS SUBJECT MATTER JURISDICTION OVER THIS MATTER**

Deciding whether the Tribal Court has subject matter jurisdiction requires a two-step analysis. The first step is determining whether the Community has conferred jurisdiction over the parties' dispute. The second step is determining whether federal common law – *Montana* and its progeny – precludes the Tribal Court from deciding the case because one of the parties is a nonmember. *See In re Custody of R.W.O.E.*, 2001 Mont. Crow Tribe LEXIS 12, **10-**11 (Crow Court of Appeals, Montana, May 25, 2001) ("The first step in determining the Tribal Court's jurisdiction is to see whether it is granted by the Crow Tribal Code. . . . The second step in determining jurisdiction is to see whether it is limited by Federal law. . . . The limits of Tribal court jurisdiction are ultimately matters of federal law which the Tribal Courts are competent to apply and, by the same token, obliged to follow."); *see also John Doe BF v. Diocese of Gallup*, 2011 Navajo Sup. LEXIS 16, *14 (Navajo Nation Supreme Court, Sept. 9, 2011) (in case involving a non-member defendant, acknowledging "the need to establish bases for jurisdiction under both Navajo Nation and federal common law.").

We start with the bedrock principle that "[t]he governmental power of the Community begins with its aboriginal sovereignty, which is full and complete. This sovereignty is broad enough to encompass jurisdiction over the domestic relations of its members." *Harder v. Roberts*, Prairie Island Mdewakanton Dakota Community Court of Appeals, CA-01-11, p. 3 (October 27, 2011). "An inherent attribute of sovereignty of any self-governing political entity is the power to determine and regulate membership and the domestic relations of those members." *In the Matter of C.J. and C.J.*, Prairie Island Mdewakanton Dakota Community Court of Appeals, CA-06-05, p. 7 (February 14, 2006); *see also Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 327 (2008) ("As part of their residual sovereignty, tribes retain power to legislate and to tax activities on the reservation, including certain activities by nonmembers, to determine tribal membership, and to regulate domestic relations among members." (citations omitted)).

ADD.008

The Prairie Island Indian Community Domestic Relations Ordinance includes several provisions granting the Community Court authority to exercise subject matter jurisdiction over the parties' dissolution.

> **Section 2. Statement of Purpose, Findings, and Authority.**
>
> a.  Purpose. The Community has the inherent sovereign power to regulate the domestic relations of its members concurrently with the State of Minnesota. No more important power is exercised by Indian Tribes than the power to protect and govern the domestic relations of their members. The purpose of this Ordinance is to inform Community members of that inherent sovereign authority and enable them to use their own Tribal forum for resolution of domestic relations issues.
>
> **Section 4. Applicability.** The Community shall have original jurisdiction over the domestic relations of its members.
>
> **Section 7. Divorce.**
>
> a. <u>Proceeding; How and Where Brought</u>. The Community shall have jurisdiction over all Community members and their spouses for the dissolution of a marriage before the Tribal Courts of the Prairie Island Mdewakanton Dakota Community.[8]

That the Community has authorized its courts to hear this dissolution action does not end our examination of subject matter jurisdiction. The U.S. Supreme Court has restricted the authority of Tribal courts to hear some cases against nonmembers, even if the Tribe authorized its courts to hear those cases. "[F]ederal law defines the outer boundaries of an Indian tribe's power over non-Indians." *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 851 (1985).

The "*Montana* doctrine" – named after the U.S. Supreme Court case *Montana v. United States*, 450 U.S. 544 (1981) – prescribes the circumstances under which a Tribal Court has authority to deal with nonmembers. The *Montana* Court acknowledged that Tribes have "inherent sovereignty" to address "what is necessary to protect tribal self-government or to control internal relations," and may "punish tribal offenders," "determine tribal membership, . . . regulate domestic relations among members, and . . . prescribe rules of inheritance for members." *Id.* at 564. The Court concluded,

---

[8] The Ordinance's Note of Amendment states: "The Community Council added this subsection on October 1, 1999, by Resolution Number 99-10-1-91." The Community Court's Order Denying Motion to Dismiss references a 90-day residency requirement to establish jurisdiction in a dissolution action, and cites Title 3, Chapter III, Section 1 of the Prairie Island Indian Community Code. However, that section of the Code was amended by Resolution 99-10-1-91, which adopted the current grant of authority for jurisdiction over dissolution actions, quoted above, and found in Section 7(a) of the Domestic Relations Ordinance. The 90-day residency requirement may be a relic of a past code, abandoned in 1999 but carried through on subsequent published codes. In any event, as noted in *Harder v. Roberts*, *supra*, other provisions of the Prairie Island codes establish jurisdiction over dissolution actions involving a member, even if the member did not reside on the Community's land for 90 days prior to commencing an action.

ADD.009

however, that "the inherent sovereign powers of an Indian tribe do not extend to all activities of nonmembers of the tribe," *id.,* except in two situations:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter *consensual relationships* with the tribe or its members, through commercial dealing, contracts, leases, or *other arrangements*. [Citations omitted.] A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.[9]

*Id.* at 565-66 (emphasis added). The parties and the Community Court agree that the first exception – "consensual relationships" – determines whether the Court has jurisdiction to decide this dissolution action involving a member and nonmember.

Here, the Community Court concluded that "This case involves the consensual relationship of marriage between the Parties," Order Denying Motion to Dismiss, p. 6, and that the Court's jurisdiction was based on the first *Montana* exception. We agree.

The Court in *Harder*, *supra*, addressed Appellant's contention that the principles announced in *Montana* deprived the Community Court of jurisdiction over him, a nonmember. The Court found that the parties' "consensual relationships" – their marriage and many other marital activities – provided the basis for the Court's jurisdiction over their marriage and divorce, as authorized by *Montana*'s first exception. *See also In the Matter of C.J. and C.J.*, Prairie Island Mdewakanton Dakota Community Court of Appeals, CA-06-05, p. 7 (February 14, 2006) (Community Court had jurisdiction over child welfare "neglected children" action in which children and father were Prairie Island members, all parties lived off Prairie Island lands, and parents challenged jurisdiction).

Marriage is not only a consensual relationship, but it is also contractual. The Prairie Island Domestic Relations Ordinance provides for the "Methods of Contracting Marriage" in Section 5(c)(2): "Persons within the jurisdiction of the Tribal Court may *contract* marriage by declaring in the presences of two witnesses that they take each other to be married" and "The *contracting* parties may marry according to the rites of any church . . . ." (emphasis added). In Minnesota, "A civil marriage, so far as its validity in law is concerned, is a *civil contract* between two persons, to which the consent of the parties, capable in *law of contracting*, is essential. A lawful civil marriage may be *contracted* only when a license has been obtained as provided by law and when the civil marriage is *contracted* in the presence of two witnesses and solemnized by one authorized, or whom one or

---

[9] According to the 9th Circuit, the nonmember's consensual relationship "need not be commercial in nature." Smith v. Salish Kootenai Coll., 434 F.3d 1127, 1137 n.4 (9th Cir. 2006) (rejecting the conclusion that *Montana*'s first exception is limited to commercial arrangements).

ADD.010

both of the parties in good faith believe to be authorized, so to do." Minn. Stat. § 517.01 (emphasis added).

Tribal Courts

While not bound by the decisions of other tribal appellate courts, they have some persuasive authority concerning how other tribes interpret the *Montana* doctrine/progeny, especially concerning marriage dissolution and custody matters.

In *Walker v. Tiger*, Supreme Court of the Muscogee (Creek) Nation, No. SC 2003–01, May 12, 2004, the Court held that the Tribal Court had jurisdiction over the divorce case between a member and a non-Indian who had a common law marital relationship, when the parties' "marital residence'' was within the Nation's jurisdiction, and their child is eligible for membership. On the non-Indian's challenge to subject matter jurisdiction, the Muscogee Court held that "his consensual relationship with the Appellee Muscogee (Creek) citizen and with the Muscogee (Creek) Nation itself through his relationship with Appellee and his residency, meets the first exception to the *Montana* test . . . ."

Other Tribal Courts have upheld subject matter jurisdiction in domestic relations cases where one spouse and child were members of the Tribe, and the objecting spouse was not. *See, e.g., Kelly v. Kelly*, Standing Rock Sioux Tribal Court, No. DV 08-013, June 23, 2008 (member and child resided at Standing Rock) ("It also appears to this Court that [the non-Indian spouse] has, by marrying an enrolled member of this Tribe and fathering an enrolled dependent, engaged in 'activities of nonmembers who enter consensual relationships with the Tribe or its members, through commercial dealing, contracts, leases, or other arrangements,' per *Montana v. United States* . . . .").

The Navajo Nation Supreme Court has issued several opinions upholding tribal jurisdiction over non-members in dissolution proceedings. In *Nouri v. Crownpoint Family Court,* the Navajo Court found that it had jurisdiction over a Navajo child in a private custody matter involving a Navajo father and non-Navajo mother, even though the children did not reside on the reservation. 12 Am. Tribal Law 50 (Nav.Sup.Ct.2014). The Navajo Supreme Court held in *Bahe v. Platero*, 11 Am. Tribal Law 104 (Nav.Sup.Ct.2012) that the Navajo Nation has jurisdiction over Navajo members "on the basis of membership wherever they may reside." Id. at 53.

"In many of the States in this country a State will require a mandatory residency period within the boundaries of the State before asserting jurisdiction over a petitioner's marriage when dissolution of the marriage is sought. ... The principle behind this is that a sovereign shall always maintain the jurisdiction over its own citizens in its ability to dissolve the marriage of its own citizens. This principle is no different for the Tribal sovereign." *Walker v. Tiger*, Supreme Court of the Muscogee (Creek) Nation, No. SC 2003–01, May 12, 2004.

In the case of a State, citizenship is determined by residency, but in the case of the Prairie Island Indian Community, citizenship is determined by membership.

ADD.011

<u>Other Authority</u>

This Court is also persuaded by the 2003 *Teague III* decision from the Wisconsin Supreme Court,[10] in which Chief Justice Abrahamson outlined foundational principles for comity between state and tribal courts:

> In the context of state-tribal relations, principles of comity must be applied with an understanding that the federal government is, and the state courts should be, fostering tribal self-government and tribal self-determination. Through principles of comity, federal and state governments can develop an increased understanding of tribal sovereignty, encourage deference to and support for tribal courts, and advance cooperation, communication, respect, and understanding in interacting with tribal courts.[11]

Several state appellate courts have confronted a similar fact pattern concerning tribal jurisdiction, and have ruled in favor of concurrent tribal authority over domestic relations cases, showing the modern trend toward establishing principles of comity with tribal courts, especially in cases involving tribal children.

*See, e.g., In re: Marriage of Skillen*, 956 P.2d 1, 1998 MT 43 (Mont. 1998). *Skillen* involved a mother and child (both enrolled tribal members) who lived on a reservation, while the father (non-Indian) resided off reservation. After analyzing both state and federal case law, the Montana Supreme Court held that "When an Indian child resides off the reservation, the state court and tribal court share concurrent jurisdiction [in custody disputes]" - exactly what is established in the case at bar. *Id.* at 18.

In 2009, the New Mexico Supreme Court concluded that tribal courts maintain concurrent jurisdiction over matters involving tribal children, even those with a non-member parent. *Garcia v. Gutierrez,* 147 N.M. 105, 217 P.3d. 591 (2009). In *John v. Baker I*, 982 P.2d. 738 (1999), the Supreme Court of Alaska recognized that "Native tribes do possess the inherent sovereign power to adjudicate child custody disputes" involving tribal children. More recently, the Alaska Supreme Court reaffirmed this principle, concluding that tribal courts in Alaska have inherent, subject matter jurisdiction over child custody and child support matters involving tribal children, despite the lack of "Indian country" in most of Alaska. *State v. Central Council of Tlingit and Haida Tribes of Alaska,* 371 P.3d 255 (2016).

Several federal district courts have also addressed the question of tribal jurisdiction over non-members in divorce and child custody proceedings. *See, e.g. Van Aernam v. Nenno,* 2006 U.S. Dist. LEXIS 38402, 2006 WL 1644691(finding that the Seneca Nation Peacemaker Court properly exercised jurisdiction over a divorce proceeding involving a Seneca citizen and a non-member); *Johnson v. Jones*, 2005 U.S. Dist. LEXIS 60249 (M.D. Fl. 2005) (Tribal Court had "inherent sovereign

---

[10] *Teague III,* 665 N.W. 2d 899 (Wisc. 2003),

[11] *Teague III,* Abrahamson, concurring

ADD.012

authority" to determine dependency of member children who, along with their parents, did not reside on tribal land).

Federal appellate courts have also favored tribal jurisdiction over divorce and child custody matters. *See Sanders v. Robinson*, 1988 U.S. App. LEXIS 17047 (9th Cir. 1988) (Tribal Court had jurisdiction over divorce between Northern Cheyenne Indian member and non-Indian who resided on the Reservation and had three children who were Tribal members).

In addition, this Court must be mindful of the federal policy of encouraging tribal self-determination through tribal courts. As articulated by Congress, Federal policy supports the inherent sovereignty expressed in tribal courts. In passing the Indian Tribal Justice Act (25 USC 3601), Congress declared that--

> **(1)** there is a government-to-government relationship between the United States and each Indian tribe;

> **(2)** the United States has a trust responsibility to each tribal government that includes the protection of the sovereignty of each tribal government;

> **(3)** Congress, through statutes, treaties, and the exercise of administrative authorities, has recognized the self-determination, self-reliance, and inherent sovereignty of Indian tribes;

> **(4)** Indian tribes possess the inherent authority to establish their own form of government, including tribal justice systems;

> **(5)** tribal justice systems are an essential part of tribal governments and serve as important forums for ensuring public health and safety and the political integrity of tribal governments;

> **(6)** Congress and the Federal courts have repeatedly recognized tribal justice systems as the appropriate forums for the adjudication of disputes affecting personal and property rights;

> **(7)** traditional tribal justice practices are essential to the maintenance of the culture and identity of Indian tribes and to the goals of this chapter;

> **(8)** tribal justice systems are inadequately funded, and the lack of adequate funding impairs their operation; and

> **(9)** tribal government involvement in and commitment to improving tribal justice systems is essential to the accomplishment of the goals of this chapter.[12]

---

[12] Pub.L. 103-176, Sec. 2, December 3, 1993, 107 Stat. 2004.

ADD.013

The Community Court and the State Court share concurrent jurisdiction over this dissolution matter, and the state court had the authority to stay the proceedings in state court in favor of the tribal court. There are additional policy matters that this Court finds persuasive.

The Hennepin County District Court properly identified the concurrent jurisdiction over this case, and deferred to the tribal court for litigation. This is consistent with the principles of comity. The historical relationship between state and tribal courts has sometimes been tenuous. However, new partnerships between tribal and state court judges are becoming increasingly common. The Minnesota Judicial Branch established the Tribal Court State Court Forum in 1997. The Forum "is comprised of tribal court judges from Minnesota's 11 federally recognized tribes and state court judges from Minnesota's 10 judicial district courts, Court of Appeals, and Supreme Court."[13] The first meeting was held over 25 years ago, and the forum continues to meet quarterly. According to its founders, the Forum was intended to "foster professional relationships between the courts and develop means to address disputes arising from their concurrent jurisdictions."[14] Similar organizations have developed in Arizona, California, Idaho, Kansas, Michigan, New Mexico, New York, North Dakota, Oregon, Washington, Utah, and Wisconsin.[15] These forum developments indicate that state judges and tribal judges are working collaboratively to address questions about jurisdiction and to communicate with one another about comity. In addition, these fora have helped to address the unsubstantiated allegations that tribal courts are somehow inherently hostile to non-members.

In addition, this case presents a key matter concerning judicial economy. This case has now been active in the Community Court since February 2022. The case has been fully litigated and concluded. During oral argument, counsel for Appellant was asked what outcome would result if this Court found that the PIIC Courts lacked jurisdiction over Appellant. Counsel responded that the case should be returned to the Hennepin County District Court. This outcome would require starting the litigation anew. Given the extensive litigation that has already taken place, returning this case to the state court would extend the length of time that the family members continue to live in uncertainty and the expenditure of additional time and resources is simply unwarranted. In particular, the children in this case deserve a prompt resolution of the ongoing custody dispute.

Conclusion

This Court finds that the Community Court has both personal jurisdiction and subject matter jurisdiction over Appellant in the case at bar. This jurisdiction is anchored in the statutory language

---

[13] Minnesota Judicial Branch, *Tribal Court State Court Forum,* https://www.mncourts.gov/Help-Topics/TCSCF.aspx (2024).

[14] Blaeser & Martin, *Engendering Tribal Court/State Court Cooperation,* https://www.mncourts.gov/mncourtsgov/media/scao_library/TCSCF/Engendering-Tribal-Court-State-Court-Cooperation.pdf (no date)

[15] Tribal Law and Policy Institute, *Tribal-State Court Forums: An Annotated Directory* (2d edition)(2020). http://walkingoncommonground.org/files/Tribal-State%20Court%20Forums%20An%20Annotated%20Directory-2nd%20Edition%20Final%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.pdf

ADD.014

of the Community, and is bolstered by principles elucidated in federal law. Policy principles of comity, tribal sovereignty, and judicial economy are consistent with these conclusions. Therefore, we AFFIRM the Community Court's Order Denying Motion to Dismiss, dated April 5, 2022, and Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree, dated July 21, 2023.

Date: January 26, 2024


Sarah Deer, Chief Justice


George Soule, Associate Justice


Amanda White Eagle, Associate Justice

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristin Ann Tix,<br>n/k/a Kristin Ann McGowan,<br><br>      Plaintiff,<br><br>v.<br><br>Robert William Tix,<br><br>      Defendant. | Case No. 24-cv-1824<br><br>**COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## **NATURE OF THE CASE**

1.     This is an action for Declaratory and Injunctive Relief challenging the jurisdiction of a tribal court under 28 U.S.C.S. § 2201.

2.     As alleged with greater particularity below, Kristin Ann Tix alleges that that the Prairie Island Indian Community's judgment against her, entered July 21, 2023, is null and void because the Tribal Court lacked jurisdiction over her as a nonmember.

## **JURISDICTION AND VENUE**

3.     This court has jurisdiction to determine whether a tribal court has exceeded the lawful limits of its jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction and this court's inherent equitable powers. Whether a tribal court has adjudicative authority over nonmembers is a federal question. *Plains Commerce Bank v. Long Family Land & Cattle Co.,* 554 U.S. 316, 324, 128 S. Ct. 2709, 2716 (2008); *Iowa Mut. Ins. Co.* v. *LaPlante,* 480 U.S. 9, 15, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987); *National*

*Farmers Union Ins. Cos.* v. *Crow Tribe*, 471 U.S. 845, 852-853, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985).

4.     The tribal court in this action has ruled on the merits of the case and all appellate options have been exhausted.

5.     Venue is appropriate in this District as Plaintiff and Defendant reside in Minnesota and the Tribal Court's assertion of jurisdiction over Plaintiff was within the jurisdiction of the United States District Court for the District of Minnesota.

## PARTIES

6.     Kristin Tix[1] is and has been a resident of Hennepin County, Minnesota, at all relevant times.

7.     Robert Tix has been a resident of Hennepin County, Minnesota, at all relevant times.

## FACTUAL BACKGROUND

8.     On July 21, 2023, the Prairie Island Indian Community (PIIC) trial court issued a final court order authored by the Honorable B.J. Jones which included findings of fact, conclusions of law, and order for judgment and decree. The trial court order followed a four-day trial in May 2023. This matter was timely appealed to the PIIC Court of Appeals.  The PIIC Court of Appeals held its oral argument on December 12, 2023, and issued its order affirming the trial court's order on January 26, 2024.

---

[1] Plaintiff goes by the last name of Tix (not McGowan, her maiden name), only because she contests the legality of the tribal court order purporting to change her name, not out of affection for the name itself.

9.      The PIIC Court of Appeals is the Prairie Island Indian Community Tribal Court's court of last resort.

10.      Plaintiff Kristin McGowan and Defendant Robert Tix were married on September 27, 2008, in Minneapolis, Minnesota, where their marriage license was obtained and recorded. They have three joint children: R.R.T., age 14; P.C.T., age 12; and G.M.M.T., age 6.

11.      Defendant and the minor joint children are enrolled members of the Prairie Island Mdewakanton Dakota Indian Community. Plaintiff is not an enrolled member of the Prairie Island Mdewakanton Dakota Indian Community or any other recognized American Indian Tribe, nor is she eligible for enrollment with any such Tribe.

12.      The parties have never lived on the reservation. Both parties, and all their children, resided in Edina, Minnesota for more than 180 days prior to the simultaneous dissolution filings, a factor which establishes exclusive jurisdiction of the state over their divorce.

13.      Plaintiff was a stay-at-home parent for almost the entire marriage—from shortly after the youngest child's birth while Defendant continued his education and advanced his career as a PA in the medical field.

14.      On February 9, 2022, Plaintiff filed a summons and petition for dissolution with children in Hennepin County District Court, State of Minnesota, Court File No. 27-FA-22-739. That same day, Defendant filed a summons and petition for dissolution of marriage in Tribal Court. In attempting to serve Defendant with the Hennepin County pleadings, the process server reported difficulties serving Defendant, he reported that:

3

      i.  We spoke with Roberts (*sic*) father who said that Robert has some problems with the law and that he can't have him here. Our server identified himself, said he had some documents and asked where we could find him. His father said he is on the "run" and last he heard, he was staying in a hotel or motel down in Rochester.

15.    On February 18, 2022, the Hennepin County District Court issued an Order for Service by Alternate Means authorizing service by U.S. Mail. That same date, Defendant was served with Plaintiff's pleadings by U.S. Mail.

16.    On February 17, 2022, Plaintiff also filed a petition for an Order for Protection ("OFP") against Defendant for herself and on behalf of the three minor children in Hennepin County District Court (District Court File No. 27-DA-FA-22-877). An *ex parte* Order for Protection was issued that same day granting Plaintiff temporary custody of all three minor children. Plaintiff testified that she feared for herself and the children, given Defendant's history of erratic anger responses, verbal and physical abuse, and the information from the process server about Clayton Tix's report that Defendant was "on the run." An evidentiary hearing was set for May 24, 2022. Defendant never moved to contest state jurisdiction in that proceeding.

17.    On March 9, 2022, the Hennepin County District Court held an Initial Case Management Conference ("ICMC") in the dissolution matter, 27-FA-22-739. At the ICMC, the court, counsel, and the parties discussed the issue of jurisdiction in the District Court and the Tribal Court. On March 16, 2022, Defendant filed a notice of motion and motion requesting: (1) dismissal and/or a stay of Plaintiff's petition for dissolution of marriage in Hennepin County and (2) dismissal of the parties' children from the OFP.

ADD.019

18.     While this motion was pending, a petition for children in need of protective services was filed against Plaintiff by Prairie Island Family Services ("PIFS") in the Tribal Court on March 23, 2022 (Tribal Court File No. CC-0323-22). An admit/deny hearing on that issue was scheduled in the Tribal Court for April 20, 2022. The parties participated in a facilitated settlement conference with PIFS Services on March 23, 2022 and March 29, 2022 and agreed Defendant would have supervised visits on Mondays, Wednesdays, Fridays, and Saturdays, with PIFS coordinating the supervision.

19.     On March 30, 2022, Plaintiff filed a responsive notice of motion and motion requesting denial of Defendant's March 16 motion. On April 4, 2022, the Tribal Court issued an order denying Mother's motion to dismiss the dissolution proceeding in Tribal Court. The Tribal Court determined it had jurisdiction over all issues in the dissolution, despite the fact that Plaintiff is not an Indian, not a member of the Tribe, and had never resided on Tribal lands. It further asserted jurisdiction over the ongoing child protection proceedings. The Tribal court declined to enforce the *ex parte* OFP issued on behalf of the children in Hennepin County, finding that the delay from February 17, 2022 to May 24, 2022 to hear the matter was not in accordance with Minnesota law and that the procedure was irregular under due process of law with regard to denying the father *any contact* with his children and thus not entitled to full faith and credit under federal law. This despite the fact that regular visitation for Defendant under the agreement referenced in the above paragraph had been agreed to by the parties after the OFP had been issued.

20.     Following a hearing held on April 6, 2022, the State District Court entered an order on the parties' motions filed in Hennepin County. In its order, the district court concluded that Minnesota, not the Prairie Island Mdewakanton Dakota Community, was the "home state" for the minor children under Minn. Stat. §518D.201(a)(1), and that accordingly, the State District Court had jurisdiction to make an initial custody determination at the commencement of the proceedings under Minn. Stat. §518D.201(b). The district court also concluded that the Indian Child Welfare Act did not apply to these proceedings under 25 U.S.C. §1903(1). The District Court then deferred jurisdiction to the Tribal Court, issuing a stay of the dissolution matter filed by Plaintiff in that court pending resolution of the dissolution and custody proceeding in the Tribal Court.

21.     Plaintiff filed two appeals of the state court order transferring jurisdiction to the Minnesota Court of Appeals (May 11, 2022 and October 12, 2022), which were ultimately dismissed by the court as non-final and nonappealable orders owing to the stay entered by the District Court.

22.     The parties appeared for an evidentiary hearing in District Court on Plaintiff's OFP petition on May 24, 2022. The District Court heard testimony from the parties, including the GAL, and from other witnesses. The District Court found that Plaintiff had not met her burden of proof necessary for an Order for Protection on behalf of the minor children, but the court did find that Plaintiff sufficiently established that domestic abuse as defined by Minn. Stat. § 518B was committed against her by Defendant.

6

23.     The evidentiary hearing on the dissolution in the Tribal Court occurred on May 8, 9, 10, and 12, 2023. The Tribal Court entered its Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree on July 21, 2023. This order reduced Plaintiff's parenting time with her children from a state District Court ordered 50:50 split between her and Defendant to a 65:35 split and denied Plaintiff any spousal maintenance.

24.     According to evidence produced at trial, Defendant's *per capita* payments fluctuated, but his 1099s from Prairie Island show he received $198,573.38 from Prairie Island in 2021 and $172,068.02 in 2022. Based upon this largely per capita based income, Plaintiff proposed a final order to include a permanent award of spousal maintenance at $5,000 per month. Instead, the Tribal Court awarded Plaintiff zero spousal maintenance, finding that "tribal law cannot award spousal support to a non-member if said support is to be paid from per capita benefits," citing the tribe's code, which states:

> The Court may not consider the distribution of net gaming proceeds made from the Community to qualified Community members under the Community's Gaming Revenue Allocation Ordinance (Per Capita Payments) when establishing or amended an order for maintenance." *Id*. Chapter VI, Section 6(d).

25.     By contrast, Minnesota's Family Code does not exclude tribal income from the income counted for any purpose. See Minn. Stat. § 518.552.

26.     In sum, the Tribal Court issued two orders, which were both appealed to the Prairie Island Community Court of Appeals: one, an order denying a Motion to Dismiss for lack of jurisdiction (April 4, 2022); and two, the Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree (July 21, 2023).

7

27.     The Prairie Island Indian Community Court of Appeals affirmed both Orders of the Tribal Court, finding, *inter alia*, that the Tribal Court had jurisdiction over Plaintiff because she consented to tribal adjudicatory jurisdiction based upon her consent to marriage to Defendant.

28.     The parties lived in Hennepin County their entire marriage. Plaintiff has never lived on any Indian Reservation, including but not limited to the Prairie Island Indian Community. Plaintiff never consented to the jurisdiction of the tribal court, and contested its jurisdiction at all stages.

29.     Plaintiff has exhausted her remedies in the tribal court and seeks an injunction and declaratory relief from this court as permitted by federal law.

## COUNT I

### The Tribal Court exceeded the lawful limits of its jurisdiction

30.     Plaintiff restates and realleges paragraphs 1 thorough 29 and incorporates them herein.

31.     Defendant's actions as set forth above unlawfully invoked the jurisdiction of the Tribal Court over Plaintiff as a nonmember. The Tribal Court had neither subject matter jurisdiction nor personal jurisdiction over Plaintiff.

WHEREFORE, Plaintiff prays for Judgment against Defendant as follows:

1.    Injunctive, declaratory, and equitable relief the Court deems appropriate, including an Order finding that the Tribal Court Orders concerning her are null and void as lacking both subject matter and personal jurisdiction, and barring the Defendant from seeking to enforce them in tribal or state courts.

8

2.    Remanding the parties' dissolution claims to state court.

3.    For such other and further relief as the court deems just and equitable.


Dated: May 16, 2024

                                            **FIEBIGER LAW, LLC**

                                            By: /s/Rolf T. Fiebiger
                                            Rolf T. Fiebiger (#391138)
                                            6800 France Ave S., Suite 190
                                            Edina, MN 55435
                                            Telephone: 612.888.6084
                                            rolf@fiebigerlaw.com

                                            and

                                            Mark D. Fiddler (#197853)
                                            FIDDLER OSBAND FLYNN LLC
                                            12800 Whitewater Drive, Suite 100
                                            Minnetonka, MN  55343
                                            Tel: (612) 822-4095
                                            mark@fiddlerosband.com

                                            Attorneys for Plaintiff
                                            Kristin Ann Tix

ADD.024

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristin Ann Tix,<br>n/k/a Kristin Ann McGowan, | No. 24-cv-1824 (KMM/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Robert William Tix, | |
| Defendant. | |

This case arises out of a tribal court's conclusion that it had jurisdiction over a marriage dissolution proceeding between a member of the tribe and his nonmember spouse and the court's final resolution of the parties' divorce. Plaintiff, Kristin Ann Tix, is the nonmember, and in her complaint, she seeks a declaratory judgment that the tribal court's decisions are null and void because it lacked jurisdiction over her. She also seeks an injunction barring Defendant from enforcing the tribal court's final orders in the Minnesota state courts. Defendant, Robert William Tix, filed a motion to dismiss, Doc. 14, and Plaintiff simultaneously filed a motion for summary judgment, Doc. 20. The parties agreed that the relevant facts are not in dispute and the issues in this case are purely legal. Doc. 11. For the reasons that follow, the Court denies Plaintiff's motion for summary judgment and grants summary judgment to Defendant pursuant to Fed. R. Civ. P. 56(f)(1).

ADD.025

## BACKGROUND

Defendant Robert Tix and Plaintiff Kristin Tix [1] were married in September 2008 in Minneapolis. Compl. ¶ 10. They have three minor children together who are 6, 12, and 14 years old. *Id.* Robert is an enrolled member of the Prairie Island Mdewakanton Dakota Indian Community (hereafter "PIIC" or "the Tribe"). *Id.* ¶ 11. Kristin is not a member of the Tribe and is not eligible for enrollment with the PIIC or any other Native American tribe. All three of the parties' children are enrolled members of the PIIC. *Id.* ¶ 11.

During the parties' marriage, the family did not reside on PIIC reservation lands. Instead, they lived together in Edina, Minnesota, a city within Hennepin County. Compl. ¶ 12. Neither Kristin nor Robert were employed during their marriage. *Id.* ¶ 13. To support themselves, the couple relied on Robert's per capita payments from the Tribe. Robert's per capita distribution in 2021 was just over $198,000, and in 2022, he received a little more than $172,000. *Id.* ¶ 24.[2]

Eventually, the couple decided to divorce, and the parties engaged in simultaneous proceedings in different judicial theaters. In February 2022, they separately filed petitions for dissolution of the marriage. On February 9, 2022, Kristin filed a summons and petition

---

[1] In Plaintiff's memorandum supporting her motion for summary judgment and in her complaint, she states: "Plaintiff goes by the last name of Tix (not McGowan, her maiden name), only because she contests the legality of the tribal court order purporting to change her name, not out of affection for the name itself." Doc. 21 at 3 n.1; Compl. ¶ 6 n.1, Doc. 1. To avoid any confusion in the use of last names, the Court refers to both parties by their first names or as "Plaintiff" and "Defendant" throughout this Order.

[2] These numbers differ somewhat from those reflected elsewhere in the record, *see* Ex. G  170, but those differences are immaterial to this dispute.

ADD.026

in Hennepin County District Court. Compl. ¶ 14; Debele Decl., Ex. A at 1 ¶ 4.[3] The same day, Robert filed his petition in in the Court of the Prairie Island Mdewakanton Dakota Community (hereafter "the Tribal Court"). Ex. A at 1 ¶ 3.[4]

On February 17, 2022, Kristin also filed a petition in Hennepin County District Court for an Order for Protection ("OFP") against Robert on behalf of herself and the couple's three minor children. Compl. ¶ 16. The state court issued an *ex parte* OFP and set an evidentiary hearing for May 24, 2022. Ex. A at 2 ¶ 15. On March 23, 2022, the Prairie Island Family Services agency filed a petition for children in need of protective services in the Tribal Court concerning the couple's three children. The Tribal Court set a hearing on the petition for April 20, 2022. *Id.* at 3 ¶ 24.

Meanwhile, on March 9, 2022, the Hennepin County District Court handling Kristin's dissolution proceeding held an initial case management conference, and Robert filed a motion asking the state court to dismiss or stay Kristin's dissolution proceeding and to dismiss the parties' children from the OFP. Compl. ¶ 17. At a settlement conference with

---

[3] Defendant filed several exhibits in support of his motion for dismissal, which are attached as Exhibits A through J to the Declaration of Gary Debele. Doc. 17. The Court cites to these exhibits as "Ex. __" throughout this Order.

[4] Due to issues with achieving personal service of the summons and petition upon Robert, the Hennepin County District Court eventually found that Kristin's dissolution case "commenced" on March 11, 2022. Ex. A at 6. Eventually, the Tribal Court determined that, pursuant to Tribal law, Robert's dissolution proceeding commenced at the time it was filed and that Kristin was personally served on February 18, 2022. *Id.* at 4 ¶ 28; Ex. B at 1 n.1.

3

Prairie Island Family Services, the parties agreed to a temporary supervised visitation schedule for Robert. Ex. A at 3 ¶ 25; Compl. ¶ 18.[5]

Kristin moved to dismiss Robert's dissolution proceeding in the Tribal Court on grounds that the Tribal Court lacked subject-matter and personal jurisdiction. Ex. B at 2–3. On April 5, 2022, the Tribal Court denied Kristin's motion. Ex. B. The Tribal Court found that it had jurisdiction over all the issues in the dissolution proceeding and over the ongoing child-protection proceedings. The Tribal Court declined to enforce the *ex parte* OFP that had been issued by the Hennepin County District Court. Compl. ¶ 19; Ex. A at 3 ¶ 27.

On April 6, 2022, in Kristin's Hennepin County dissolution proceeding, the Hennepin County court issued an order deferring jurisdiction to the Tribal Court and staying Kristin's dissolution case until the Tribal Court resolved Robert's dissolution and custody petition. Compl. ¶ 20; Ex. A at 13 ¶ 1. However, the Hennepin County District Court went forward with the May 24, 2022 evidentiary hearing on Kristin's petition for an OFP. The court found that Kristin did not meet her burden for an OFP to issue against Robert with regard to the couple's children, but she had shown she was entitled to an OFP personally. Compl. ¶ 22.

Kristin twice attempted to appeal the Hennepin County District Court's decision transferring jurisdiction to the Tribal Court to the Minnesota Court of Appeals. First, she

---

[5] Prairie Island Family Services eventually moved to close the protective services matter in early May 2023 because the parties addressed the protection concerns in private proceedings. Ex. G ¶ 36.

ADD.028

appealed the May 11, 2022 order staying her dissolution proceeding and deferring jurisdiction to the Tribal Court. The Minnesota Court of Appeals dismissed the first appeal because the May 11 order was not a final order appealable under Minnesota appellate procedural rules. Ex. C. The appellate court remanded the matter to Hennepin County District Court, instructing the district court to consider whether it was appropriate to continue the stay. *Id.* On September 13, 2022, the district court concluded that the matter should remain stayed. Ex. E; Ex. D at 1–2. Kristin filed her second appeal of that September 13 order, and the Minnesota Court of Appeals again dismissed the appeal because there was no final appealable order in the district court proceeding. Ex. D at 3–4. On September 30, 2022, Kristin filed a notice of voluntary dismissal of her Hennepin County dissolution proceeding pursuant to Minn. R. Civ. P. 41.01(a). Ex. F.

The Tribal Court held an evidentiary hearing in Robert's dissolution case over four days in early May 2023. Compl. ¶ 23; Ex. G at 1. On July 21, 2023, the Tribal Court issued its Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree. Ex. G; Compl. ¶ 23. In relevant part, the Tribal Court found that Kristin was not entitled to any spousal maintenance—it found that Robert's income was derived from the per capita payments he received from the Tribe, and a provision in the PIIC Judicial Code prohibits a Tribal Court from considering per capita payments when establishing any order for maintenance. Ex. G ¶ 182–83 (citing PIIC Judicial Code, Ch. VI, § 6(d)); *see also id.* Order ¶ 30; Compl. ¶ 24. The Tribal Court required Robert to pay monthly child support to Kristin. Ex. G ¶ 23. The Tribal Court also divided parenting time between Robert and

5

Kristin, but Kristin alleges that the Tribal Court's division reduced her time from 50 percent to 35 percent. Compl. ¶ 23.

Kristin appealed the Tribal Court's final order from July 21, 2023 and its April 4, 2022 order denying her motion to dismiss for lack of jurisdiction to the PIIC Court of Appeals. Compl. ¶¶ 26–27. On January 26, 2024, the PIIC Tribal Court of Appeals issued a decision affirming both orders. Compl. ¶ 27. The Tribal Court of Appeals rejected Kristin's arguments that the lower Tribal Court lacked personal jurisdiction over her and subject matter jurisdiction over the dispute because she is not a member of the Tribe and never lived on PIIC land. Ex. H at 2, 3 (discussing Kristin's position on appeal). In part, the Tribal Court of Appeals based its conclusion on Kristin's voluntary decision to enter into a marriage with a Tribal member and her "numerous contacts with the [PIIC]." *Id.* at 5–7. The court further held that as a sovereign entity, the Tribe had the power to exercise jurisdiction over its members' domestic relations, and federal law did not preclude it from deciding the case because one of the parties was a nonmember. *Id.* at 8–13. In part, applying *Montana v. United States*, 450 U.S. 544, 565–66 (1981), the PIIC Court of Appeals affirmed the conclusion that the Tribal Court could exercise jurisdiction over Kristin even though she is not a member of the Tribe because she entered a "consensual relationship" with a PIIC member when she married Robert. Ex. H at 9–10.

Dissatisfied with the outcome of the proceedings in the PIIC courts, Kristin filed this action, alleging that "[t]he Tribal Court exceeded the lawful limits of its jurisdiction." Compl., Count I. She asks this Court to issue an "Order finding that the Tribal Court Orders concerning her are null and void as lacking both subject matter and personal jurisdiction,

6

and barring the Defendant from seeking to enforce them in tribal or state courts." *Id.*, Prayer for Relief ¶ 1.[6]

## DISCUSSION

Kristin moves for summary judgment pursuant to Fed. R. Civ. P. 56. She argues that federal law does not allow the PIIC Tribal Court to exercise jurisdiction over nonmembers except in limited circumstances, none of which are present here. Pl.'s SJ Mem. 10. Second, Plaintiff contends that she "did not have sufficient minimum contacts with the tribe under due process to support tribal jurisdiction." *Id.* at 19–23.

Robert asks this Court to dismiss this case, pursuant to Fed. R. Civ. P. 12(b), for four reasons. First, he asserts that Plaintiff's claims are essentially an improper effort to appeal the Hennepin County District Court's decision to defer or transfer jurisdiction to the tribe, and that attempt is barred by the *Rooker-Feldman* doctrine. Pl.'s MTD Mem. 8–12 (citing Fed. R. Civ. P. 12(b)(1)), Doc. 16. Second, he argues that the Court should dismiss Plaintiff's claims pursuant to Rule 12(b)(6) because Kristin has failed to exhaust her state court remedies. *Id.* at 12–14. Third, he argues that the Court should dismiss the complaint for improper venue, pursuant to Rule 12(b)(3), pursuant to the "abstention doctrine." *Id.* at 14–19. And finally, he argues that the complaint should be dismissed pursuant to Rule 12(b)(7) for failure to join an indispensable party—namely PIIC—under Rule 19. *Id.* at 19–26.

---

[6] Kristin also asks this Court to "[r]emand[] the parties' dissolution claims to state court." Compl., Prayer for Relief ¶ 2. However, the Court notes that Kristin voluntarily dismissed her state court proceeding, so even if the Court were to agree with her that the Tribal Court exceeded its jurisdiction, there is no state court proceeding to which any dissolution claims could be remanded.

ADD.031

Having carefully reviewed the record, the Court finds that Plaintiff has failed to show that she is entitled to summary judgment. Moreover, the undisputed material facts show that the Tribal Courts properly exercised jurisdiction over the dissolution proceedings. Consequently, the Court concludes that Defendant is entitled to summary judgment and dismisses this action. Therefore, the Court also denies Defendant's motion to dismiss as moot.

## I.    Legal Standard

"Summary judgment is appropriate if there is no genuine dispute of material fact and a party is entitled to judgment as a matter of law." *Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1052 (8th Cir. 2024); Fed. R. Civ. P. 56(a). District courts "should not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Std. Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021). Facts are material when their resolution would "affect the outcome of the suit under the governing substantive law." *Ploen v. AIG Specialty Ins. Co.*, 691 F. Supp. 3d 1013, 1016–17 (D. Minn. 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact dispute is "'genuine' only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). In evaluating whether summary judgment is appropriate, courts draw reasonable inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021).

ADD.032

As indicated above, the parties in this case have agreed that there are no material factual disputes and the issues to be decided in this case are "purely legal." Doc. 11. Where the moving party has had "notice and a reasonable opportunity to respond, the court may . . . grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f). "The requirements of Rule 56(f) are met when the losing party moves for summary judgment on the relevant issue because that party obviously expects the district court to make a final ruling and agrees to resolution of the issue in summary fashion." *Taylor Corp. v. XL Ins. Am., Inc.*, No. 22-cv-1151 (JRT/TNL), 2024 WL 453826, at *3 (D. Minn. Feb. 6, 2024) (cleaned up). "By raising arguments in support of its own motion for summary judgment, the losing party has had an opportunity to develop the record on that issue." *Id.* (citing *Johnson v. Bismarck Pub. Sch. Dist.*, 949 F.2d 1000, 1005 (8th Cir. 1991); *Barkley, Inc. v. Gabriel Bros., Inc.*, 829 F.3d 1030, 1041 (8th Cir. 2016)).

## II.   Analysis

### A.  This Court's Jurisdiction

Plaintiff argues that the Tribal Courts lacked jurisdiction over her because she is not a member of the tribe and never resided on the reservation, including during the parties' marriage. First, the Court agrees with Kristin's assertion that this case raises a federal question that falls within the Court's own subject matter jurisdiction. As the Supreme Court has explained, "whether a tribal court has adjudicative authority over nonmembers is a federal question," and if a tribal court "is found to lack such jurisdiction, any judgment as to the nonmember is necessarily null and void." *Plains Comm. Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 324 (2008); *Attorney's Process and Investigation Servs., Inc.*

9

*v. Sac & Fox Tribe of Miss. In Iowa*, 609 F.3d 927, 936 (8th Cir. 2010); *Harder v. Roberts*, No. 12-cv-663 (MJD/JJK), 2013 WL 5357173, at *1 (D. Minn. Sept. 24, 2013).[7]

Opposing the summary judgment motion, Defendant does not meaningfully dispute that the Court has the authority to adjudicate whether the PIIC courts had jurisdiction over a nonmember. He raises several arguments that track those he made in support of his motion to dismiss. Only two merit further comment.

Defendant suggests that the Court lacks jurisdiction over this dispute under the *Rooker-Feldman* doctrine because Plaintiff is really seeking to use this proceeding as an appeal of the Hennepin County District Court's decision to defer jurisdiction to the Tribe. "The *Rooker-Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Kvalvog v. Park Christian Sch., Inc.*, 66 F.4th 1147, 1152 (8th Cir. 2023). On its face, Kristin's complaint challenges only the scope of the tribal court's jurisdiction under federal law. It is not apparent from the record that the Hennepin County District Court even made a conclusion on that issue. The underlying order deferring jurisdiction to the tribal authorities was concerned with application of Uniform Child Custody Jurisdiction and Enforcement Act. The parties point to no case illuminating how the *Rooker-Feldman*

---

[7] The *Harder* court ultimately issued a declaratory judgment granting the nonmember plaintiff's claim that the PIIC Tribal Court had issued a judgment and decree in a tribal dissolution proceeding without subject matter jurisdiction and without personal jurisdiction over the plaintiff. 2013 WL 5357173, at *7 (Order ¶ 4). However, the court reached that conclusion not because it determined that such jurisdiction could never be exercised, but as a sanction for the defendant's willful and repeated violations of court orders requiring her to personally appear. *Id.* at *3–6. Therefore, *Harder* does not inform the analysis the Court must conduct in this case.

ADD.034

doctrine applies to a situation comparable to this, and the Court finds it unnecessary to resolve this thorny issue here in light of its ruling on other issues.

Next, Robert argues that the Court should abstain from exercising its jurisdiction because Kristin can now seeks review of the Hennepin County Court's last decision in the Minnesota Court of Appeals. Def.'s SJ Opp'n 4–9, Doc. 25. This argument rests on the somewhat dubious proposition that now that the tribal proceedings are concluded, Kristin could, in fact, appeal some final decision of the Hennepin County District Court to the Minnesota Court of Appeals. Because Plaintiff voluntarily dismissed her state court dissolution proceeding nearly two years ago, taking an appeal now seems unlikely.

In sum, the Court finds that it has subject-matter jurisdiction over Plaintiff's claim that the Tribal Courts acted without jurisdiction and declines to abstain from deciding the issue.

### B.  The *Montana* Exceptions

The central question raised by this case is whether the Tribal Court had authority to adjudicate a marriage dissolution proceeding where one of the parties to the marriage is a nonmember who does not reside on tribal land. Based on the undisputed facts here, the Court concludes that it does.

In *Montana v. United States*, 450 U.S. 544 (1981), the Supreme Court explored the limits of tribal authority to regulate the conduct of nonmembers. *See also Attorney's Process*, 609 F.3d at 935 ("The federal principles which govern tribal civil jurisdiction over nonmembers were set out in *Montana v. United States*, and that decision remains the pathmarking case on the subject.") (cleaned up). As the Eighth Circuit has explained, "[i]n

11

*Montana*, the Supreme Court concluded that the Crow Tribe lacked the power to prohibit hunting and fishing by nonmembers on non-Indian fee land within its reservation because 'exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes.'" *Id.* at 935 (quoting *Montana*, 450 U.S. at 564). Therefore, although tribes retain considerable inherent sovereign powers, those powers generally "do not extend to the activities of nonmembers of the tribe." *Id.* (quotation omitted).[8]

But the general rule that tribes may not regulate nonmembers on non-Indian fee land has important exceptions. Indeed, "'Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.'" *Id.* at 935–36 (quoting *Montana*, 450 U.S. at 565). The Supreme Court recognized two exceptions in *Montana* that allow tribes to regulate "nonmember conduct." *Id.* at 936. They are commonly referred to as the *Montana* exceptions. They "are rooted in the tribes' inherent power to protect certain sovereign interests," including tribes' rights "to make their own laws and be governed by them." *Id.* (quotations omitted).

---

[8] Here, neither party contends that any "federal statute or treaty specifically provides the Tribal Court with jurisdiction over the claims at issue in this case; therefore the Tribal Court's jurisdiction must arise from its 'retained or inherent sovereignty.'" *Belcourt Pub. Sch. Dist.*, 786 F.3d at 657 (quoting *Atkinson Trading Co., Inc. v. Shirley*, 532 U.S. 645, 649–50 (2001)).

ADD.036

The first *Montana* exception is at issue here.[9] It provides that "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." 450 U.S. at 565. The scope of a tribal court's jurisdiction under this exception is the same whether the tribe attempts to regulate nonmember conduct through legislation or through a ruling of a tribal court. *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 657 n.3 (8th Cir. 2015) (citing *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997)). Based on the first *Montana* exception, tribes have "power over a nonmember [when] 'the nonmember enters tribal lands or conducts business with the tribe.'" *Turpen v. Muckleshoot Tribal Court*, No. C22-0496-JCC, 2023 WL 4492250, at *3 (W.D. Wash. July 12, 2023) (quoting *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 142 (1982)). "And tribal jurisdiction 'depends on what non-Indians 'reasonably' should 'anticipate' from their dealings with a tribe or tribal members on a reservation.'" *Id.* (quoting *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 817 (9th Cir. 2011)).

It is undisputed on this record that Kristin entered a "consensual relationship" with a member of the PIIC Tribe through a "contract" or "other arrangement"—namely her marriage to Robert. And the record amply demonstrates that she could reasonably

---

[9] The second *Montana* exception provides that a tribe "retain[s] inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health and welfare of the tribe." 450 U.S. at 566. Neither party argues that this exception is applicable here.

ADD.037

anticipate the exercise of tribal jurisdiction over the dissolution of that relationship according to the PIIC's laws.

Although Plaintiff argues that her "off-reservation acts of marrying and having children with a non-resident member do not" fall under the first *Montana* exception (Pl.'s Summ. J. Mem. 14–15, 18, Doc. 21), the Court disagrees. Plaintiff voluntarily entered a marriage with Defendant, a member of the PIIC. Although the couple did not live on the tribal land, throughout their marriage, the couple's financial needs were primarily met through the per capita payments Defendant received from the Tribe. In addition, the couple's children received health and dental insurance coverage through the Tribe. Ex. G. ¶ 24 ("Father shall continue to maintain health and dental insurance coverage for the minor children through the Prairie Island Mdewakanton Dakota Community for the benefit of the minor children."). Kristin and Robert themselves also received medical and dental insurance coverage from the Tribe. Ex. A ¶ 11 ("Petitioner [and] Respondent . . . have been provided free medical and dental insurance coverage from the Prairie Island Mdewakanton Dakota Community."). And during the marriage, Kristin "attended pow wows with the minor children." *Id.* ¶ 12. Based on this record, the Court finds that Plaintiff entered a consensual relationship with Defendant, a member of the Tribe, and Plaintiff could reasonably anticipate from her dealings with Defendant and the tribe that the Tribal Court could exercise jurisdiction over their marriage dissolution.

The Court's conclusion finds support in the caselaw. The parties point to no binding authority addressing the specific issue presented here—whether the first *Montana* exception allows a tribal court to exercise jurisdiction over a nonmember in a marriage

ADD.038

dissolution proceeding when the nonmember does not live on reservation land. And there are few federal appellate decisions that deal with closely analogous situations. But the decisions that each side references are consistent with the Court's conclusion that the Tribal Court's exercise of jurisdiction was proper.

First, Plaintiff points to the Ninth Circuit's conclusion that a tribal court had jurisdiction over a "marriage dissolution action between an Indian plaintiff and a non-Indian defendant residing on the reservation." *Sanders v. Robinson*, 864 F.2d 630, 634 (9th Cir. 1988). In reaching that conclusion, the *Sanders* court observed that in *Montana*, the Supreme Court referred to retention of civil jurisdiction over nonmembers on reservation land. *Id.* at 633 ("To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over *non-Indians on their* reservations, even on non-Indian fee lands." (quoting *Montana*, 450 U.S. at 565)) (emphasis added in *Sanders*); *see also id.* (discussing Indian law treatises that assumed "tribal courts would have at least concurrent jurisdiction in divorce cases involving an Indian plaintiff non-Indian defendant, where the non-Indian defendant resided on the reservation during the marriage") (citing W. Canby, *American Indian Law* 146 (1981); F. Cohen, *Handbook of Federal Indian Law* 342 (1982 ed.)).

Plaintiff reads *Sanders* to mean that a tribal court cannot exercise jurisdiction over a proceeding to dissolve a marriage between a nonmember and a member who reside off the reservation. But the Court is not persuaded for at least two reasons. First, *Sanders* simply does not say that. Second, it is noteworthy that the focus in both *Sanders* and *Montana* was on the limits of tribal court authority over nonmembers on reservation land.

15

The dispute in *Montana* involved the scope of tribal authority to regulate the conduct of nonmembers on land within the reservation. And similarly, the question of the tribal court's authority at issue in *Sanders* involved a dispute with a nonmember who resided within the reservation. Residing within a reservation is only one way the first *Montana* exception might be invoked. As a result, *Sanders* does not explore the extent of tribal court jurisdiction over a nonmember who does not reside on tribal land, but has entered into a consensual relationship with a member of a tribe.

Plaintiff next cites *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087 (8th Cir. 1998) for the proposition that "[n]either *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring outside their reservations." *Id.* at 1091. Plaintiff suggests that this is consistent with her position that *Montana*'s first exception regarding consensual relationships cannot apply to a situation where the family resided off the reservation. But Plaintiff's reliance on *Hornell Brewing* is likewise misplaced. *Hornell Brewing* did not involve application of the first *Montana* exception at all. *Id.* at 1093 (indicating that the parties did not invoke the first *Montana* exception and stating that "the primary issue the parties raise on appeal relates to *Montana*'s second exception").

The Court's conclusion that a tribal court can exercise jurisdiction over dissolution proceedings between a member and a nonmember even when the nonmember resides off the reservation finds support in a district court case from the Western District of Washington. *Turpen*, 2023 WL 4492250, at *3. In *Turpen*, the court found that a tribal court had jurisdiction over the couple's dissolution proceeding because the plaintiff entered

16

a consensual relationship with a tribal member vis-à-vis their marriage. *Id.* Although the couple lived on the Muckleshoot Reservation before they were married, they later moved to a home that was not on reservation land. *Id.* And the *Turpen* court explained that the nonmember plaintiff had received financial support from the tribe as a result of that marriage, "including an income-based grant for the down payment and loan assistance for the mortgage, which provided that the Tribe would subsidize their housing, so long as [the tribal member] lived there." *Id.* In light of this consensual relationship, the *Turpen* court rejected the plaintiff's argument that the first "*Montana* [exception] is inapplicable because the parties did not reside on the reservation." *Id.* As described above, the facts before this Court regarding the Tix family's relationship with the Tribe support PIIC's exercise of jurisdiction at least as much as those before the *Turpen* court.

In sum, this Court concludes that Defendant is entitled to judgment as a matter of law on Plaintiff's claims that the Tribal Court's orders were null and void because the Tribal Court lacked jurisdiction over the tribal dissolution proceeding.

### C. Personal Jurisdiction

Finally, Plaintiff argues that she "did not have sufficient minimum contacts with the tribe under due process to support tribal jurisdiction." Pl.'s Summ. J. Mem. 19. In their briefing, neither party points to controlling precedent that clearly illustrates how a federal court should determine whether a tribal court presiding over dissolution proceedings had *personal* jurisdiction over a nonmember. And the Eighth Circuit has noted that the *Montana* exceptions concern a tribal court's subject-matter jurisdiction, rather than

17

personal jurisdiction, suggesting a separate analysis might be required. *Attorney's Process*, 609 F.3d 927, 937 (8th Cir. 2010) (citing *Nevada v. Hicks*, 533 U.S. 353, 367 n.8 (2001)).

The exact contours of the personal-jurisdiction issue Plaintiff raises are not entirely clear. Plaintiff begins with the insistence that, during the tribal court proceedings, she "never relied on the 14th Amendment's Due Process Clause to limit tribal court jurisdiction over her." She asserts that the appropriate reference point for her argument is the Indian Civil Rights Act. Pl.'s Summ. J. Mem. 20–21 (citing 25 U.S.C. § 1302). This observation appears to be a response to the PIIC Court of Appeals' discussion of how it determines the issue of personal jurisdiction: first, it examines whether tribal law allows the Tribal Court to exercise authority over a nonresident, nonmember who never resided on the reservation, if so, it considers whether "the U.S. Constitution's Due Process Clause permits such reach of authority." Ex. H at 3. Even if Plaintiff is correct that she never argued before the PIIC courts that the U.S. Constitution was applicable to the Tribe, she offers no argument as to why that matters. What's more, Plaintiff ignores the fact that the PIIC Court of Appeals identified the very same ICRA provision that she now references. Ex. H at 4 (citing 25 U.S.C. § 1302(a)(8)).[10] Whatever this criticism of the Tribal Courts' assessment of the scope of their authority over Plaintiff is intended to convey, it presents no basis for concluding that the Tribal Courts' judgments are void for lack of personal jurisdiction.

---

[10] The Indian Civil Rights Act provides: "No Indian tribe in exercising powers of self-government shall . . . deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." 25 U.S.C. § 1302(a)(8).

In any event, Plaintiff appears to agree that her personal-jurisdiction argument should be determined by reference to traditional considerations of due process, whether those considerations stem from the U.S. Constitution or the Indian Civil Rights Act. Pl.'s Summ. J. Mem. 20–21 (citing ICRA and asserting that "due process applies"). At least one court has found, generally, that "[t]o exercise civil authority over a defendant, a tribal court must have both personal jurisdiction and subject matter jurisdiction." *Water Wheel Camp*, 642 F.3d at 819 (citing 18 William Reade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 8644.50 (rev.perm.ed. 2006)). The Ninth Circuit has also indicated that the "'consensual relationship' analysis under *Montana* resembles the Court's Due Process Clause analysis for purposes of personal jurisdiction," *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1138 (9th Cir. 2006), and there is not a "more rigorous test of personal jurisdiction applicable to tribal courts," *Allstate Indem. Co. v. Stump*, 191 F.3d 1071, 1075–76 (9th Cir. 1999).

The Court finds no flaw in the Tribal Courts' determinations that they had the authority to adjudicate the dissolution proceeding Defendant filed, even though Plaintiff was a nonmember who did not live on PIIC land. In rejecting Plaintiff's argument, the PIIC Court of Appeals first found that the relevant provisions of the PIIC's Community Courts Ordinance allowed the Tribal Court to exercise personal jurisdiction over Plaintiff even though she lived outside the exterior boundaries of the reservation. Second, the Court of Appeals found no support for Plaintiff's suggestion that there had been anything unfairly prejudicial about the way the Tribal Court's proceedings were conducted, concluding that she was provided proper notice and had the opportunity to be heard during a four-day trial,

19

after which the court issued a 65-page order with detailed findings and conclusions. Ex. H at 5.

Third, the Court of Appeals examined the number and nature of Plaintiff's contacts with the PIIC and found them sufficient to support the exercise of personal jurisdiction.

> Here, [Kristin] had numerous contacts with the [PIIC], listed in the Community Court's opinions.[] She married a Community member. Her children with [Robert] are Community members. The family derived their principal income and their assets from per capita payments that [Robert] received from the Community. Both parties and their children received health insurance from the Community. [Kristin] supported the children's connections with the Community by attending cultural events in the Community with the children.
> . . . .
> Not only are [Kristin's] contacts with [the Tribe] numerous, but they are also specifically tied to the Community's interests in regulating the subjects of the dissolution action. It is self-evident that the Community has an interest in the domestic relations of its members. The Community also has vital interests in the health, safety, education, and cultural growth of the parties' children. Since the parties' income and assets primarily come from the Community's per capita payments, the Community has an interest in the disposition of these monies.
> . . . .

*Id.* at 5–6 (footnote omitted).[11]

In addition, the PIIC Court of Appeals noted that having Plaintiff participate in the Tribal Court proceeding was not significantly burdensome to Plaintiff because she lived within Minnesota and her residence was less than 50 miles from the court. *Id.* at 6. It also

---

[11] The PIIC Court of Appeals observed that Plaintiff did not challenge any of the Tribal Court's findings of fact from the order denying the motion to dismiss or in the final order for judgment. Ex. H. at 5 n.5.

observed that the Hennepin County District Court had acknowledged the Tribal Court's "concurrent jurisdiction over all aspects of the dissolution." *Id.* And the Court of Appeals found additional support for the exercise of personal jurisdiction as follows:

> The record establishes the Community's interests in the subjects of the dissolution in other ways. Prairie Island Family Services filed a petition in the Community Court for children in need of protection and assisted the parties in negotiating a parenting time schedule. The children's paternal grandfather also filed a petition in the Community Court to secure grandparenting time with the children.

Ex. H at 6.

Finally, although the PIIC Court of Appeals did not repeat this analysis, the Tribal Court made the following observations when it issued its Order denying Plaintiff's motion to dismiss the tribal proceedings:

> The Mother contends that the exercise of jurisdiction over a dissolution proceeding involving a non-domiciled and non-member of the Community violates the due process provisions of the Indian Civil Rights Act because a tribal court cannot exercise subject matter jurisdiction over a dissolution proceeding involving a non-domiciliary unless he has sufficient contacts with the Community to warrant satisfy the "minimum contacts" standard of International Shoe. This Court rejects the argument because it is contrary to United States Supreme Court precedents. The general rule is that a Court has in rem jurisdiction to dissolve the bonds of matrimony provided it has appropriate jurisdiction over one of the parties to that marriage. As the United States Supreme Court held in Williams v. North Carolina, 317 U.S. 287 (1942) a court need not have personal jurisdiction over a Defendant in a dissolution proceeding in order to terminate the marital relationship. See also Mahoney v. Mahoney, 433 NW2d 315 (Minn. App. 1988)[.] A Court does, however, have to have personal jurisdiction over a Defendant in order to direct him to pay alimony or attorney's fees, or to determine his rights to

ADD.045

> marital property not situated within the forum court's
> jurisdiction not acquired with per capita benefits.

Ex. B at 6.

Based on a thorough review of the decisions of the trial and appellate proceedings in the Tribal Courts and the information available in this record, the Court cannot conclude that the Tribal Courts' conclusions regarding personal jurisdiction were erroneous or deprived Plaintiff of due process of law. Indeed, the Court agrees that Plaintiff's contacts were sufficient to support the Tribal Court's exercise of jurisdiction. Plaintiffs' only argument here is that the PIIC Court of Appeals erred because it insufficiently explained how the tribal dissolution proceeding arose out of or related to Plaintiff's contacts with the forum because she did nothing more than passively receive per capita payments from the Tribe. Pl.'s Summ. J. Mem. 23. The foregoing summary of the Tribal Courts' decisions illustrates the flaw in Plaintiff's framing, and the Court rejects Plaintiff's argument as lacking support.

### ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**

1.    Plaintiff's Motion for Summary Judgment (Doc. 20) is **DENIED**;

2.    Defendant is entitled to judgment as a matter of law on Plaintiff's claim that the "Tribal Court exceeded the lawful limits of its jurisdiction," Compl. (Count I), and Plaintiff is not entitled to the injunctive, declaratory, or equitable relief requested in her pleading.

3.    Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**.

ADD.046

4.    Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 14) is **DENIED AS MOOT**.

**Let Judgment be entered accordingly.**

Date: November 26, 2024                    *s/Katherine Menendez*
                                           Katherine Menendez
                                           United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

Kristin Ann Tix

**JUDGMENT IN A CIVIL CASE**

Plaintiff,

v.

Case Number: 24-cv-01824-KMM-ECW

Robert William Tix

Defendant.

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

1.  Plaintiff's Motion for Summary Judgment (Doc. 20) is **DENIED;**

2.  Defendant is entitled to judgment as a matter of law on Plaintiff's claim that the "Tribal Court exceeded the lawful limits of its jurisdiction," Compl. (Count I), and Plaintiff is not entitled to the injunctive, declaratory, or equitable relief requested in her pleading.

3.  Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE.**

4.  Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 14) is **DENIED AS MOOT.**

Date: 11/27/2024

KATE M. FOGARTY, CLERK

ADD.048