## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

KRISTIN ANN TIX, now known as, KRISTIN ANN MCGOWAN,

*Plaintiff-Appellant,*

v.

ROBERT WILLIAM TIX,

*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Minnesota,
Case No. 0:24-cv-01824-KMM-ECW
Hon. Judge Katherine Menendez

————————————————

**BRIEF OF *AMICI CURIAE* PRAIRIE ISLAND INDIAN COMMUNITY IN THE STATE OF MINNESOTA, BOIS FORTE BAND OF CHIPPEWA, FOND DU LAC BAND OF CHIPPEWA, GRAND PORTAGE BAND OF CHIPPEWA, LEECH LAKE BAND OF OJIBWE, LOWER SIOUX INDIAN COMMUNITY IN THE STATE OF MINNESOTA, MILLE LACS BAND OF OJIBWE, SHAKOPEE MDEWAKANTON SIOUX COMMUNITY, UPPER SIOUX COMMUNITY, RED LAKE BAND OF CHIPPEWA, AND WHITE EARTH BAND OF OJIBWE IN SUPPORT OF APPELLEE AND AFFIRMANCE**

————————————————

Joseph F. Halloran (MN #244132)
James Nichols (MN #0388096)
Roxanne Reinfeld (MN #0403729)
The Jacobson Law Group
Jacobson, Magnuson, Anderson & Halloran, P.C.
180 East Fifth Street, Suite 940
Saint Paul, MN 55101
(651) 644-4710

Jessie Stomski (MN #0388973)
General Counsel
Prairie Island Indian Community
5636 Sturgeon Lake Road
Welch, MN 55089
(651) 385-4137

*Attorneys for Lead Amicus Curiae Prairie Island Indian Community in the State of Minnesota and Lead Counsel for Tribal Amici*
*Additional Counsel Listed on Signature Pages*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF IDENTITY AND INTEREST ................................... 1

INTRODUCTION ............................................................................... 2

BACKGROUND .................................................................................. 3

   **I.**   The Prairie Island Indian Community, Its Homeland, and Its Reservation. ... 3

     A.   The Dakota's Homeland in Minnesota. ...................................... 4

     B.   Present Challenges to the Community's Territory. ................... 7

   **II.**   The Community's Tribal Court Operation and Jurisdiction. ...................... 8

ARGUMENT ..................................................................................... 14

   **I.**   The Tribal Court Has Jurisdiction over the Parties' Dissolution Proceedings.. ....................................................................................... 14

     A.   The Community Has Jurisdiction over the Appellant Because the Appellant Consented to and Maintained a Relationship with the Community. 14

     B.   The Appellant's Off-Reservation Residence Does Not Preclude Tribal Court Jurisdiction. ............................................................................. 18

   **II.**   The Tribal Court and Community Are Required Parties. .......................... 21

     A.   Further Proceedings Must Account for the Community's Interest in the Subject of the Action. .......................................................................... 21

     B.   The Tribal Court and the Community Each Have Legally Protected Interests in the Continued Validity of Its Laws and Preventing Collateral Attack on Tribal Court Decisions. ........................................................ 23

     C.   Complete Relief Cannot Be Afforded Without the Tribal Court and Community. ........................................................................................ 26

CONCLUSION ................................................................................. 28

Appellate Case: 24-3487    Page: 2    Date Filed: 04/10/2025 Entry ID: 5505365

CERTIFICATE OF COMPLIANCE ........................................................................32

CERTIFICATE OF SERVICE ................................................................................33

ii

# TABLE OF AUTHORITIES

## Cases

*Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002) ....................23

*Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe*, 609 F.3d 927 (8th Cir. 2010) .................................................................................... 15, 16, 19

*Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484 (8th Cir. 2006) ...................................................................................................22

*Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am., Inc.*, 953 F.2d 376 (8th Cir. 1992) .............................................................................22

*Dolgencorp, Inc. v. Mississippi Band of Choctaw*, 746 F.3d 167 (5th Cir. 2014) ..17

*E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774 (9th Cir. 2005) ........... 24, 27

*Enterprise Management Consultants v. United States ex rel. Hodel*, 883 F.2d 890 (10th Cir.1989) ...........................................................................22

*Fairview Health Services v. Armed Forces Office of Royal Embassy of Saudi Arabia*, 679 F. Supp. 3d 811 (D. Minn. 2023) ......................................................21

*Great N. Ry. Co. v. Johnson*, 254 F. 683 (8th Cir. 1918) ........................................16

*Gwartz v. Jefferson Memorial Hosp. Ass'n,* 23 F.3d 1426 (8th Cir. 1994) ........21

*Haaland v. Brackeen*, 599 U.S. 255 (2023)..........................................................27

*In re Musel*, 631 B.R. 744 (Bankr. D. Minn. 2021)......................................... 24, 25

*Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9 (1987) ......................................... 23, 26

*Knighton v. Cedarville Rancheria of N. Paiute Indians*, 922 F.3d 892 (9th Cir. 2019)........................................................................................................ 16, 17

*Kodiak Oil & Gas (USA), Inc. v. Burr*, 932 F.3d 1125 (8th Cir. 2019) ........... 17, 23

*Lexington Ins. Co. v. Smith*, 117 F.4th 1106 (9th Cir. 2024)...................................18

iii

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).............................22

*Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130 (1982) .........................................18

*Montana v. United States,* 450 U.S. 544 (1981)................................. 3, 10, 11, 14-20

*N. Arapaho Tribe v. Harnsberger,* 697 F.3d 1272 (10th Cir. 2012) ......................24

*Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985)..............................................................................................................26

*Nevada v. Hicks*, 533 U.S. 353 (2001)...................................................................15

*Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316 (2008) .................................................................................................... ..15, 17

*Plains Commerce. Lexington Ins. Co. v. Smith*, 94 F.4th 870 (9th Cir. 2024).. 17-19

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968) ........27

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978).......................... 11, 16, 17, 18

*St. Pierre v. Norton*, 498 F. Supp. 2d 214 (D.D.C. 2007) ................................ 23, 24

*State v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 371 P.3d 255 (Alaska 2016) ....................................................................................................16

*Strate v. A-1 Contractors*, 520 U.S. 438 (1997) ....................................................15

*Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians*, 665 N.W.2d 899 (Wisc. 2003)....................................................................................25

*Turpen v. Muckleshoot Tribal Ct.*, No. C22-0496-JCC, 2023 WL 4492250, at *3 (W.D. Wash. July 12, 2023)......................................................................... 17, 19

*Two Shields v. Wilkinson*, 790 F.3d 791 (8th Cir. 2015)........................... 23, 24, 26

*United States v. Cooley*, 593 U.S. 345 (2021) .......................................................17

*Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892 (10th Cir. 2022)..................................................................................................................20

iv

*Williams v. Lee*, 358 U.S. 217 (1959) ......................................................24

**Statutes and Legislative Materials**

25 U.S.C. § 1901(3) ...........................................................................11

25 U.S.C. § 2710(b)(2)(B)(ii) ..............................................................13

26 U.S.C. § 139E .............................................................................25

Act of August 19, 1890, 26 Stat. 336...................................................6

Act of July 4, 1884, 23 Stat. 76.........................................................6

Act of June 29, 1888, 25 Stat. 217.....................................................6

Act of March 2, 1889, 25 Stat. 980.....................................................6

Act of March 3, 1885, 23 Stat. 362.....................................................6

Act of May 15, 1886, 24 Stat. 29.......................................................6

Indian Reorganization Act, 48 Stat. 984...............................................6

PIIC Court's Ord., § 5, https://prairieisland.org/uploads/Court-
Ordinance_01.23.23.pdf .................................................................9

PIIC Domestic Relations Ord., § 7, https://prairieisland.org/uploads/Domestic-
Relations-FINAL-03.29.23.pdf .................................. 11, 13, 17, 20, 24

PIIC Gaming Revenue Allocation Ord., § 101 ................................. 13, 25

PIIC Homesite Assignment Ord., § 1.03,
https://prairieisland.org/uploads/Homesite-Assignment-11-01-12-09_2023-04-
19-174030_gchj.pdf.......................................................................12

PIIC Homesite Assignment Ord., § 1.11,
https://prairieisland.org/uploads/Homesite-Assignment-11-01-12-09_2023-04-
19-174030_gchj.pdf.......................................................................12

Treaty with the Sioux—Sisseton and Wahpeton Bands, June 19,1858, 12 Stat.
1037 ..........................................................................................5

v

## Rules

Fed. R. App. P. 29(a)(2) ............................................................................1

Fed. R. App. P. 29(a)(4)(E) .......................................................................1

Fed. R. Civ. P. 19 ................................................................ 3, 21-24, 26, 27

Minn. Gen. R. P. 10 .................................................................................25

PIIC App. P. 103(b), https://prairieisland.org/uploads/Appellate-Pro-FINAL-01.26.23.pdf ..................................................................................................9

PIIC R. Civ. P. 1, 2, 6, 14, 15, 20, https://prairieisland.org/uploads/Rules-of-Civ-Pro-FINAL-01.26.23.pdf ......................................................................9

## Regulations

25 C.F.R. § 162.014(a)(2) .........................................................................25

89 Fed. Reg. 75990 ..................................................................................25

## Secondary Sources

2016-25 Leech Lake Tribal Court Data, LLBO Court (Mar. 2025) ........................11

2023-25 PIIC Court Data, PIIC Court (Mar. 2025) ................................................10

Antoine Denis Raudot, Memoir Concerning the Different Indian Nations of North America, Letter 51, published in The Indians of the Western Great Lakes, 1615-1760, W. Vernon Kinietz, ed. (Ann Arbor: University of Michigan Press, 1996 Ed.) ...................................................................................................4

Const. and Bylaws of the Prairie Island Indian Community in the State of Minnesota (approved June 20, 1936), https://maint.loc.gov/law/help/american-indian-consts/PDF/36026811.pdf....................................................................6

Gary Clayton Anderson, *Myrick's Insult*, 48 Minn. Hist. 199 (1983).......................5

Letter from Earl Barlow, Area Director, Bureau of Indian Affairs, to Robert Cupit, Minnesota Environmental Quality Board cmt. ltr. 16 (Jan. 1991) *contained within* Minnesota Environmental Quality Board, Prairie Island Independent

Appellate Case: 24-3487    Page: 7    Date Filed: 04/10/2025 Entry ID: 5505365

Spent Fuel Installation, Final Environmental Impact Statement at 7.1 (Apr. 12, 1991), www.leg.state.mn.us/docs/pre2003/other/910498.pdf ..............................7

*Mississippi River at Red Wing – Below Lock and Dam #3, Recent Crests, Historic Crests,* NATIONAL WATER PREDICTION SERVICE, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION https://water.weather.gov/ahps2/hydrograph.php?gage=rdwm5&wfo=mpx, (last updated Apr. 3, 2025) ................................................................................7

PIIC, *A New Buffalo*, https://prairieisland.org/who-we-are/our-people/tribal-gaming ...........................................................................................13

PIIC, *Economic Impact*, https://prairieisland.org/good-neighbor/economic-impact (last visited Mar. 13, 2025) ...................................................................4

PIIC, *Fact Sheet* (February 12, 2024).......................................................8

PIIC, *Good Stewards*, https://prairieisland.org/who-we-are/our-land (last visited Apr. 2, 2025)............................................................................7

PIIC, *Media, The Prairie Island Indian Community Fact Sheet*, https://prairieisland.org/media#:~:text=Prairie%20Island%20Tribal%20members%20are,under%2018%20years%20of%20age (last visited Mar. 21, 2025). .........6

PIIC, *Ordinances*, https://prairieisland.org/our-government/ordinances (last visited Apr. 3, 2025)............................................................................9

PIIC, *Our Departments*, https://prairieisland.org/our-government/our-departments (last visited Mar. 13, 2025) ...................................................................4

PIIC, *Tribal Court*, https://prairieisland.org/our-government/tribal-court (last visited Apr. 2, 2025)............................................................................9

Sarah Deer & John E. Jacobson, *Dakota Tribal Courts in Minnesota: Benchmarks of Self-Determination*, 39 WM. MITCHELL L. REV. 611, 622 (2013); PIIC Const., art. XI................................................................................9

U.S. Army Corps of Engineers, Final Environmental Impact Statement: Operation and Maintenance 9-foot Navigation Channel, Upper Mississippi River, at 150-51 (Aug. 1974), https://apps.dtic.mil/sti/tr/pdf/ADA133511.pdf ..............................7

Appellate Case: 24-3487    Page: 8    Date Filed: 04/10/2025 Entry ID: 5505365

U.S. Nuclear Regulatory Commission, Final EA For the Proposed Renewal of
Nuclear Regulatory License No. SNM-2506, Docket NO. 72-0010 at 4-44 (June
2015), https://www.nrc.gov/docs/ML1509/ML15098A026.pdf...........................8

United States Nuclear Regulatory Commission Office of Inspection and
Enforcement, *Information Notice No. 79-27, Steam Generator Tube Ruptures at
Two PWR Facilities* (Nov. 16, 1979), www.nrc.gov/reading-rm/doc-
collections/gen-comm/info-notices/1979/in79027.html .......................................7

Appellate Case: 24-3487    Page: 9    Date Filed: 04/10/2025 Entry ID: 5505365

## STATEMENT OF IDENTITY AND INTEREST

The eleven federally recognized Tribes in the State of Minnesota ("Amici Tribes") submit this brief in support of affirmance of the Minnesota District Court's holding that Prairie Island Community Court has jurisdiction over a dissolution proceeding between a tribal member and non-member.

Amici Tribes are sovereigns that exercise full powers of self-governance. While their Reservations vary in size, all of the Amici Tribes have tribal courts that provide relief to members and non-members and exercise jurisdiction over non-member conduct on reservation land, non-members entering consensual relationships with the tribe, and non-members whose conduct impacts or threatens the health safety and welfare of the tribe. This case implicates the Amici Tribes' interest in the lawful exercise of their authority over dissolution proceedings involving members and non-members and custody proceedings involving tribal children.[1]

---

[1] Under Rule 29(a)(2) of the Federal Rules of Appellate Procedure, the undersigned counsel states that all parties have consented to the filing of this brief. Under Rule 29(a)(4)(E) of those Rules, the undersigned certify that no party's counsel authored this brief in whole or in part, no party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person other than the Amici, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

1

**INTRODUCTION**

This case involves an unremarkable exercise of jurisdiction by the Prairie Island Indian Community Tribal Court ("Tribal Court") over a contested marriage dissolution between a Prairie Island Indian Community ("Community") member ("Appellee") and his non-member ex-spouse ("Appellant") and reflects the common-place practice in Minnesota of respectful consultation between tribal and state courts where their cases may overlap with a proceeding pending in the other. The couple have three tribal member children and, while married, received significant financial support, health insurance, and other services from the Community, administered under Community law on Community land. Appendix of Appellee ("Aple.-App.") 11-12; Aple.-App. 111, R. Doc. 17-1, at 108. On February 9, 2022, Appellee commenced a dissolution proceeding in the Tribal Court and Appellant simultaneously commenced a dissolution proceeding in the Hennepin County District Court. Aple.-App. 44, R. Doc. 17-1, at 41. The State Court consulted with the Tribal Court about the appropriate forum to proceed and concluded that the State Court and Tribal Court had "concurrent jurisdiction over all aspects of the dissolution" and that the "tribal dissolution…has priority" over the State Court proceeding. Aple.-App. 21, R. Doc. 17-1, at 3; Aple.-App. 31, R. Doc. 17-1, at 13. The State Court stayed its proceedings pending resolution of the Tribal Court proceeding. Aple.-App. 31, R. Doc. 17-1, at 13. Following a 4-day trial, the Tribal

2

Court found jurisdiction over the marriage dissolution based on the Appellant's long-term consensual relationship with the Community. Aple.-App. 108, R. Doc. 17-1, at 105. The Tribal Court of Appeals affirmed, and the United States District Court confirmed that the Tribal Court's exercise of jurisdiction over the Appellant was proper, falling squarely into the first *Montana* exception. Aple.-App. 116-20, R. Doc. 17-1, at 113-117; Appellant's Appendix ("Aplt.-App.") 89-91, R. Doc. 30, at 13-15. The District Court's judgment should be affirmed.

But if any further proceedings are allowed, then they must account for the significant interest of the Community and the Tribal Court. The Community has jurisdiction over property at issue in the dissolution proceedings, representing a significant interest in the proceeding. And the Community's absence from this case impairs its ability to protect its sovereign interests, making it a required party under Fed. R. Civ. P. 19.

## BACKGROUND

### I. The Prairie Island Indian Community, Its Homeland, and Its Reservation.

The Community is a federally recognized Indian Tribe and a modern body politic of the Mdewakanton Dakota who have had a government-to-government

3

relationship with the United States for over 200 years.[2] Today, the Community is a thriving sovereign that provides critical governmental services—including health, environmental protection, cultural preservation, education, language revitalization, housing, social welfare, law enforcement and judicial services[3]—to its members and other eligible individuals. It is an intergovernmental partner with the State, surrounding cities and counties, and a critical business and philanthropic entity in local and regional economies.[4] And although its Reservation size has been impacted by several engagements with the United States, the Community's sovereignty is robust.

### A.  The Dakota's Homeland in Minnesota.

The Dakota occupied territory that is now known as the states of Minnesota, Iowa, and Wisconsin long before Europeans first penetrated the upper Mississippi in the late 17th century.[5] Their vast territory was reduced through engagements with

---

[2] The Community is a successor in interest to the Mdewakanton Band of Dakota who were signatories to treaties with the United States between 1805 and 1858 and the subject of various Acts of Congress from 1863 to 2006**.**

[3] Prairie Island Indian Community ("PIIC"), *Our Departments*, https://prairieisland.org/our-government/our-departments (last visited Mar. 13, 2025).

[4] PIIC, *Economic Impact*, https://prairieisland.org/good-neighbor/economic-impact (last visited Mar. 13, 2025).

[5] Antoine Denis Raudot, Memoir Concerning the Different Indian Nations of North America, Letter 51, published in The Indians of the Western Great Lakes, 1615-1760, W. Vernon Kinietz, ed. (Ann Arbor:  University of Michigan Press, 1996 Ed.), at 377.

the United States, accelerated by treaty making. In just over 50 years, between 1805-1858, the Dakota were completely dispossessed of title to their land and relegated to a reservation in west central Minnesota that was too small, remote, and lacking in natural resources sufficient to sustain the people.[6]

On August 18, 1862, tensions—fueled by the United States' corrupt dealings, failed treaty promises, and the Dakota's starvation—erupted into violence that developed into a full-scale war.[7] The war raged for just over a month but caused widespread destruction and significant military and civilian casualties.

Following the penultimate battle at Wood Lake, many Dakota were imprisoned at Fort Snelling and in South Dakota, Iowa, and Nebraska; others were relocated to reservations established outside of Minnesota; and, many avoided imprisonment and relocation by fleeing west and some north into Canada, where they received land reserves and protection from the Crown[8]. Against all odds, a group of Dakota maintained a presence in Minnesota in the years following the 1862 War.

---

[6] Treaty of June 19,1858, 12 Stat. 1037 (reducing the Community's Reservation by one half).

[7] Gary Clayton Anderson, *Myrick's Insult*, 48 Minn. Hist. 199, 199-206 (1983).

[8] 38 of 303 Dakota convicted by a military commission, without legal counsel or translators, were hung on December 26, 1862, in the main square in Mankato, Minnesota, still the largest mass execution in United States history. https://www.usdakotawar.org/history/aftermath/trials-hanging.

Appellate Case: 24-3487    Page: 14    Date Filed: 04/10/2025 Entry ID: 5505365

Despite shocking deprivations, the Dakota survived and remained in Minnesota where scattered villages grew at Red Wing and Wabasha in the Dakota homeland known as *Tinta Wita*. By 1884, Congress appropriated funds for the support of certain of the Mdewakanton Sioux in Minnesota[9] and subsequent Acts appropriated funds for land acquisition at Prairie Island.[10]

Following enactment of the Indian Reorganization Act,[11] the Dakota at Prairie Island adopted a Constitution and Bylaws in 1936.[12] The United States also purchased 414 acres of land for the benefit of the Community near the cities of Red Wing and Hastings, Minnesota. Over several years, the Community added 2,774 acres of reservation trust land to its original Reservation. Despite these efforts, the Reservation is still disproportionally small compared to the once vast Dakota territory and the Community's burgeoning membership.[13]

---

[9] 23 Stat. 76, 87; 23 Stat. 362, 375.
[10] 24 Stat. 29, 39-40; 25 Stat. 217, 228-229; 25 Stat. 980, 992-993; 26 Stat. 336, 349.
[11] 48 Stat. 984.
[12] Const. and Bylaws of the Prairie Island Indian Community in the State of Minnesota (approved June 20, 1936), https://maint.loc.gov/law/help/american-indian-consts/PDF/36026811.pdf.
[13] PIIC, *Media, The Prairie Island Indian Community Fact Sheet*, https://prairieisland.org/media#:~:text=Prairie%20Island%20Tribal%20members%20are,under%2018%20years%20of%20age (last visited Mar. 21, 2025). Only 114 of its nearly 1,137 enrolled members able to live on the Reservation.

Appellate Case: 24-3487    Page: 15    Date Filed: 04/10/2025 Entry ID: 5505365

### B. Present Challenges to the Community's Territory.

Federal decisions over the last century created additional challenges to the Community's ability to provide Reservation housing sufficient to meet the demands of its growing membership: flooding and nuclear waste.

First, much of the Reservation is in the 100-year floodplain, with around 1,295 acres being composed of un-buildable land and open water.[14] The Reservation experiences chronic flooding caused by Lock and Dam #3 on the Mississippi River. Built by the War Department in 1938, adjacent to the Community's Reservation, the Dam affected Mdewakanton village sites, ceremonial areas, and burial sites,[15] And causes regular, periodic inundation of significant portions of the Reservation.[16]

Second, in the early 1970s, the United States authorized the establishment of the Prairie Island Nuclear Generating Plant ("PINGP") adjacent to the Reservation[17]

---

[14] PIIC, *Good Stewards*, https://prairieisland.org/who-we-are/our-land (last visited Apr. 2, 2025).

[15] *See,* U.S. Army Corps of Engineers, Final Environmental Impact Statement: Operation and Maintenance 9-foot Navigation Channel, Upper Mississippi River, at 150-51 (Aug. 1974), https://apps.dtic.mil/sti/tr/pdf/ADA133511.pdf.

[16] *See Mississippi River at Red Wing – Below Lock and Dam #3, Recent Crests, Historic Crests,* NATIONAL WATER PREDICTION SERVICE, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION https://water.weather.gov/ahps2/hydrograph.php?gage=rdwm5&wfo=mpx, (last updated Apr. 3, 2025).

[17] *See* United States Nuclear Regulatory Commission Office of Inspection and Enforcement, *Information Notice No. 79-27, Steam Generator Tube Ruptures at Two PWR Facilities* (Nov. 16, 1979), www.nrc.gov/reading-rm/doc-collections/gen-comm/info-notices/1979/in79027.html.

and in 1991, authorized on-site storage of nuclear waste from PINGP.[18] Today, over 2 million pounds of nuclear waste is stored at PINGP[19] and over 4 million pounds will be stored at the facility when the site ceases operations.[20]

These threats result in many members living outside the Reservation, while maintaining robust relationships with the Community. Similarly, the small land base means that there are few on-Reservation businesses to serve the needs of the Community, but many have substantial relationships with the Community without a physical presence on the Reservation.

## II. The Community's Tribal Court Operation and Jurisdiction.

The Community's governmental operations include an efficient, modern court system with a docket that includes all manners of civil litigation—from commercial disputes to domestic relations—involving members and non-members.

---

[18] Storage was permitted over the objection of the Community and the BIA. Letter from Earl Barlow, Area Director, Bureau of Indian Affairs, to Robert Cupit, Minnesota Environmental Quality Board cmt. ltr. 16 (Jan. 1991) *contained within* Minnesota Environmental Quality Board, Prairie Island Independent Spent Fuel Installation, Final Environmental Impact Statement at 7.1 (Apr. 12, 1991), www.leg.state.mn.us/docs/pre2003/other/910498.pdf.

[19] *See* U.S. Nuclear Regulatory Commission, Final EA For the Proposed Renewal of Nuclear Regulatory License No. SNM-2506, Docket NO. 72-0010 at 4-44 (June 2015), https://www.nrc.gov/docs/ML1509/ML15098A026.pdf.

[20] *Id.* at 4-26 to 4-28. By the end of 2025 there will be 55 casks stored at Prairie Island comprising 2,420,000 pounds of nuclear waste. By the end of the PINGP operating period (2054) the amount will be 4,210,800 pounds. PIIC, *Fact Sheet* (February 12, 2024).

8

The Court was established in 1994.[21] It consists of a Trial Court, Children's Court, and an Appellate Court [22] with two full time, experienced staff, one chief judge, two associate judges, and four appellate judges.[23] All judges are licensed attorneys with significant experience practicing and adjudicating matters in tribal court systems.

Community law guarantees due process for litigants. Its laws are publicly available[24] and provide, among others, the following protections:

- Service and notice requirements, discovery procedures and the option for a jury trial upon request.[25]

- Proceedings governed by the Federal Rules of Evidence,[26] "in a manner substantially similar to" the Federal Rules of Civil Procedure, and in accordance with "general principles of fairness and justice."[27]

- The right to an appeal governed by the Community's Appellant Procedure Code and the Federal Rules of Appellate Procedure when "necessary to promote fairness and justice to parties. . . ."[28]

---

[21] Sarah Deer & John E. Jacobson, *Dakota Tribal Courts in Minnesota: Benchmarks of Self-Determination*, 39 WM. MITCHELL L. REV. 611, 622 (2013); PIIC Const., art. XI.

[22] PIIC Court's Ord., § 5(a), https://prairieisland.org/uploads/Court-Ordinance_01.23.23.pdf.

[23] *See* PIIC, *Tribal Court*, https://prairieisland.org/our-government/tribal-court (last visited Apr. 2, 2025); PIIC Court's Ord., §§ 7(a); 7(h)(6).

[24] The Community's laws are widely accessible through a user-friendly website which contains a search function. *E.g.* PIIC, *Ordinances*, https://prairieisland.org/our-government/ordinances (last visited Apr. 3, 2025).

[25] PIIC R. Civ. P. 2, 6, 14, 15.

[26] PIIC R. Civ. P. 20(a).

[27] PIIC R. Civ. P. 1(e).

[28] PIIC App. P. 103(b).

9

Appellant received all these process protections at trial after which the Tribal Court issued a 65-page order with detailed findings and conclusions. Aple.-App. 108, R. Doc. 17-1, at 105.

The Court exercises jurisdiction over member and non-member disputes in accordance with Community law.[29] Members and non-members regularly seek reprieve through the Tribal Court. In 2023, 81 cases were filed in Tribal Court and in 2024, 63 cases were filed.[30] Many non-member cases involve the Community's exercise of jurisdiction over domestic relations.[31] In 2023, 50 cases involving non-members were filed—3 custody proceedings, 3 child welfare proceedings, and 8 divorce proceedings.[32] In 2024, 43 cases were filed with the Tribal Court involving non-members, 8 child custody proceedings and 6 divorce proceedings.[33]

This exercise of jurisdiction is not unique to the Community—Courts of the Amici Tribes regularly exercise jurisdiction over dissolution proceedings involving non-members. For example, since 2016, the Leech Lake Band of Ojibwe Tribal Court licensed 144 marriages, 63 involving non-Indian spouses and 38 involving

---

[29] Those laws are consistent with U.S. Supreme Court precedent. *E.g., Montana v. United States*, 450 U.S. 544, 566 (1981).

[30] 2023-25 PIIC Court Data, PIIC Court (Mar. 2025).

[31] *Id.* Most of the remaining non-member cases are Tribal citations involving the protection of the Community's "political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566.

[32] 2023-25 PIIC Court Data, PIIC Court (Mar. 2025).

[33] *Id.*

Appellate Case: 24-3487     Page: 19     Date Filed: 04/10/2025 Entry ID: 5505365

members of other tribes[34] and the Court has adjudicated the dissolution of 216 marriages—142 of those involving one party that was not a Band member.[35] The Tribal Amici's exercise of jurisdiction over family law cases is unremarkable and a part of the routine operation of the tribal court systems.

Community law recognizes that the Tribal Court may exercise "jurisdiction over all Community members and their spouses for the dissolution of a marriage before the Tribal Courts of the Prairie Island Mdewakanton Dakota Community."[36]

The Community exercises its inherent sovereign authority over "internal and social relations" through the Community's Domestic Relations Ordinance,[37] because dissolutions implicate the care and custody of tribal member children, who are "vital to the continued existence and integrity of" the Community, without whom tribal sovereignty would eventually self-extinguish.[38]

Divorce proceedings also address property that is within the Community's exclusive jurisdiction. For example, the Community assigns non-alienable Indian land within its Reservation to its members ("Homesites"). These Homesites are

---

[34] 2016-25 Leech Lake Tribal Court Data, LLBO Court (Mar. 2025).
[35] *Id.*
[36] PIIC Dom. Rel. Ord., § 7(a), https://prairieisland.org/uploads/Domestic-Relations-FINAL-03.29.23.pdf.
[37] *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55-56 (1978) (internal quotations omitted). The Community's authority is at its apex when exercised over internal relations. *See, e.g., id; Montana*, 450 U.S. at 565-66.
[38] 25 U.S.C. § 1901(3).

11

frequently occupied by a Community members and their non-member partner, but the Community's Homesite Ordinance prohibits non-members from holding Homesites and in a dissolution proceeding Homesites must remain with the Community member.[39] The use of Homesites by a non-member is entirely premised on the non-member's consensual relationship with the Community member and the Community—upon the death of the member or, a divorce, the legal basis for non-member occupancy ends and they have no further right under tribal law to occupy or use the property except with express permission of the Community.[40]

The Community provides myriad benefits to its citizens and to their spouses and children, including but not limited to health and dental coverage, educational benefits, and housing benefits. Non-members receive these benefits by virtue of their relationship with a member.

Community members may also receive distributions of net revenue, commonly referred to as "per capita" payments,' from the Community's on-Reservation government-owned gaming activities that are conducted and regulated

---

[39] *E.g.,* PIIC Homesite Assignment Ord., § 1.03 subd. 2., https://prairieisland.org/uploads/Homesite-Assignment-11-01-12-09_2023-04-19-174030_gchj.pdf.

[40] The Community, in its discretion, may permit a non-member spouse to hold a life estate in Homesites, particularly in instances where the non-member spouse is widowed and there are Community member children. PIIC Homesite Assignment Ord., § 1.11 subd. 3., https://prairieisland.org/uploads/Homesite-Assignment-11-01-12-09_2023-04-19-174030_gchj.pdf.

12

under Tribal law and the Indian Gaming Regulatory Act.[41] The per capita payments must be for the welfare of the Community members.[42] The Community's Gaming Revenue Allocation Ordinance further requires that per capita payments be used to promote tribal self-sufficiency, promote individual member self-sufficiency and provide for the long range security of the Community and its members.[43] Non-member spouses may benefit from these economic resources by virtue of their relationship with a Community member and, thereby, the Community.

While some Community benefits may be extended to non-members or their children in dissolutions, the Domestic Relations Ordinance dictates that "[p]er capita payments from the Community to its eligible members are the separate property of the person to whom they are issued"[44] and per capita payments may not be considered when establishing spousal maintenance because they "are the collective property of the Community until and unless they are distributed" and there is no "property right to future per capita distributions."[45] And even when a member dies,

---

[41] PIIC, *A New Buffalo*, https://prairieisland.org/who-we-are/our-people/tribal-gaming.

[42] 25 U.S.C. § 2710(b)(2)(B)(ii).

[43] PIIC Gaming Revenue Allocation Ord., § 101.

[44] PIIC Dom. Rel. Ord., § 7(d)(5), https://prairieisland.org/uploads/Domestic-Relations-FINAL-03.29.23.pdf.

[45] PIIC Dom. Rel. Ord., § 7(e)(4), https://prairieisland.org/uploads/Domestic-Relations-FINAL-03.29.23.pdf.

Appellate Case: 24-3487    Page: 22    Date Filed: 04/10/2025 Entry ID: 5505365

a non-member spouse is not entitled to per capita payments—the receipt of per capita payments is contingent on a continued relationship to the Community.

## ARGUMENT

### I. The Tribal Court Has Jurisdiction over the Parties' Dissolution Proceedings.

The Tribal Court, the State Court, and the District Court correctly held that the Tribal Court has jurisdiction over this dispute, arising from a non-member's consensual relationship with the Community and a Community member. Aple.-App. 31, 40, 114-116, R. Doc. 17-1, at 13, 22, 111-113; Aplt.-App. 89-90, R. Doc. 30, at 13-14. The non-member married a Community member, relied on the Community for household income and insurance benefits, and participated in on-Reservation Community civic and social events. Aplt.-App. 90, R. Doc. 30, at 14. The dissolution proceedings arise from and implicate that conduct. The District Court applied black-letter law of tribal government jurisdiction over non-members, as established in *Montana v. United States,* 450 U.S. 544 (1981), and succeeding cases, and should be affirmed.

#### A. The Community Has Jurisdiction over the Appellant Because the Appellant Consented to and Maintained a Relationship with the Community.

The Community's exercise of jurisdiction is proper under *Montana*. Indian tribes are sovereign governments with the right to "make their own laws and be governed by them," and to "regulate nonmember behavior that implicates tribal

14

governance and internal relations." *Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe*, 609 F.3d 927, 936 (8th Cir. 2010) ("API") (quoting *Nevada v. Hicks*, 533 U.S. 353, 361 (2001)); *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 334-35 (2008). The United States Supreme Court recognizes at least two instances in which a tribe may exercise jurisdiction over non-members: (1) if the non-member enters a consensual relationship with "the tribe or its members, through commercial dealing, contracts, leases, or other arrangements;" or, (2) if the non-member's conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 565-66. The *Montana* framework was developed to resolve questions of tribal jurisdiction over nonmembers on non-Indian land within a Reservation. *Plains Com.*, 554 U.S. at 330; *Strate v. A-1 Contractors*, 520 U.S. 438, 454 (1997). But it also applies when assessing jurisdiction over nonmembers on Indian land, *API*, 609 F.3d at 935–36, with the context that tribes have the strongest claim to exercise jurisdiction in those circumstances. *Strate*, 520 U.S. at 454 ("We can readily agree, in accord with *Montana*, [] that tribes retain considerable control over nonmember conduct on tribal land.").

The District Court correctly recognized that a consensual relationship with the Community or a member—the first "*Montana* exception"—is one basis for Tribal

Appellate Case: 24-3487    Page: 24    Date Filed: 04/10/2025 Entry ID: 5505365

Court jurisdiction over Appellant and the marriage dissolution proceeding.[46] Aplt.-App. 88-89, R. Doc. 30, at 12-13 (citing *Montana*, 450 U.S. at 565; *API*, 609 F.3d at 936). Tribal sovereign authority over non-members is at its apex in matters involving domestic relationships and when tribal property is implicated. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55-56 (1978); *Knighton v. Cedarville Rancheria of N. Paiute Indians*, 922 F.3d 892, 904-05 (9th Cir. 2019) (Tribe had jurisdiction over nonmember who entered a consensual relationship with the tribe, mismanaged tribal money and took tribal property); *State v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 371 P.3d 255, 265-66 (Alaska 2016).

Appellant entered a consensual relationship with a Community member—the contract of marriage. *E.g., Great N. Ry. Co. v. Johnson*, 254 F. 683, 684 (8th Cir. 1918) ("[M]arriage is a civil contract."). Through that marriage, Appellant entered a relationship with the Community that was centered on Reservation activity. The marital household depended on financial benefits from the Community—per capita distributions of profit from the Community's on-Reservation gaming enterprise, government services from the Community, and healthcare provided on Reservation

---

[46] Tribal Amici focus on the District Court's holding under the first *Montana* exception. However, Tribal Court jurisdiction was also proper pursuant to: (1) the Community's inherent authority over family law matters involving tribal members, which is especially pertinent where tribal member child custody is at issue; (2) the Community's inherent authority over matters implicating tribal resources; and (3) the Community's authority under *Montana's* second exception. *E.g.*, Aple. Br. 15-16.

16

or paid for by on-Reservation government programs. *Turpen v. Muckleshoot Tribal Ct.*, No. C22-0496-JCC, 2023 WL 4492250, at *3 (W.D. Wash. July 12, 2023) (Tribal Court had jurisdiction over member and nonmember dissolution proceeding where the parties resided off-Reservation and nonmember accepted tribal benefits). The social, civic, and cultural life of the marital household also involved on-Reservation conduct, especially raising children of the marriage, all of whom are also enrolled Community members.

Appellant could reasonably anticipate that a dissolution proceeding might occur in the Tribal Court—indeed, the Community's publicly available laws explicitly informed her of this. *Plains Commerce*, 554 U.S. at 338; *Knighton*, 922 F.3d at 904; PIIC Dom. Rel. Ord., § 7(a). And the Court's exercise of jurisdiction here has a direct nexus to the Community's interest in the substantial on-Reservation elements of the marriage, including its inherent sovereignty over internal relations and tribal property.[47] *E.g., Santa Clara Pueblo v. Martinez,* 436 U.S. at 56.

---

[47] When a *Montana* exception is satisfied, it necessarily follows that the conduct implicates the tribe's authority in one of the areas described in *Plains Commerce*—"sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations." *Lexington Ins. Co. v. Smith*, 94 F.4th 870, 886 (9th Cir. 2024) (quoting *Plains Commerce*, 554 U.S. at 337); *Dolgencorp, Inc. v. Mississippi Band of Choctaw*, 746 F.3d 167, 174-75 (5th Cir. 2014). Insofar as *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125 (8th Cir. 2019) treated the *Plains Commerce* factors as additional elements that must be satisfied, the Supreme Court in *United States v. Cooley*, 593 U.S. 345 (2021), declined to adopt that approach. Regardless, the Tribal Court's jurisdiction is proper under *Kodiak's* construction because the consensual relationship directly implicates the Community's "tribal self-

17

**B.      The Appellant's Off-Reservation Residence Does Not Preclude Tribal Court Jurisdiction.**

Although the Appellant was engaged in a consensual relationship with the Community and a Community member, and is involved in a dispute arising from and implicating those relationships, she insists that she should be excused from the Tribal Court's jurisdiction because she and her ex-husband resided off the Community's Reservation. Her argument wrongly suggests that the *Montana* consensual relationship test also requires ongoing physical presence on a tribe's reservation and does not square with the plain language of *Montana* or the caselaw considering what constitutes "conduct on tribal lands." *E.g., Lexington Ins. Co. v. Smith*, 117 F.4th 1106, 1108 (9th Cir. 2024) (opinion respecting the denial of rehearing *en banc*).[48]

The Supreme Court has assessed the scope of tribal jurisdiction in numerous cases and never "held that nonmember *conduct* on tribal land equates to *physical presence* on that land." *Lexington Ins.*, 117 F.4th at 1108 (emphasis in original).

---

governance" and "internal relations" by challenging the Community's tribal laws regulating marriage—a power falling squarely within the Community's sovereign authority. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56 (1978).

[48] As the original panel in *Lexington* explained: "Nowhere in *Merrion* [*v. Jicarilla Apache Tribe*, 455 U.S. 130 (1982)] or in subsequent cases has the Court limited the definition of nonmember conduct on tribal land to physical entry or presence. Rather, the Court has explicitly recognized that a nonmember *either* entering tribal lands *or* conducting business with a tribe can make that person subject to a tribe's regulatory authority. We take the Court at its word." *Lexington Ins. Co. v. Smith*, 94 F.4th at 881 (emphasis in original).

18

Rather, "conduct on tribal land" for purposes of assessing tribal court jurisdiction means that the conduct "*bears some direct connection to tribal lands*." *Id*. at 1108, 1110 (emphasis in original); *see also API*, 609 F.3d at 941 ("The operative question for jurisdictional purposes [under the first *Montana* provision] is whether the [] claim has a sufficient nexus to the consensual relationship between [the tribal member's on-Reservation affairs] and [the off-Reservation nonmember].").[49] Even if on-Reservation physical presence is sporadic or non-existent, "a consensual marriage with a tribal member" coupled with the "consent[] to numerous contracts directly with the Tribe to" receive benefits from the tribe establishes a consensual relationship with a tribe. *Turpen*, 2023 WL 4492250, at *3.

As the Ninth Circuit recently confirmed, tribes' ability to regulate "consensual relationships" may be based on factors "apart from any physical entry" when the relationships implicate activity on tribal land. *Lexington Ins. Co. v. Smith*, 94 F.4th at 881. This "makes sense in our contemporary world in which nonmembers, through the phone or internet" can engage in a wide range of relationships that have an on-Reservation element and "significantly affect a tribe and its members without ever

---

[49] Appellant's reliance on *Attorney's Process & Investigation,* 609 F.3d 927, is misplaced. Appellant states that "[t]his case only involves application of the first *Montana* exception" but proceeds to invoke *API*'s discussion of the second *Montana* exception. App. Br. at 15-16. As explained above, *API*'s discussion of the first *Montana* exception turns on the *nexus* to Reservation affairs, not the nonmember's physical presence on the Reservation.

19

physically stepping foot on tribal land." *Id*. The principle applies with particular force to tribes like the Community that have a relatively small land base and large membership, where members and their families may live near, but not on, the reservation yet maintain close social, political, economic, and other ties to their tribe and on reservation activities. This was true for the Tix family, and it is not an unusual circumstance.

The contested issues in this case relate directly to tribal lands because the government services and the primary source of family income is derived from on-Reservation activity by the Community government that is distributed to members from the Reservation. *E.g., Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 902 (10th Cir. 2022) (Contractual relationship occurs on-Reservation when the property at issue is within the Reservation and the "Tribe conducts its business from tribal headquarters."); *see* PIIC Dom. Rel. Ord., § 7(e)(4) (Per capita payments "are the collective property of the Community until and unless they are distributed. . . .").

The District Court applied *Montana* correctly, and its decision should be affirmed as a proper application of binding precedent. Aplt.-App. 89-90, R. Doc. 30, at 13-14.

## II. The Tribal Court and Community Are Required Parties.

The District Court's decision should be affirmed, but there is an additional basis to foreclose further proceedings—the disposition of the Appellant's claims before the District Court would impair the interests of parties not joined in the action, thereby foreclosing the Court's ability to provide complete relief among the existing parties. The Community and Tribal Court are required parties under Fed. R. Civ. P. 19(a) because Appellant's claims before the District Court implicate: (i) the Tribal Court's decision on the scope of its jurisdiction; and, (ii) the Community's protectable interests in the integrity of its laws, the application and interpretation of those laws by its tribal judiciary, the treatment of tribal property, and the exercise of sovereign authority in innumerable consent-based interactions with persons and entities whose principal place of business or domicile are off of the Community's Reservation. Appellant failed, or refused, to join the Community or the Tribal Court in the proceedings below and her action cannot proceed without them.

### A. Further Proceedings Must Account for the Community's Interest in the Subject of the Action.

Rule 19 governs the compulsory joinder of a party. *Gwartz v. Jefferson Memorial Hosp. Ass'n,* 23 F.3d 1426, 1428 (8th Cir. 1994). The "basic consideration" is that a party is required if its "absence would render a judgment infirm, defective, or unfairly prejudicial in some fashion." *Fairview Health Services v. Armed Forces Office of Royal Embassy of Saudi Arabia*, 679 F. Supp. 3d 811, 823

21

(D. Minn. 2023). Rule 19 "is a pragmatic rule" turning on "considerations of efficiency and fairness in the particular case." *Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.*, 451 F.3d 484, 491 (8th Cir. 2006).

Under Rule 19(a)(1) a party "must be joined as a party if" complete relief cannot be afforded with the party or if the person or entity "claims an interest relating to the subject of the action and is so situation that disposing of the action in the person's absence may [] as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1).

Appellate courts may consider Rule 19 even if the district court did not make a Rule 19 determination[50] and may dispose of the Rule 19 issue in the first instance, and without remand, "where only one determination by the district court would be within its discretion." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013); *e.g., Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am., Inc.*, 953 F.2d 376, 378–79 (8th Cir. 1992) (citing *Enterprise Management Consultants v. United States ex rel. Hodel*, 883 F.2d 890, 892-93 (10th Cir.1989)).

Here, Appellant's failure to join the Community and the Tribal Court is a fundamental defect in her pleadings. The Community and its Tribal Court have distinct sovereign interests, and the Community's sovereign immunity warrants

---

[50] The District Court acknowledged Appellee's Rule 19 arguments but did not rule on the issue. Aplt.-App. 83-99.

Appellate Case: 24-3487    Page: 31    Date Filed: 04/10/2025 Entry ID: 5505365

dismissal under Rule 19. Fed. R. Civ. P. 19(b). *Two Shields v. Wilkinson*, 790 F. 3d 791, 799 (8th Cir. 2015); *but see Kodiak*, 932 F.3d at 1131-32.

**B.       The Tribal Court and the Community Each Have Legally Protected Interests in the Continued Validity of Its Laws and Preventing Collateral Attack on Tribal Court Decisions.**

Under Rule 19(a)(1)(B), an entity that "claims an interest" in a cause of action is a required party—the entity does not need to demonstrate that the "interest be property in the sense of the due process clause" rather, the interest solely needs to be a claim to a "legally protected interest." *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002).

The Eighth Circuit recognizes that sovereign entities have a protectable interest under Rule 19 where an action implicates "administration, enforcement, and interpretation of its laws and regulations." *Two Shields*, 790 F.3d at 797. Here, both the Tribal Court and the Community have sovereign interests in the Tribal Court's judgment because invalidating it would strike at the core of tribal sovereignty—the "enforcement, and interpretation of [the Community's laws]." *Id*

"Tribal courts play a vital role in tribal self-government," and have a protectable interest in defending their "judicial decisions from collateral attack." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987); *St. Pierre v. Norton*, 498 F. Supp. 2d 214, 220 (D.D.C. 2007). It is fundamental that tribal courts are required parties "to actions that might have the result of directly undermining authority they

23

would otherwise exercise." *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 780 (9th Cir. 2005).

Further, the Community has a protectable interest in the validity of its laws and ensuring that those laws are faithfully applied by its courts—a fundamental aspect of tribal sovereignty that is long-protected by federal law. *Williams v. Lee,* 358 U.S. 217, 220 (1959) ("[A]bsent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them."). Federal courts will not interfere with the rights of a tribal sovereign "behind its back." *Two Shields*, 790 F.3d at 796 (internal quotations omitted). The Community is entitled to defend its legislative authority. *See Two Shields*, 790 F.3d at 797; *St. Pierre,* 498 F. Supp. 2d at 220*; N. Arapaho Tribe v. Harnsberger,* 697 F.3d 1272, 1279 (10th Cir. 2012) (Tribe is required party under Rule 19 where action would impact its governance authority). Appellant threatens the Community's interest by attempting to divest the Tribal Court of jurisdiction so that a state court may apply or—if Appellant has her way— overrule Community law and impose its own law on the Community. *See In re Musel*, 631 B.R. 744, 753 (Bankr. D. Minn. 2021) (tribal law governs the characterization of tribal property).

Dissolution proceedings not only sever the marital relationship, they also divide the marital property and interests. PIIC Dom. Rel. Ord., § 7. Dissolution

proceedings involving a tribal member may implicate the status of property—individual or marital—under Community law. In many cases these are matters unique and exclusive to Community law, such as administration of per capita payments under the Gaming Revenue Allocation Ordinance, Homesites under the Homesites Ordinance and Constitution, and the provision of healthcare and social support services, provided under Community administrative programs.[51]

When the property divided is within the Tribe's jurisdiction, "the tribe's definition of property within its own jurisdiction should be where th[e] inquiry ends." *Musel*, 631 B.R. at 753 ("Federal law specifically delegates to tribes the right to define the extent of property interests with respect to gaming revenue per capita payments. Therefore, the law that matters in determining those interests is the language contained in the tribe's fully compliant and federally approved Revenue Allocation Plan."); 25 C.F.R. § 162.014(a)(2) (tribal law governs Homesite Assignments); *see* 89 Fed. Reg. 75990 (tribal governments characterize tribal welfare programs under the Internal Revenue Code); 26 U.S.C. § 139E (same).

---

[51] Although the state court may have personal jurisdiction over a tribal member in a dissolution and custody proceeding, that jurisdiction does not vest the court with jurisdiction to dispose of tribal or federal trust assets. As the Tribal Court of Appeals notes, in those instances—where there is concurrent tribal and state court jurisdiction—state and tribal courts apply principles of comity to respect each sovereign authority. Aple.-App. 118; *e.g.*, *Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians*, 665 N.W.2d 899, 917 (Wisc. 2003) (Abrahamson, J., concurring); *see* Minn. Gen. R. P. 10.

25

If the Tribal Court was found not to have jurisdiction over dissolution proceedings involving non-members, a state court would either be required to apply and interpret tribal law to characterize tribal property—which is improper because it "infringes upon tribal law-making authority"[52]—or it will disregard tribal law by improperly applying state law to tribal property in lieu of tribal law. *Iowa Mut. Ins. Co.*, 480 U.S. at 16 ("Adjudication of such matters by any nontribal court also infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law."); *see Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985) (tribal court jurisdiction supports "tribal self-government and self-determination."). Either way, the Community unquestionably has an interest in this action because the Appellant's requested relief requires one of those outcomes.

### C. Complete Relief Cannot Be Afforded Without the Tribal Court and Community.

The Community and the Tribal Court are required parties under Fed. R. Civ. P. 19(a)(1)(A) because complete relief cannot be afforded in their absence. Regardless of how she crafts her requested relief, Appellant cannot avoid Rule 19.

---

[52] Non-tribal courts may apply and defer to tribal law when deciding issues, but they cannot interpret or invalidate tribal law without the respective tribe at issue as a party because they cannot interfere with the tribe's laws "behind its back." *Two Shields v. Wilkinson*, 790 F.3d 791, 796 (8th Cir. 2015) (internal quotations omitted).

26

Appellant requests (1) declaratory judgment finding the tribal court orders void; and (2) an injunction against Mr. Tix enjoining him from enforcing the judgment. Aplt.-App. 13, R. Doc. 1, at 8. Appellant's attempt to frame relief as only operative against Robert Tix cannot avoid Rule 19, because complete relief could not be afforded in the absence of the Community. Fed. R. Civ. P. 19(a)(1)(A). Without the Community and Tribal Court as parties, a decision of the Court would not bind them or prevent the continued exercise of jurisdiction and enforcement of tribal law. *See Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) ("But again, state officials are nonparties who would not be bound by the [declaratory] judgment."); *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 122 (1968) ("[T]here can be no binding adjudication of a person's rights in the absence of that person."). Any judgment rendered in the Tribal Court and Community's absence will "be incomplete" because "[t]he judgment will not bind the [Community] in the sense that it will directly order the [Community] to perform, or refrain from performing, certain acts." *Peabody Western Coal Co.*, 400 F.3d at 780.

The Community and the Tribal Court are required parties because they have an interest in the proceeding under Fed. R. Civ. P. 19(a)(1)(B)(i), and because complete relief cannot be afforded absent an order operating against the Community and the Tribal Court. Fed. R. Civ. P. 19(a)(1)(A). Appellant failed to name either

real party in interest and instead sought to litigate their sovereign rights behind their back contrary to applicable federal rules and precedent.

## CONCLUSION

The District Court's decision that the Tribal Court possessed jurisdiction over a dissolution proceeding between a Community member and his non-member spouse—based on a more than decade long consensual relationship with the Community and member that involved conduct on Community land—should be affirmed.

The Court should also not permit further proceedings in this matter because the disposition of the Appellant's claims, which fail to name the real parties in interest, the Community and Tribal Court, would impair Court and Community's interests, thereby foreclosing the Court's ability to provide complete relief among the existing parties.

/ / /

/ / /

/ / /

Dated: April 16, 2025

Respectfully submitted,

*/s/ Joseph F. Halloran*
Joseph F. Halloran (MN#0244132)
James Nichols (MN #0388096)
Roxanne Reinfeld (MN #0403729)
The Jacobson Law Group
Jacobson, Magnuson, Anderson &
Halloran, P.C.
180 East Fifth Street, Suite 940
Saint Paul, MN 55101
(651) 644-4710
jhalloran@thejacobsonlawgroup.com
jnichols@thejacobsonlawgroup.com
rreinfeld@thejacobsonlawgroup.com
*Attorneys for Lead Amicus Curiae*
*Prairie Island Indian Community in the*
*State of Minnesota and Lead Counsel for*
*Tribal Amici*

*/s/ Jessie Stomski*
Jessie Stomski (MN #0388973)
General Counsel
Prairie Island Indian Community
5636 Sturgeon Lake Road
Welch, MN  55089
(651) 385-4137
Jessie.Siem@piic.org
*Attorneys for Lead Amicus Curiae*
*Prairie Island Indian Community in*
*the State of Minnesota*

*/s/ Christopher Murray*
Christopher Murray (MN #0401028)
General Counsel
Leech Lake Band of Ojibwe
190 Sailstar Dr. NE
Cass Lake, MN 56633
(218) 335-3673
Christopher.Murray@llojibwe.net
*Attorney for Amicus Curiae*
*Leech Lake Band of Ojibwe*

*/s/ Greg Paulson*
Greg Paulson (MN #0250478)
Philip Brodeen (MN #0393568)
Brodeen & Paulson PLLP
610 Searles Street
New Brighton, MN 55112
(612) 226-5968
greg@brodeenpaulson.com
phil@brodeenpaulson.com
*Attorneys for Amicus Curiae*
*Shakopee Mdewakanton Sioux*
*Community*

29

/s/ Angel E. Daher
Angel E. Daher (MN#031870X)
Managing Attorney
Mille Lacs Band of Ojibwe
43408 Oodena Drive
Onamia, MN 56359
(320) 515-0963
Angel.daher@millelacsband.com
*Attorney for Amicus Curiae*
*Mille Lacs Band of Ojibwe*

/s/ Jeffrey K. Holth
Jeffrey K. Holth (MN#0393070)
The Jacobson Law Group
Jacobson, Magnuson, Anderson &
Halloran, P.C.
180 East Fifth Street, Suite 940
Saint Paul, MN 55101
(651) 644-4710
jholth@thejacobsonlawgroup.com
*Attorney for Amicus Curiae*
*Bois Forte Band of Chippewa*

/s/ Andrea Kingbird
Andrea Kingbird (MN # 0387129)
Veronica Newcomer (MN #0395555)
White Earth Legal Department
White Earth Band of Ojibwe
PO Box 238
White Earth, MN 56591
(218) 983-3285
andrea.kingbird@whiteearth-nsn.gov
veronica.newcomer@whiteearth-
nsn.gov
*Attorneys for Amicus Curiae*
*White Earth Band of Ojibwe*

/s/ Sean Copeland
Sean Copeland (MN #0387142)
Tribal Attorney
Fond du Lac Band
of Lake Superior Chippewa
1720 Big Lake Road
Cloquet, MN 55720
(218) 878-2632
SeanCopeland@fdlrez.com
*Attorney for Amicus Curiae*
*Fond du Lac Band of Lake Superior*
*Chippewa*

/s/ Joseph F. Halloran
Joseph F. Halloran (MN#0244132)
The Jacobson Law Group
Jacobson, Magnuson, Anderson &
Halloran, P.C.
180 East Fifth Street, Suite 940
Saint Paul, MN 55101
(651) 644-4710
jhalloran@thejacobsonlawgroup.com
*Attorney for Amicus Curiae*
*The Grand Portage Band of Chippewa*

/s/ Nizhoni Smith
Nizhoni Smith (MN #0398117)
Peter J. Rademacher (MN #0396334)
Lower Sioux Indian Community
in the State of Minnesota
39527 Reservation Highway 1
PO Box 308
Morton, MN 56270
(507) 697-6185
Nizhoni.Smith@lowersioux.com
Peter.Rademacher@lowersioux.com
*Attorneys for Amicus Curiae*
*Lower Sioux Indian Community in the*
*State of Minnesota*

/s/ Leif E. Rasmussen
Leif E. Rasmussen (MN #0204006)
Rasmussen Law
P.O. Box 385046
Bloomington, MN 55438
952-345-8265
Leif.Rasmussen@leifrasmussenlaw.com
*Attorney for Amicus Curiae*
*Upper Sioux Community*

/s/ Joseph Plumer
Joseph Plumer (MN # 0164859)
Red Lake Legal Department
Red Lake Band of Chippewa
P.O. Box 567
Red Lake, MN 56671
(218) 556-3824
Joe.plumer@redlakenation.org
*Attorney for Amicus Curiae*
*Red Lake Band of Chippewa*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because this brief contains 6482 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman typeface. The electronic version of this brief has been scanned for viruses and is virus-free.

*/s/ Joseph F. Halloran*
Joseph F. Halloran
*Attorney for Lead Amicus Curiae*
*Prairie Island Indian Community in the*
*State of Minnesota*

Appellate Case: 24-3487     Page: 41     Date Filed: 04/10/2025 Entry ID: 5505365

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Joseph F. Halloran*
Joseph F. Halloran
*Attorney for Lead Amicus Curiae*
*Prairie Island Indian Community in the*
*State of Minnesota*
