**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

KRISTIN ANN TIX, now known as, KRISTIN ANN MCGOWAN,

*Plaintiff-Appellant*,

v.

ROBERT WILLIAM TIX,

*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Minnesota,
Case No. 0:24-cv-01824-KMM-ECW
Hon. Judge Katherine Menendez

—————————————

**BRIEF OF *AMICUS CURIAE* THE COALITION OF LARGE TRIBES
IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE**

—————————————

Jennifer H. Weddle
Harriet McConnell Retford
Mary Katherine Andrews
Greenberg Traurig, LLP
1144 15th St., Ste. 3300
Denver, CO 80202
(303) 572-6500
weddlej@gtlaw.com,
retfordh@gtlaw.com,
marykatherine.andrews@gtlaw.com

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), the Coalition of Large Tribes is an intertribal corporation, federally charted pursuant to 25 U.S.C. § 5124, a structure more commonly referred to as a "Section 17 corporation." It has no parent corporation, and no person or entity owns stock.

Appellate Case: 24-3487   Page: 2   Date Filed: 04/10/2025 Entry ID: 5505372

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...................................................................2

    A.    Introduction ...........................................................................2

    B.    The Minnesota state courts appropriately stepped back to permit the courts of the Community to adjudicate this divorce. ...........4

ARGUMENT .......................................................................................7

    I.    Tribal sovereignty and the jurisdiction of the tribal courts have historically been at their zenith when addressing issues of domestic and family relations. .............................................7

    II.    Modern state and tribal courts are increasingly respecting the authority and capacity of tribal courts to handle the family affairs of their members, including the members that are in mixed marriages. ....................................................11

CONCLUSION ..................................................................................16

Appellate Case: 24-3487    Page: 3    Date Filed: 04/10/2025 Entry ID: 5505372

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*California v. Cabazon Band of Mission Indians*,
480 U.S. 202 (1987)...................................................................................7

*Fisher v. District Court of Sixteenth Judicial Dist. of Mont.*,
424 U.S. 382 (1976) (per curiam)..............................................................9

*Haaland v. Brackeen*,
599 U.S. 255 (2023)...........................................................................4, 9, 10

*Iron Crow v. Oglala Sioux Tribe of Pine Ridge Rsrv., S.D.*,
231 F.2d 89 (8th Cir. 1956) .......................................................................7

*Kaltag Tribal Council v. Jackson*,
344 F. App'x 324 (9th Cir. 2009) .............................................................14

*Mississippi Band of Choctaw Indians v. Holyfield*,
490 U.S. 30 (1989).............................................................................12, 14

*Native Village of Venetie IRA Council v. Alaska*,
944 F.2d 548 (9th Cir. 1991) ..............................................................14, 15

*Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g*,
476 U.S. 877 (1986)....................................................................................8

*Turpen v. Muckleshoot Tribal Ct.*,
No. C22-0496-JCC, 2023 WL 4492250 (W.D. Wash. July 12,
2023) (unpublished)...................................................................................14

*United States v. Quiver*,
241 U.S. 602 (1916)....................................................................................8

*United States v. Wheeler*,
435 U.S. 313 (1978)....................................................................................7

*Wisconsin Potowatomies of Hannahville Indian Cmty. v. Houston*,
393 F. Supp. 719 (W.D. Mich. 1973) .......................................................12

iv

*Worcester v. State of Ga.*,
  31 U.S. 515 (1832)...........................................................................7

**State Cases**

*John v. Baker*,
  982 P.2d 738 (Alaska 1999) .....................................................13, 14

*In re Marriage of Skillen*,
  956 P.2d 1 (Mont. 1998) (overruled)..............................................13

*Simmonds v. Parks*,
  329 P.3d 995 (Alaska 2014) ...........................................................14

*State v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*,
  371 P.3d 255 (Alaska 2016) ...........................................................14

**Tribal Cases**

*Harder v. Roberts*,
  Prairie Island Mdewakanton Dakota Community Court of Appeals,
  CA-01-11 (October 27, 2011) (unpublished) ....................................12

*Kelly v. Kelly*,
  Standing Rock Sioux Tribal Court, No. DV 08-013, June 23, 2008.................12

*Nouri v. Crownpoint Family Court*,
  12 Am. Tribal Law 50 (Nav. Sup. Ct. 2014) ....................................12

*Roach v. Papes*,
  Prairie Island Mdewakanton Dakota Community Court of Appeals,
  APP-2012-1 (March 11, 2013) (unpublished)....................................12

*Walker v. Tiger*,
  Supreme Court of the Muscogee (Creek) Nation, No. SC 2003-01,
  May 12, 2004 ..................................................................................12

**Federal Statutes**

25 U.S.C. § 1901(3) .............................................................................10

25 U.S.C. § 1901(4) ...............................................................................9

25 U.S.C. § 1903(1) ...............................................................................9

Appellate Case: 24-3487    Page: 5    Date Filed: 04/10/2025 Entry ID: 5505372

25 U.S.C. § 1911(a) ...............................................................................10

25 U.S.C. § 1911(b) ...............................................................................10

**Rules**

Fed. R. App. P. 29(a)(2) .............................................................................1

Fed. R. App. P. 29(a)(4)(e) ........................................................................1

**Other Authorities**

Presenter Biographies, Tribal Justice & Safety | Tribal Training and
    Technical Assistance at
    https://www.justice.gov/archive/tribal/docs/fv_tjs/session_1/PalmS
    pringsBiographies.pdf............................................................................5

Tristan Ahtone, *Native American Intermarriage Puts Benefits At Risk,*
    *National Public Radio* (March 31, 2011),
    https://www.npr.org/2011/03/31/134421470/native-american-
    intermarriage-puts-benefits-at-risk .....................................................11

Wendy Wang, *Interracial marriage: Who is 'marrying out'?, Pew*
    *Research Center* (June 12, 2015),
    https://www.pewresearch.org/short-reads/2015/06/12/interracial-
    marriage-who-is-marrying-out/ ..........................................................11

Debra Cassens Weiss, US COURT SYSTEM IS FACING DELAYS,
    BACKLOGS AND WORKFORCE SHORTAGES, REPORT SAYS, Am. Bar.
    Assoc. J. (Feb. 17, 2023)
    https://www.abajournal.com/web/article/us-court-system-is-facing-
    perfect-storm-of-delays-backlogs-and-workforce-shortages-report-
    says.......................................................................................................3

Appellate Case: 24-3487    Page: 6    Date Filed: 04/10/2025 Entry ID: 5505372

## STATEMENT OF IDENTITY, INTERESTS, AND AUTHORITY TO FILE OF *AMICUS CURIAE*[1]

The Coalition of Large Tribes ("COLT") represents the interests of the more than fifty tribal nations whose land base each exceeds 100,000 acres, encompassing more than 95% of tribal lands and approximately half the Native American population in the country. COLT was established in April 2011 to provide a unified advocacy base for Native American tribes and nations governing large trust land bases and providing full service in the governing of their members and reservations. COLT members include the Standing Rock Sioux Tribe, Spirit Lake Tribe, Spokane Tribe, Oglala Sioux Tribe, Mandan, Hidatsa and Arikara Nation, Rosebud Sioux Tribe, Sisseton Wahpeton Sioux Tribe, Cheyenne River Sioux Tribe, Navajo Nation, Crow Tribe, Blackfeet Nation, Shoshone-Bannock Tribes and many others, each of which has homelands exceeding 100,000 acres.

These tribes have inherent, reserved sovereign rights to protect their self-government and to control internal relations, including control over the domestic affairs of their members. COLT member tribes operate extensive court systems and

---

[1] All parties have consented to the filing of this brief. *Amicus curiae* files this brief in accordance with Federal Rule of Appellate Procedure 29(a)(2). No party's counsel authored this brief in whole or in part; no party's counsel contributed money to fund preparing or submitting this brief; and no person other than *Amicus curiae* contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(e).

routinely and competently adjudicate family court matters, including divorce and child custody.

<strong>SUMMARY OF ARGUMENT</strong>

**A.     Introduction**

What is most striking - but not unusual - about this case is not the difficult and contentious divorce, or the multiplication of legal proceedings, but the thoughtful and cooperative manner in which the courts of State of Minnesota ("State" or "Minnesota") and the Prairie Island Mdewakanton Dakota Indian Community ("Community") worked together to determine the appropriate jurisdiction to handle this matter and to ultimately conclude that it was appropriately adjudicated in the courts of the Community, not the State.

As the Prairie Island Mdewakanton Dakota Indian Community Court of Appeals ("Community Court of Appeals") observed:

> The Hennepin County District Court properly identified the concurrent jurisdiction over this case, and deferred to the tribal court for litigation. This is consistent with the principles of comity. The historical relationship between state and tribal courts has sometimes been tenuous. However, new partnerships between tribal and state court judges are becoming increasingly common. The Minnesota Judicial Branch established the Tribal Court State Court Forum in 1997. The Forum "is comprised of tribal court judges from Minnesota's 11 federally recognized tribes and state court judges from Minnesota's 10 judicial district courts, Court of Appeals, and Supreme Court." The first meeting was held over 25 years ago, and the forum continues to meet quarterly. According to its founders, the Forum was intended to "foster professional relationships between the courts and develop means to address disputes arising from their concurrent jurisdictions."

2

> Similar organizations have developed in Arizona, California, Idaho, Kansas, Michigan, New Mexico, New York, North Dakota, Oregon, Washington, Utah, and Wisconsin. These forum developments indicate that state judges and tribal judges are working collaboratively to address questions about jurisdiction and to communicate with one another about comity. In addition, these fora have helped to address the unsubstantiated allegations that tribal courts are somehow inherently hostile to nonmembers.

Decision of the Prairie Island Indian Community Court of Appeals, Jan. 26, 2024, Aple.-App. 120; R. Doc. 17-1, at 117 (footnotes and citations omitted).

As a matter of federal law, the Community Court was correct to find that it had jurisdiction of the Tix divorce. But what was more important, from the point of view of *amicus* COLT is that the state and tribal courts worked cooperatively and applied standard principles of law in a manner that was mutually respectful and professional. COLT members operate substantial court systems, and routinely adjudicate family court matters, as they work to maintain their traditions and customs and to provide basic government services in their community, and appreciate the willingness of the courts of the State of Minnesota to recognize tribal courts as colleagues and professionals who can be trusted to share the burden of an often overloaded family court system. *See* Debra Cassens Weiss, US COURT SYSTEM IS FACING DELAYS, BACKLOGS AND WORKFORCE SHORTAGES, REPORT SAYS, Am. Bar. Assoc. J. (Feb. 17, 2023) https://www.abajournal.com/web/article/us-court-system-is-facing-perfect-storm-of-delays-backlogs-and-workforce-shortages-report-says.

Family law tends to not have clean, bright line tests, but in the context of Indian family law, jurisdiction clearly lies with the tribe. *See Haaland v. Brackeen*, 599 U.S. 255, 265-66 (2023). Indians often marry outside of their tribe and raise children in mixed families that are nonetheless Indian families and part of their tribal community. Families in crisis frequently have unstable housing or change their domicile, moving on and off-reservation. State courts are also overwhelmed with cases, furthering the need for tribal courts to perform their critical role, not just in giving a forum to their members, but also in reducing the burden on state courts. The Community courts in this matter handled these issues lawfully and appropriately, which the State Court's decision aptly recognized.

This Court should affirm.

**B.    The Minnesota state courts appropriately stepped back to permit the courts of the Community to adjudicate this divorce.**

The case began when two divorcing parents "engaged in simultaneous proceedings in different judicial theaters," with the father, a member of the Community, bringing an action for divorce in the Court of the Community ("Community Court"), while the mother, a non-Indian, brought a competing action in the Hennepin County Court ("State Court") in February 2022. Decision Below at 2-3; App.78-79; R. Doc. 30, at 2-3.

"On March 1, 2022, the [State] Court was notified that a separate marriage dissolution action had been filed by Respondent in the Prairie Island Mdewakanton

4

Dakota Community tribal court." Findings of Fact, Conclusions of Law and Order, at ¶ 18, No. 27-FA-22-739 (Minn. D. Ct. May 11, 2022); Aple.-App. 20; R. Doc., 17-1 at 2. In response, the State Court immediately scheduled an Initial Case Management Conference, during which "[t]he Court informed the parties, and the parties appeared to agree, that both the Court and the tribal court could simultaneously exercise jurisdiction over many of the issues presented by the parties." *Id*. at ¶¶ 19-20; Aple.-App. 21. "However, the Court informed the parties that doing so would waste judicial resources and risk conflicting judgments." *Id*. at ¶ 20; Aple.-App. 21.

The State Court judge then reached out to the judge of the Community Court to confer over how the case was to proceed. *Id*. at ¶ 21; Aple.-App. 21 ("In recognition of this fact, the Court has been in communication with Chief Judge B.J. Jones, who is the presiding judicial officer in the parties' matter in tribal court. The Court also informed the parties that Judge Jones has indicated that the tribal court is willing to hear both the dissolution proceeding and the Order for Protection proceedings."). Judge Jones is the Director of the Tribal Judicial Institute at University of North Dakota School of Law and also serves/served as the Chief Judge for the Sisseton-Wahpeton Oyate Court and the Prairie Island Indian Community Tribal Court and as an Associate Judge for the Standing Rock and Fort Berthold Tribal Courts. *See* Presenter Biographies, Tribal Justice & Safety | Tribal Training

and Technical Assistance at

https://www.justice.gov/archive/tribal/docs/fv_tjs/session_1/PalmSpringsBiographies.pdf.

After repeated attempts to persuade the parties to agree to a single jurisdiction, the State Court held a hearing on the various jurisdictional and venue motions and found that the case was governed by the same standards and precedents that it would have been if there was a competing proceeding in different state. *Id*. at ¶ 31; Aple.-App. 25. The Court held that there was "concurrent jurisdiction over all aspects of the dissolution, including child custody" but that the Community Court had a stronger connection to the action and was proceeding more expeditiously toward judgment and thus was a more convenient forum. *Id*. at ¶ 63; Aple.-App. 31. The proceedings in state court were then stayed in the interest of judicial economy and to avoid inconsistent rulings. *Id*.

The Community Court found also concurrent jurisdiction over some aspects of the dispute, but held that it had exclusive jurisdiction over other aspects, a distinction that made no practical difference in the outcome of the matter. This decision was affirmed on appeal to the Community Court of Appeals. Decision of the Prairie Island Indian Community Court of Appeals, Jan. 26, 2024, Aple.-App. 107; R. Doc. 17-1, at 104. The State appellate court repeatedly declined to hear an

interlocutory appeal, and the matter remained stayed until it was voluntarily dismissed.  Decision Below at 5; App.81; R. Doc. 30, at 5.

At all points, the two courts handled the matter in a courteous and thoughtful manner, reading and respecting each other's decisions and working to resolve the matter and manage their dockets with a minimum of duplicative proceedings.

## ARGUMENT

**I.    Tribal sovereignty and the jurisdiction of the tribal courts have historically been at their zenith when addressing issues of domestic and family relations.**

"The Indian nations ha[ve] always been considered as distinct, independent political communities, retaining their original natural rights, as the undisputed possessors of the soil, from time immemorial." *Worcester v. State of Ga*., 31 U.S. 515, 559 (1832).  "Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status." *United States v. Wheeler*, 435 U.S. 313, 323 (1978) (abrogated by statute on other grounds); *Iron Crow v. Oglala Sioux Tribe of Pine Ridge Rsrv., S.D.*, 231 F.2d 89, 92 (8th Cir. 1956) (recognizing tribes as quasi sovereign entities possessing all inherent rights of sovereignty, except where explicitly taken by treaty or Congressional Act).  "The [Supreme] Court has consistently recognized that Indian tribes retain attributes of sovereignty *over both their members and their territory*, and that tribal sovereignty is dependent on, and subordinate to, only the

7

Federal Government, not the States." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207 (1987) (quotations omitted, emphasis supplied).

These fundamental, inherent, timeless rights of self-government are at their zenith when it comes to the intimate areas of domestic and family relationships. "At an early period it became the settled policy of Congress to permit the personal and domestic relations of the Indians with each other to be regulated, and offenses by one Indian against the person or property of another Indian to be dealt with, according to their tribal customs and laws." *United States v. Quiver*, 241 U.S. 602, 603-04 (1916). Even during the era when Congress was more assertive in the regulation of Indian reservations and when Congress enacted several criminal statutes governing what had previously been internal matters, it carefully refrained from passing statutes "dealing with bigamy, polygamy, incest, adultery, or fornication . . . these matters always having been left to the tribal customs and laws." *Id*. at 605.

Matters such as "the determination of parentage of children, termination of parental rights, commitments by county courts, guardianship, marriage contracts, and obligations for the support of spouse, children, or other dependents . . . clearly encompass areas of traditional tribal control." *Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g*, 476 U.S. 877, 889–90 (1986) (quotation omitted). Interference and the assertion of jurisdiction by states into these matters "simply

8

cannot be reconciled with Congress' jealous regard for Indian self-governance." *Id.* at 890.

Historically, state courts have often attempted to overreach in asserting jurisdiction over the domestic affairs of tribal members, only to be rebuffed and rebuked by the Supreme Court and ultimately by Congress. Members of *amicus* COLT have frequently been swept up in these cases and struggled to manage their own affairs in even the most routine domestic matters. For example, as recently as the 1970s, Montana was attempting to assert jurisdiction over an adoption proceeding in which all parties were members of a tribe and residents on the tribe's reservation, but the Supreme Court took cert and reversed, returning the case to the tribal court. *Fisher v. District Court of Sixteenth Judicial Dist. of Mont.*, 424 U.S. 382, 390 (1976) (per curiam). Fortunately, those occasions are becoming rarer, and many of the worst state court precedents have been overruled by the state courts.

The most famous expression, of course, of Congress' respect for tribal sovereignty over family affairs and especially over the custody of tribal children is the Indian Child Welfare Act ("ICWA"). Although ICWA does not directly apply to this case because it expressly excludes divorce proceedings, 25 U.S.C. § 1903(1), at the very least it must stand for the proposition that tribal jurisdiction is proper for matters regarding Indian children, even Indian children living off-reservation, and even Indian children who have with a non-Indian parent. "In 1978, Congress enacted

the [ICWA] out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies.'" *Haaland*, 599 U.S. at 265 (quoting 92 Stat. 3069, 25 U.S.C. §1901(4)). "As Congress put it, 'there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children.'" *Id*. (quoting 25 U.S.C. §1901(3)). ICWA provides that if an Indian child lives on a reservation, tribal court is the exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. § 1911(a). For Indian children not living on the reservation, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. § 1911(b); *Haaland*, 599 U.S. at 265-266.

Appellant appears to be arguing that in the case of divorce, these principles—laid out so forcefully by Congress—should be entirely reversed, and the tribal courts stripped of all jurisdiction even when the relevant state court has held that that there are more than sufficient contacts to support concurrent jurisdiction, even applying the same principles that would have applied to the courts of another state, and that this Court should show less solicitude to tribal authority over domestic affairs of its members than it would to the interests of a neighboring state which had sufficient contacts to support jurisdiction. Such a position has no support in history or practice, and certainly no support in current federal policy.

10

**II.** **Modern state and tribal courts are increasingly respecting the authority and capacity of tribal courts to handle the family affairs of their members, including the members that are in mixed marriages.**

As the facts in this case demonstrate, it is often difficult in practice to apply simple principles of residency and membership to complex family situations, and it would be fatal to adopt strict standards that would foreclose tribal court jurisdiction in most real-world situations. Furthermore, as our world becomes more interconnected and Indians become more and more integrated into the mainstream of American life, the percentage of mixed marriages and Indian families living off-reservation will only increase. This does not, and should not, mean that these families have become disconnected from their tribal heritage or abandoned the traditional family structures in which they were raised, or that they do not wish their affairs to be governed by their own tribe and its laws.

American Indians have the highest intermarriage rate of any racial group in the United States, with 61% of American Indian women and 54% of American Indian men marrying a spouse of a different race. Wendy Wang, *Interracial marriage: Who is 'marrying out'?, Pew Research Center* (June 12, 2015), https://www.pewresearch.org/short-reads/2015/06/12/interracial-marriage-who-is-marrying-out/; Tristan Ahtone, *Native American Intermarriage Puts Benefits At Risk, National Public Radio* (March 31, 2011),

https://www.npr.org/2011/03/31/134421470/native-american-intermarriage-puts-benefits-at-risk.

This high intermarriage rate is the reason why the Community Court of Appeals was able to identify and cite numerous decisions from its own small court and other tribal courts dealing with marriages between Indians and non-Indians. *See* Aple.-App. 114-17; Doc. 17-1, at 112-14 (citing *Harder v. Roberts,* Prairie Island Mdewakanton Dakota Community Court of Appeals, CA-01-11 (October 27, 2011) (unpublished); *Roach v. Papes,* Prairie Island Mdewakanton Dakota Community Court of Appeals, APP-2012-1 (March 11, 2013) (unpublished); *Walker v. Tiger*, Supreme Court of the Muscogee (Creek) Nation, No. SC 2003–01, May 12, 2004 (unpublished); *Kelly v. Kelly*, Standing Rock Sioux Tribal Court, No. DV 08-013, June 23, 2008 (unpublished); and *Nouri v. Crownpoint Family Court*, 12 Am. Tribal Law 50 (Nav. Sup. Ct. 2014)).

Marriages between Indians and non-Indians are common, as are non-marital relationships that give rise to disputes which fall under the jurisdiction of the family courts, and bringing these mixed families, and the children of these families, into their tribes and tribal community is a fundamental matter of survival and self-government for the tribes, including the members of *amicus* COLT.

Domicile can be similarly complicated when a family is in turmoil. *See e.g. Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48–49 (1989)

12

(addressing the domicile of babies born in a hospital off-reservation); *Wisconsin Potowatomies of Hannahville Indian Cmty. v. Houston*, 393 F. Supp. 719, 731 (W.D. Mich. 1973) (observing that "Indians frequently move in and out of reservations in pursuit of employment and for many of the same reasons which motivate other citizens" in the context of an unstably housed family); *In re Marriage of Skillen*, 956 P.2d 1, 4 (Mont. 1998) (overruled) ("The parties dispute if and when [member mother] actually maintained a residence with her grandmother on the Fort Peck Reservation[,] [and] [t]he parties also dispute where [member mother] and [member son] maintained their residence after [son]'s birth, although it appears clear that they spent considerable time both in Forsyth with [father] and on the Reservation with [member mother]'s grandmother."). A strict, federally imposed requirement of on-reservation domicile would exclude tribes from exercising jurisdiction in a wide range of cases where a similarly situated state would be able to proceed. This is also very inefficient, because, unlike venue, subject matter jurisdiction cannot be waived, and courts would be forced to expend scarce judicial resources in preliminary motions practice on what can often be complex, fact-laden issues.

There is a long line of instructive cases from the courts of Alaska, where the Native villages do not have reservations but nonetheless operate courts and adjudicate family court matters, a reality that the Alaskan state government has slowly come to accept. In *John v. Baker*, 982 P.2d 738 (Alaska 1999), the Alaska

Supreme Court concluded that Native tribes possess the inherent sovereign power to adjudicate child custody disputes between tribal members in their own courts, based on evidence of Executive Branch's intent and relevant federal statutes and case law. "The welfare of tribal children is of vital and fundamental importance to tribal self-governance, and [t]he tribal sovereignty to decide cases involving the best interests of tribal children recognized in *John I* is inherent, non-territorial sovereignty." *Simmonds v. Parks,* 329 P.3d 995, 1008 (Alaska 2014) (citing *John v. Baker*, 982 P.2d at 755) (in the context of ICWA). In *State v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 371 P.3d 255, 257 (Alaska 2016), the court affirmed that tribal courts have inherent subject matter jurisdiction to decide child support obligations owed to children who are tribal members or are eligible for membership.

Federal courts have reached the same conclusion. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. at 48–49; *Kaltag Tribal Council v. Jackson*, 344 F. App'x 324, 325 (9th Cir. 2009) ("Reservation status is not a requirement of jurisdiction because '[a] Tribe's authority over its reservation or Indian country is incidental to its authority over its members.'") (quoting *Native Village of Venetie IRA Council v. Alaska*, 944 F.2d 548, 559 n. 12 (9th Cir. 1991)); *see e.g. Turpen v. Muckleshoot Tribal Ct*., No. C22-0496-JCC, 2023 WL 4492250 (W.D. Wash. July 12, 2023) (unpublished) (holding that tribal court has jurisdiction over marital dissolution between tribal member and non-member who consents to numerous

tribal contacts). The Ninth Circuit has found that if Indian children do not reside or are not domiciled on their tribe's reservation, state courts may exercise jurisdiction concurrent with tribal courts, but that "the state court must refer the dispute to the appropriate tribal court unless good cause is shown for the retention of state court jurisdiction." *Native Village of Venetie IRA Council*, 944 F.2d at 555.

Although *amicus* COLT represents only tribes with large land bases and substantial geographic jurisdiction, its tribes also have significant populations living outside of these reservations, often raising children in adjacent border towns and in the context of large extended families that transcend reservation boundaries. These issues are not unique to Indian tribes, of course, which is why both the State of Minnesota and the Community were able to draw on extensive precedent from their respective jurisdictions regarding the jurisdiction and appropriate forum for divorce and child custody proceedings where more than one jurisdiction has a potential interest in the matter.

Family court jurisdiction over tribal members and their families living off-reservation is an important part of the tribal court docket, and no useful purpose would be served by turning every ambiguity into a fundamental question of subject matter jurisdiction – which can and must be raised *sua sponte* by the court or by the parties at any time and which is not susceptible to ordinary considerations of timeliness, efficiency or mutual consent. And the results would be devasting in

Appellate Case: 24-3487     Page: 21     Date Filed: 04/10/2025 Entry ID: 5505372

precisely that area where the tribes' interest in their own sovereign authority is greatest.

## CONCLUSION

The District Court's decision should be affirmed.

Respectfully submitted this 9th day of April 2025,

_s/ Jennifer Weddle_
Jennifer Weddle

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5), because this brief contains 3,619 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Times New Roman font.

3. This brief complies with the requirements of Eighth Circuit Local Rule 28A(h)(2) because it has been scanned for viruses and is free of viruses.

*s/ Jennifer Weddle*
Jennifer Weddle

Appellate Case: 24-3487    Page: 23    Date Filed: 04/10/2025 Entry ID: 5505372

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on April 9, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Jennifer Weddle*
Jennifer Weddle