IN THE

# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

◆◆

KRISTIN ANN TIX, now known as Kristin Ann McGowan,

*Plaintiff-Appellant,*

—v.—

ROBERT WILLIAM TIX,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

MARK FIDDLER
FIDDLER OSBAND FLYNN LLC
12800 Whitewater Drive,
   Suite 100
Minnetonka, Minnesota 55343
(612) 822-4095

ROLF T. FIEBIGER
THOMAS D. FIEBIGER
FIEBIGER LAW, LLC
6800 France Avenue, S.,
   Suite 190
Edina, Minnesota 55435
(612) 888-6084

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................ii

INTRODUCTION ................................................................................. 1

ARGUMENT ......................................................................................... 3

I.      The Prairie Island Indian Community Does Not Possess Jurisdiction Under Montana's First Prong ...................................... 3

II.     Federal law does not recognize non-territorial jurisdiction over non-members ............................................................................ 8

III.    Rule 19 Does Not Require Dismissal............................................ 16

        A.      The Tribal Court Is Not a Necessary Party Under Rule 19(A) ..................................................................... 17

                1.      This Court Can Provide Complete Relief..................... 18

                2.      The Community is Not Impacted by the Resolution.................................................................. 20

                3.      The Tribal Community is Not a Necessary Party ............................................................................ 23

                4.      There Would Only be One Result, Leaving Nothing Inconsistent ..................................................... 25

        B.      Even If the Community Was a Necessary Party, the Case Should Proceed Under Rule 19(b) ................................ 26

CONCLUSION ..................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Attorney's Process & Investigation Servs. v. Sac & Fox Tribe*,
609 F.3d 927 (8th Cir. 2010) ............................................................ 10

*Buster v. Wright*,
135 F. 947 (CA8) ............................................................................... 1

*Cherokee Nation v. Babbitt*,
117 F.3d 1489 (D.C. Cir. 1997) ........................................................ 24

*Duro v. Reina*,
495 U.S. 676, 110 S. Ct. 2053 (1990) .............................................. 12

*El Paso Natural Gas Co. v. Neztsosie*,
526 U.S. 473 (1999) ......................................................................... 26

*Fort Yates Public Sch. Dist. #4 v. Murphy*,
786 F.3d 662 (8th Cir. 2015) ........................................................... 27

*FTC v. Payday Fin., LLC*,
935 F. Supp. 2d 926 (D.S.D. 2013) ............................................... 6, 7

*Gwartz v. Jefferson Mem. Hosp. Ass'n*,
23 F.3d 1426 (8th Cir. 1994) ........................................................... 18

*In re Marriage of Jacobsen*,
18 Cal. Rptr. 3d 162 (Cal. App. 4th 2004) ................................ 21, 22

*In re Marriage of Purnel*,
52 Cal.App.4th 527, 60 Cal. Rptr. 2d 667 ................................. 21, 22

*Iowa Mut. Ins. Co. v. LaPlante*,
480 U.S. 9, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987) ....................... 17

*LLC Corp. v. Pension Benefit Guar. Corp.*,
703 F.2d 301 (8th Cir. 1983) ........................................................... 18

*Montana v. United States*,
450 U.S. 544, 101 S. Ct. 1245 (1981) ................................ 1, 4, 15, 17

*Morris v. Hitchcock*,
194 U.S. 384 ...................................................................................... 1

ii

*National Farmers Union Ins. Cos. v. Crow Tribe,*
    471 U.S. 845, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985) ....................... 17

*Nevada v. Hicks,*
    533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) .......... 4, 10, 19

*Pembina Treaty Comm. v. Lujan,*
    980 F.2d 543 (8th Cir. 1992) ................................................................ 19

*Plains Commerce Bank v. Long Family Land & Cattle Co.,*
    554 U.S. 316, 128 S.Ct. 2709 (2008) ............................................ *passim*

*Ramah Navajo Sch. Bd. v. Babbitt,*
    87 F.3d 1338 (D.C. Cir. 1996) ............................................................. 23

*Republic of Philippines v. Pimentel,*
    553 U.S. 851 (2008) ............................................................................. 27

*Salt River Project Agricultural Improvement & Power District v.*
*Lee,*
    672 F.3d 1176 (9th Cir. 2012) ............................................................. 24

*Shermoen v. United States,*
    982 F.2d 1312 (9th Cir. 1992) ............................................................. 23

*Southwest Ctr. for Biological Diversity v. Babbitt,*
    150 F.3d 1152 (9th Cir. 1998) ............................................................. 23

*State v. Cent. Council of Tlingit,*
    371 P.3d 255 (Alaska 2016) ..................................................... 8, 10, 11

*Strate v. A-1 Contractors,*
    520 U.S. 438 (1997) ....................................................................... 19, 26

*Talton v. Mayes,*
    163 U.S. 376, 16 S. Ct. 986, 41 L. Ed. 196 (1896) ................................ 4

*Troxel v. Granville,*
    530 U.S. 57, 120 S. Ct. 2054 (2000) ..................................................... 3

*Two Shields v. Wilkinson,*
    790 F.3d 791 (8th Cir. 2015) ............................................................... 27

*U.S. ex rel. Steele v. Turn Key Gaming, Inc.,*
    135 F.3d 1249 (8th Cir. 1998) ..................................................... 18-19, 25

iii

*United States v. Lara,*
541 U.S. 193, 124 S. Ct. 1628, 158 L. Ed. 2d 420 (2004) ................ 4, 12

*Washington v.*
*Confederated Tribes of Colville Indian Reservation,*
447 U.S. 134 ........................................................................................ 1

*Williams v. Lee,*
358 U.S. 217, 79 S. Ct. 269 (1959) ................................................... 1

*Wilwal v. Nielsen,*
346 F. Supp. 3d 1290 (D. Minn. 2018) ........................................ 22-23

*Zander v. Zander,*
720 N.W.2d 360 (Minn. App. 2006) ................................................. 22

**Statutes & Other Authorities:**

18 U.S.C. § 1151 ................................................................................ 9

25 U.S.C. § 1301 ......................................................................... 13, 14

25 U.S.C. § 1305 .................................................................... 2, 13, 14

25 U.S.C. § 1901(1) ..................................................................... 3, 16

25 U.S.C. § 1903(1) ......................................................................... 15

25 U.S.C. § 1911(a) ......................................................................... 15

25 U.S.C. § 1911(b) ................................................................... 15, 16

25 C.F.R. § 23.103 ........................................................................... 16

Fed. R. Civ. P. 19 ...................................................................... *passim*

Fed. R. Civ. P. 19(a) ................................................................... 17, 18

Fed. R. Civ. P. 19(a)(1) ................................................................ 3, 18

Fed. R. Civ. P. 19(b) ................................................................... 26, 27

Minn. Stat. Ann. § 519.11 ................................................................. 8

Public Law 119-5 .......................................................... 2, 9, 13, 14

Public Law 90-284 ........................................................................... 14

# INTRODUCTION

As argued in Appellant's opening brief, under settled federal law, Indian tribes do not have jurisdiction over non-members, except for limited circumstances — none of which are present in this case. In *Montana v. United States*, 450 U.S. 544, 564, 101 S. Ct. 1245, 1258 (1981), the Supreme Court set out the two narrow exceptions to the presumptive bar on jurisdiction over non-members:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of non-members who enter **consensual** relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. *Williams* v. *Lee, supra*, at 223; *Morris* v. *Hitchcock*, 194 U.S. 384; *Buster* v. *Wright*, 135 F. 947, 950 (CA8); see *Washington* v. *Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152-154. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana v. United States*, 450 U.S. 544, 565-66, 101 S. Ct. 1245, 1258 (1981). Appellee Tix's arguments, supported by various amici, sidesteps the foundation theory established in *Montana*: that "exercise of tribal power beyond what is *necessary* to protect tribal self-government or to

control internal relations is inconsistent with the *dependent status* of the tribes, and so cannot survive without express congressional delegation." Unfortunately for Tix, there has been no Congressional delegation of power awarding tribes the power to regulate non-member conduct off the reservation. To the contrary, Congress has *limited* inherent tribal power to tribal lands. See 25 U.S.C.S. § 1305.

Further, Tix's arguments fail to recognize the *Montana* consent requirements be "commensurate" with the dramatic imposition on McGowan's liberty, as required by *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337, 128 S. Ct. 2709, 2724 (2008). Instead, to find consent, Tix argues for a vague "foreseeability" implied consent test that was never established. Then, both Tix and several amici urge this Court to ignore *Montana* and apply a non-territorial jurisdiction theory that has been rejected by recent Congressional action*,* the 2022 Violence Against Women Reauthorization Act. See 25 U.S.C.S. § 1305 (LexisNexis, Lexis Advance through Public Law 119-5, approved April 10, 2025). Tix and amici's arguments the Indian Child Welfare Act support jurisdiction over McGowan are flawed because Congress expressly excluded divorce cases from ICWA. See 25 U.S.C. 1901 (1).

Finally, neither the Tribe nor Tribal Court are necessary parties under Fed.R.Civ.P. 19(a)(1), providing this Court with the parties necessary to reverse the District Court.

## ARGUMENT

### I. The Prairie Island Indian Community Does Not Possess Jurisdiction Under Montana's First Prong

Tix argues McGowan consented to tribal adjudicatory jurisdiction by entering into a marital relationship with him, but fails to cite any authority establishing that an agreement to marry by a non-Indian, *by itself*, is consent to civil jurisdiction—by the courts of a nation that is foreign to her—over one of the most fundamental liberty interests of all: her interest in the care, custody, and control of their children, an interest the United States Supreme Court has deemed "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000).

While *Montana* establishes that "consensual relationships" may give rise to tribal civil adjudicatory jurisdiction, the case did not define what the elements of that consent look like. The Supreme Court has subsequently held in *Plains Commerce Bank v. Long Family Land &*

*Cattle Co* that, however consent is defined, the clarity of that consent must match the significance of the interest at stake. In other words, what does consent look like when one is surrendering parental authority over one's children? Or surrendering the customary right of spousal maintenance? The Court in *Plains Commerce* held:

> [n]ot only is regulation of fee land sale beyond the tribe's sovereign powers, it runs the risk of subjecting non-members to tribal regulatory authority without _commensurate consent._ Tribal sovereignty, it should be remembered, is "a sovereignty outside the basic structure of the Constitution." *United States* v. *Lara*, 541 U.S. 193, 212, 124 S. Ct. 1628, 158 L. Ed. 2d 420 (2004) (Kennedy, J., concurring in judgment). The Bill of Rights does not apply to Indian tribes. See *Talton* v. *Mayes*, 163 U.S. 376, 382-385, 16 S. Ct. 986, 41 L. Ed. 196 (1896). Indian courts "differ from traditional American courts in a number of significant respects." *Hicks*, 533 U.S., at 383, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (Souter, J., concurring). And non-members have no part in tribal government--they have no say in the laws and regulations that govern tribal territory. Consequently, those laws and regulations may be fairly imposed on non-members only if the non-member has consented, either _expressly or by his actions_. Even then, the regulation must stem from the tribe's inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations. See *Montana*, 450 U.S., at 564, 101 S. Ct. 1245, 67 L. Ed. 2d 493.

*Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337, 128 S. Ct. 2709, 2724 (2008)(emphasis added). Tix argues McGowan should have foreseen or "anticipated" that several of her "activities," *i.e.,*

receiving per capita benefits[1] and having children with Tix, showed consent.[2] But *Plains Commerce* never established such a clear "foreseeability" test to determine whether consent existed. As noted by a thoughtful opinion in *FTC v. Payday Fin., LLC:*

> The majority opinion in *Plains Commerce Bank* contains language that is difficult to reconcile at times, both internally and with the Supreme Court's prior jurisprudence. On the one hand, the majority opinion *could be read* to introduce a concept of foreseeability into determining tribal civil jurisdiction over non-members. In addressing the off-reservation bank's consensual entry into commercial dealings with a ranching family that included tribal members, the Supreme Court stated:
>
> > The Bank may reasonably have anticipated that its various commercial dealings with the Longs could trigger tribal authority to regulate those transactions—***a question we need not and do not decide.*** But there is no reason the Bank should have anticipated that its general business dealings with respondents would permit the Tribe to regulate the Bank's sale of land it owned in fee simple.
>
> Id. at 338. On the other hand, the majority opinion in *Plains Commerce Bank* seemed to tether both *Montana* exceptions to the non-member's conduct on tribal land. Id. at 333.

---

[1] To be accurate, it should be noted that the per capita benefits were never distributed *by the tribe* to McGowan. The benefits were distributed to *Tix*, and he shared them as *his* income or property (once distributed, the per caps are no longer *tribal* property, much as someone who wins the lottery shares proceeds with his or her spouse). McGowan discusses this in greater detail below.

[2] Appellee Br. at 35, 38.

*FTC v. Payday Fin., LLC,* 935 F. Supp. 2d 926, 935 (D.S.D. 2013).

In *Payday Finance*, the court held that where a non-Indian borrower entered into a written contract containing clauses that select the tribal court as the forum for all disputes, and by which the non-Indian consents to tribal court jurisdiction, even that express language did not contain express written consent as required by *Montana* and *Plains Commerce*. *Payday* is instructive here.

In *Payday*, the Federal Trade Commission had sued Payday Finance for unfair trade practices over its payday loans, alleging the contract created confusion over whether suits started against Borrowers are supposed to be arbitrations using a tribal court judge or are tribal court suits independent from the arbitration provision of the typical loan agreement. *Payday Fin., LLC,* 935 F. Supp. 2d at 932. The contracts at issue contained both a mandatory arbitration clause and a clause requiring that litigation proceed in tribal court. The FTC argued that in order for tribal courts to have jurisdiction under *Montana* and Eighth Circuit precedent, the non-member's conduct giving rise to the claim must occur *physically* on or within the reservation. *Id.* at 937.

Ultimately, the court agreed, and held the "lending contract leaves Borrowers lacking the requisite foreseeability that there will be tribal court jurisdiction—as opposed to arbitration on the Reservation—and undercuts *the clarity of the consent* of the non-Indian Borrowers to tribal court jurisdiction as a part of a consensual arrangement where Borrowers understand that they are entering into a transaction *on an Indian reservation* to receive a benefit from an Indian reservation and a tribal member. *Id*. at 943 (emphasis added). *Payday Finance* is instructive in its recitation of the two consent requirements in the Eighth Circuit: (1) a clearly understood contract that specified the terms of tribal court jurisdiction and (2) on reservation conduct.

What would a clear contract indicating consent look like in this case, giving the tribal court jurisdiction over a non-member? A prenuptial or postnuptial agreement would be clear evidence of the kind of consent required under *Montana* and *Plains*. Saying "I do" somewhere off the reservation, as argued by Tix, doesn't cut it. Had the parties clearly understood that their divorce, custody, property settlement, and spousal maintenance claims could be subject to tribal court jurisdiction, Tix could have proposed a written agreement to that effect. Such agreements are

common and permitted under state law. McGowan and Tix needed to expressly consent to tribal court jurisdiction. Minn. Stat. Ann. § 519.11 (LexisNexis, Lexis Advance through July 1, 2025, of the 2025 Regular Session ***)(permitting antenuptial and post-nuptial agreements).

They made no such express agreement. In any event, as *Payday* and *Plains Commerce* indicate, even if there had been a clear agreement, it would only apply had the subject of that agreement concern activity or conduct on the reservation. Here, the "conduct" at issue—marital life— took place entirely off the reservation. That means the first *Montana* exception does not apply.

## II. Federal law does not recognize non-territorial jurisdiction over non-members.

The "tethering" of the consent requirement with conduct on tribal lands has provoked vigorous objection, from Tix and several amici. Appellee Br. at 19, Amici Curia Tribes and Tribal Organizations Concerned with Maintaining Non-territorial Jurisdiction Br. at 6. Tix and amici argue that respecting inherent tribal sovereignty means that jurisdiction is not tied to territory. The principle case upon which they rely is *State v. Cent. Council of Tlingit*, 371 P.3d 255, 257 (Alaska 2016)

(upholding child support adjudication over a non-member based upon "inherent, non-territorial subject matter jurisdiction" deriving from a tribe's ability to retain fundamental powers of self-governance).

There are several reasons why this line of inquiry—freeing assertions of tribal jurisdiction over member and non-members alike free from geographical land base considerations—is a rabbit hole this Court should think twice about going down. First, as the Alaskan Supreme Court noted, it was not dealing with "reservations" commonly established in the lower 48 states. In the lower 48 states, reservations are deemed "Indian Country." 18 U.S.C.S. § 1151 (LexisNexis, Lexis Advance through Public Law 119-5, approved April 10, 2025). As *Cent. Council* itself noted:

> In most states there is a "traditional reservation-based structure of tribal life," and many tribes consequently look to both tribal membership and tribal land as their sources of sovereignty and tribal court jurisdiction. But a 1971 federal law known as the Alaska Native Claims Settlement Act (ANCSA) extinguished all Native claims to land in Alaska and revoked all but one Indian reservation in the state. The United States Supreme Court has held that the former reservation lands ANCSA transferred to Native-owned, state-chartered regional and village corporations in exchange for extinguishing those claims are not "Indian country" under the federal statute that defines the term. As a result of this history, we have had to examine the inherent, non-territorial sovereignty of Indian tribes, a question of federal law that other "courts have not had occasion to tease apart."

*State v. Cent. Council of Tlingit*, 371 P.3d 255, 261-62 (Alaska 2016).

Thus Tix and Amici would have this Court apply a jurisdictional regime that is based largely upon considerations *outside* of "Indian Country" to Indian Country itself. The Prairie Island Indian Community, like all reservations in the Eighth Circuit, is considered "Indian Country." On this basis alone, the Court could find the *Cent. Council* line of cases distinguishable and inapposite.

Indeed, this Court has adhered to a very context specific analysis in examining jurisdiction over non-members:

> The scope of tribal civil authority over non-members remained "ill-defined" as recently as 2001. *Nevada v. Hicks*, 533 U.S. 353, 376, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) (Souter, J., concurring). The controlling principles are broad and abstract and must be carefully applied to the *myriad disparate factual* scenarios they govern. Determining the contours of tribal civil jurisdiction and the boundaries of tribal sovereignty requires consideration of the historical scope of tribal sovereignty and the evolving place of the tribes within the American constitutional order, careful study of precedent, and ultimately a "proper balancing" of the conflicting interests of the tribes and non-members. *Id.* at 374 (opinion of the Court).

*Attorney's Process & Investigation Servs. v. Sac & Fox Tribe*, 609 F.3d 927, 934 (8th Cir. 2010)(emphasis added). Tix and Amici's analysis is anything but fact or context specific. It would have this Court dare go where no court has gone before by establishing a unitary theory of non-

territorial jurisdiction—essentially overruling *Montana*—to tribes in Indian County and to Alaskan Native Villages alike.

And on the merits, McGowan argues *Cent. Council* case was wrongly decided and should not be followed by this Court. For in *Cent. Council*, the Alaskan Supreme Court found, on an alternative basis for its holding (it first held *Montana* was inapplicable), that a non-member father "consented" to jurisdiction in that case based upon a "foreseeability" test that the Supreme Court has not expressly adopted, see *Payday Finance and Plains Commerce*. As *Cent. Council* found:

> A relationship that leads to the birth of a child is one that has significant consequences and obligations. When two people bring a child into being each should reasonably anticipate that they will be required to care for the child and perhaps may need to turn to a court to establish the precise rights and responsibilities associated with the resulting family relationship. This may require litigating in a court that is tied to the child but with which the parent has more limited contacts. As applied to the broad category of non-member parents, such events are, in at least some circumstances, reasonably *foreseeable*.

*State v. Cent. Council of Tlingit*, 371 P.3d 255, 272 (Alaska 2016)(emphasis added). This vague and undefined "foreseeability" analysis breezily found that the choice to bring a child into the world inevitably means a father should foresee he could be summoned into tribal court. What *is* certainly just as foreseeable is that the *state* in

which he resided would have presumptive right to establish a support order over him. And it isn't just that the tribal court is one that the non-member has "limited contacts" with—it is one that is foreign to him, where he can't vote, and can't appeal his support order to the state appellate courts. These concerns were given short shrift in *Cent. Council.*

Tix argues that McGowan's "significant contacts" *are* relevant in determining whether she consented to jurisdiction, protesting that the case upon which McGowan relies to reject a contacts test, *Duro v. Reina,* 495 U.S. 676, 683, 110 S. Ct. 2053, 2058 (1990), was superseded by Congress in the so-called "Duro-fix" which redefined "inherent tribal authority" to include the power to persecute non-member Indians. Appellee Br. at 40. In fact, the Supreme Court invited Congress to change the federal statutes defining "inherent authority" if it wished to extend criminal prosecutorial over non-member Indians. As the Court said, "*Duro* itself anticipated change by inviting interested parties to "address the problem [to] Congress." 495 U.S., at 698, 109 L. Ed. 2d 693, 110 S. Ct. 2053. *United States v. Lara*, 541 U.S. 193, 206-07, 124 S. Ct. 1628, 1637 (2004). So when Congress redefined "inherent power" it did nothing to change the federal common law principles by which the Supreme Court

defined the limits of inherent tribal power. *Duro* is still good law in its rejection of a contacts test, if not its ultimate holding.

Moreover, and to the point of this case, Congress has limited the exercise of "inherent power of tribes to *territorial limits* of "Indian Country." See 25 U.S.C.S. § 1301 (LexisNexis, Lexis Advance through Public Law 119-5, approved April 10, 2025). Had Congress intended to expand on the territorial limits of tribal authority, it would have done so. This result seriously undermines the reasoning of *Cent. Council* and its application here.

Nor can it be argued that Congress failed to define the limits of inherent tribal power in the Alaskan Villages to which *Cent. Council's* holding applies. For in the Violence Against Women Reauthorization Act of 2022, Congress again amended federal law (the Indian Civil Rights Act) to recognize the inherent tribal power of Alaskan Villages to prosecute non-Indians *within the territorial limits of the village*. See 25 U.S.C.S. § 1305 (LexisNexis, Lexis Advance through Public Law 119-5, approved April 10, 2025). ("Congress recognizes and affirms the inherent authority of any Indian tribe occupying a Village in the State to exercise criminal and *civil* jurisdiction over all Indians present in the

Village."). And with regard to non-Indians, Congress established a special pilot criminal prosecution program to test prosecution of non-Indians for domestic violence crimes—but only within the territorial limits of the Village:

> (d) Pilot program for special Tribal criminal jurisdiction over persons who are not Indians.
>> (1) Establishment. Subject to title II of Public Law 90-284 (25 U.S.C. 1301 et seq.) (commonly known as the "Indian Civil Rights Act of 1968"), there is established a pilot program under which the Attorney General, subject to paragraph (5), shall designate not more than 5 Indian tribes per calendar year as participating Tribes to exercise the special Tribal criminal jurisdiction described in paragraph (6) over *all persons present in the Village of the Indian tribe.*

25 U.S.C.S. § 1305 (LexisNexis, Lexis Advance through Public Law 119-5, approved April 10, 2025)(emphasis added).[3]

Thus VAWA casts the holding of *Cent. Council* – a state court decision not binding on this Court – in serious doubt, and no doubt it puts in grave doubt any arguments that tribes possess inherent power in off-reservation contexts. Congress and the Supreme Court are in accord on this point:

---

[3]

https://www.congress.gov/crs_external_products/R/PDF/R47570/R47570.4.pdf

A tribe may also retain inherent power to exercise civil authority over the conduct of *non-Indians on fee lands within its reservation* when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana v. United States*, 450 U.S. 544, 565-66, 101 S. Ct. 1245, 1258 (1981). Thus McGowan does not herein address the argument in depth, raised for the first time on appeal, that the second *Montana* exception is applicable in off-reservation contexts.

As *Montana* and its progeny recognize, Congress has the right and duty to address the contours of tribal jurisdiction. In fact, it has done so in the context of child custody proceedings by passing the Indian Child Welfare Act of 1978. There, it confronted the question of what types of "custody proceedings" should be in the exclusive or concurrent jurisdiction of the tribe, and which in the state courts. It expressly reserved to the tribes exclusive jurisdiction over "child custody proceedings" where the child was domiciled on the reservation. 25 U.S.C. § 1903 (1)(defining "child custody proceeding"); 25 U.S.C. § 1911 (a)(exclusive jurisdiction defined); 25 U.S.C. § 1911(b)(concurrent state-tribal jurisdiction and right to transfer to tribal court). Significantly, when given the opportunity to regulate precisely the kind of custody now

before the court—a child custody proceeding between parents—Congress excluded them from ICWA. See 25 U.S.C. 1901 (1) (excluding from ICWA "An award of custody of the Indian child to one of the parents including, but not limited to, an award in a divorce proceeding"); 25 C.F.R. § 23.103 (Lexis Advance through the May 22, 2025 issue of the Federal Register) (ICWA inapplicable to divorce proceedings). Even if ICWA *had* included divorce proceedings, *any* parent would still have the right to an absolute veto of a transfer of the case from state to tribal jurisdiction. 25 U.S.C. § 1911 (b), a right denied to McGowan in this case. Indeed, if these types of proceedings were so integral to the protection of the health and welfare of the tribe, Congress would have included them within ICWA's ambit. The fact that it does not forcefully rebuts claims that *Montana's* second exception applies, whether on the reservation of not.

## III.  Rule 19 Does Not Require Dismissal

The question on appeal is whether the tribal court had jurisdiction over the parties' dissolution. Contrary to the arguments of Appellee and the several amici, the Supreme Court has routinely determined tribal court jurisdiction without a tribe as a party, and the same can be

accomplished here. The Prairie Island Indian Community is not a necessary party under Rule 19.

A. <u>The Tribal Court Is Not a Necessary Party Under Rule 19(A)</u>

Whether a tribal court has adjudicative authority over nonmembers is inherently a federal question. *Plains Commerce Bank v. Long Family Land and Cattle Co., Inc.*, 554 U.S. 316, 324 (2008) (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) and *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 852–853, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). If the tribal court is found to lack such jurisdiction, any judgment as to the nonmember is necessarily null and void. *Plains Commerce*, 554 U.S. at 324.

The federal question before this Court is whether the Prairie Island Indian Community Tribal Court has jurisdiction to adjudicate a divorce between a tribal member and a nonmember, where the parties resided off-reservation and the events giving rise to the dispute occurred entirely outside tribal lands. This is a pure question of federal law under *Montana v. United States*, 450 U.S. 544 (1981), and *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845 (1985). The federal court is empowered

to resolve that question without the presence of the tribal court, because neither the tribe nor the tribal court are required parties.

Under Rule 19(a), a person 'shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties.' Fed.R.Civ.P. 19(a)(1). Subsection '(a)(1) requires joinder only when the absence of the unjoined party prevents complete relief among the current parties… The focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person.'" *Gwartz v. Jefferson Mem. Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994) (quoting *LLC Corp. v. Pension Benefit Guar. Corp.*, 703 F.2d 301, 305 (8th Cir. 1983)). Here, the question presented is a question of federal law, and the parties have advanced arguments for and against the jurisdiction of the tribal court. This Court can provide complete relief of the issues.

### 1. This Court Can Provide Complete Relief

Under Rule 19, a nonparty is indispensable to an action if (1) the nonparty is necessary; (2) the nonparty cannot be joined; and (3) the action cannot continue in equity and good conscience without the nonparty. *U.S. ex rel. Steele v. Turn Key Gaming, Inc.,* 135 F.3d 1249,

1251 (8th Cir. 1998) (citing *Pembina Treaty Comm. V. Lujan*, 980 F.2d 543, 544-45 (8th Cir. 1992).

Federal courts routinely determine jurisdiction of tribal courts without the tribe or tribal court as a party. *Strate v. A-1 Contractors*, 520 U.S. 438 (1997) (determining that tribal courts lack jurisdiction over civil disputes between nonmembers arising on state-maintained public highways within a reservation); *Nevada v. Hicks*, 533 U.S. 353 (2001) (tribal courts do not have jurisdiction over state officials for actions taken in their official capacity on tribal land, particularly when enforcing state law). The same here.

In particular, *Plains Commerce* confirms that the mere presence of tribal interests or the assertion of jurisdiction by a tribal court does not prevent federal judicial review. Dismissal based on Rule 19 effectively insulates tribal courts from federal review of their jurisdictional parameters whenever they claim sovereign immunity — an outcome that the Supreme Court has never endorsed and that directly undermines the core holding of *Plains Commerce*.

In *Plains Commerce*, the Supreme Court reaffirmed that tribal civil authority over nonmembers is presumptively invalid, and can only be

sustained under one of *Montana*'s two narrow exceptions. There, the Court invalidated tribal court jurisdiction over a nonmember's land sale, even when the subject was tribal land previously owned by tribal members, because mere connections to tribal members or interests are insufficient to support jurisdiction. "[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Plains Commerce*, 554 U.S. at 328. Noteworthy, *Plains Commerce* did not have a tribal community as a party, but had two amicus briefs.

## 2. *The Community is Not Impacted by the Resolution*

A tribal court exercising jurisdiction in a dissolution proceeding over a nonmember that does not live on the reservation and has not lived on the reservation has no effect on the tribal court. The tribe does not suffer any real injury – they continue to distribute their funds to Tix just as they have before and will continue to do so.

Tix seeks to make the question bigger than it is. The question is not what to do with the Tribal gaming distribution. The question is what to do with *Tix's* assets in a dissolution. Every month, Tix will have received his payments from the tribe; the money is then his to pay his dissolution obligations, just as a salary from an employer would count towards his

obligations. While it is true that state courts have no authority over the payment of gaming funds prior to the distribution of the gaming funds, Courts around the country have routinely found that once distributions of tribal money have been made to the tribal members, it's the member's money. The distribution of a tribal member's assets does not affect the tribe in any way. For example, in *In re Marriage of Jacobsen*, the California Court of Appeals discussed a dissolution involving an enrolled member of the Santa Ynez Band of Chumash Indians who received a per capita distribution in accordance with the approved revenue allocation plan. *In re Marriage of Jacobsen*, 18 Cal. Rptr. 3d 162, 164 (Cal. App. 4th 2004). The enrolled member cited both Tribal Resolutions and custom and tradition that per capita distributions not be provided to nontribal members for spousal support, and argued on appeal that the court did not possess jurisdiction to order spousal support. *Id.* at 164-65. The California Court of Appeals stated:

> Of importance here is that the family law court did not order the Tribe to satisfy Maria's obligation of temporary spousal support. Facially, the support orders also are independent of and unrelated to any particular source of funds that may be used to satisfy them. (*In re Marriage of Purnel, supra*, 52 Cal.App.4th 527, 540, 60 Cal.Rptr.2d 667.) Furthermore, once Maria deposited her tribal distribution in a bank account or a securities account, for example, "the money involved lost its

identity as immune Indian property." (*Id.*, at p. 541, 60 Cal.Rptr.2d 667.)

*Id.* at 167-68.

The question is not how to distribute the Tribal gaming money. Once this court rules that McGowan did not submit to jurisdiction of the tribal court, and that the tribal court does not have jurisdiction over her, the question for the state court will be how to distribute the parties' personal assets fairly, and in a way that will satisfy the strong public policy of maintaining standards and living conditions. The Minnesota Court of Appeals found gambling payments received from the Shakopee Mdewakanton Sioux (Dakota) Community were part of the marital estate without intervention of the Community. *Zander v. Zander*, 720 N.W.2d 360, 369 (Minn. App. 2006). The Reservation is not an indispensable party. If the Tribal Court does not have jurisdiction, the tribe will continue to make payments to Tix just as they did before. And Tix will have to abide by whatever the order is from the state court in their dissolution proceeding. Nothing more, and nothing less. "The touchstone of the Rule 19 analysis in this case is whether 'meaningful relief' is available to the Plaintiffs." *Wilwal v. Nielsen*, 346 F.Supp.3d 1290, 1309

(D. Minn. 2018). The Tribal Court is not a necessary party to provide complete relief.

### 3. The Tribal Community is Not a Necessary Party

Even if it is determined the Community has a legally protected interest, an absent party with legally protected interest is still not a necessary party if (1) the interests of the existing parties are such that they would undoubtedly make all of the nonparty's arguments; (2) the existing parties are willing and able to make such arguments"'; and (3) the nonparty cannot provide any necessary element to the proceedings that the existing parties would omit. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992); *see Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1154 (9th Cir. 1998); *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996). "If the nonparties' interests are adequately represented by a party, the suit will not impede or impair the nonparties' interests, and therefore the nonparties will not be considered 'necessary.'" *Id.* at 1351. However, if any significant conflict exists between the interest of a party and the interest of the nonparty, representation is not adequate, and a court must declare the nonparty

necessary. *See Cherokee Nation v. Babbitt*, 117 F.3d 1489, 1497 (D.C. Cir. 1997) (stating that, although the interests of the absent tribe and the United States are currently the same, the United States has previously reversed its position and could do so again, that the United States does not have to appeal any unfavorable decision, and that, as a nonparty, the absent tribe has no right to appeal).

This result occurs frequently in the Rule 19 context. *See e.g. Salt River Project Agricultural Improvement & Power District v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012) (finding that the defendants adequately represented the Navajo Nation's interests in the action and reversing the district court ruling that the tribe was a necessary party under Rule 19).

Here, importantly, the tribe's interests are adequately represented by a party. Appellee shares the same arguments and advocates the same resolution as the tribe would. This does not require any sort of analysis, as we only need compare the brief of Appellee and the amicus brief submitted by the tribe. See Appellee Brief at pp. 52-54 (arguing for affirmation of dismissal because the Community is a required party under Rule 19); also Brief of Amici Curiae Prairie Island Indian Community, et al., pp. 21-27 (arguing for affirmation of the dismissal

because the Community and Tribal Court are required parties under Rule 19). There are multiple additional amici who have filed briefs advocating various points in support of the tribal court having jurisdiction. Having the tribe itself as a named party would not add to the discussion, it would simply reiterate the same positions already advocated by the other seven parties, including the named Appellee. The Tribe's arguments are advanced here by multiple parties – and the Tribe itself. "In the instant case, however, the Tribe unequivocally agrees with Steele that the temporary contracts are invalid." *U.S. ex rel. Steele v. Turn Key Gaming, Inc.,* 135 F.3d 1249, 1252 (8th Cir. 1998). The Community is not a necessary party under the Rule 19 test.

The relief sought by Appellant — a declaration that the tribal court lacks jurisdiction — does not subject the tribal court to liability or conflicting legal duties. A ruling against jurisdiction would bind the parties and govern future proceedings, satisfying the Rule 19 standard without requiring joinder of the tribal court.

### 4. There Would Only be One Result, Leaving Nothing Inconsistent

Appellee argues he will be subject to inconsistent obligations if the tribal court is determined not to have jurisdiction. But that is

inconsistent with what the effect would be on the tribal court order; it would be null and void. There would be no inconsistency, as the parties would litigate their dissolution proceedings in state court. There would be no operative order at the end of this federal proceeding, and at the end of their dissolution proceedings there would be a single operative order governing the parties. This argument holds no water.

B. Even If the Community Was a Necessary Party, the Case Should Proceed Under Rule 19(b)

Assuming arguendo that the tribal court were a necessary party, dismissal would still be inappropriate under Rule 19(b). The Supreme Court has long emphasized the federal judiciary's responsibility to delineate the limits of tribal court jurisdiction. For example, *National Farmers*, *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473 (1999), and *Strate v. A-1 Contractors*, 520 U.S. 438 (1997), each reflect that federal courts must not abdicate their duty to resolve jurisdictional questions merely because a tribal entity is not present in the case.

> Broadly speaking, Rule 19 requires the joinder of parties necessary for the fair and complete resolution of the case; when joinder of such a party is not feasible, however, 'the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.

*Fort Yates Public Sch. Dist. #4 v. Murphy*, 786 F.3d 662, 671 (8th Cir. 2015) (citing Fed.R.Civ.P. 19(b)).

Rule 19(b) identifies several non-exclusive factors to help guide this inquiry, including (1) the extent to which a judgment might prejudice the absent party or existing parties; (2) whether such prejudice could be lessened or avoided by protective provisions, shaping the relief, or other measures; (3) whether a judgment would be adequate; and (4) whether the plaintiff would have an adequate alternative remedy in the case of dismissal. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 862 (2008) (listing the factors and stating those listed in Rule 19(b) are not exclusive). "[T]he determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations." *Id.* at 862-63. see also *Fort Yates Pub. Sch. Dist. No. 4 v. Murphy*, 786 F.3d 662, 671 (8th Cir. 2015) (describing the Rule 19 inquiry as "a highly-practical, fact-based endeavor" (citation omitted)); *Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015) ("The Rule 19 inquiry is a context sensitive one which may vary from case to case.").

Appellant exhausted her remedies at the Tribal Court before filing the federal action in the Court below. The Prairie Island Indian Community Tribal Court has been heard on its opinion on its jurisdiction through the ruling issued by its highest court of appeal. The Community itself is an amicus – along with several other tribes – and has submitted its own brief.

If the case was dismissed on Rule 19 grounds, the parties – these same parties who submitted briefing – would go through the same procedure again. Appellant would add the tribe as a party and refile her complaint. There would be cross motions for judgment on the pleadings. The district court would rule. And we would end up back in this Court with the same briefing in two years, while a dissolution remains unresolved for the parties and their children.

The Prairie Island Indian Community is not a necessary party under Rule 19. The issue of whether a tribal court can exercise jurisdiction over a divorce involving a nonmember spouse living off-reservation falls squarely within the federal courts' jurisdiction under *National Farmers* and is foreclosed by *Plains Commerce Bank*. The

presence of the tribal court is not required to afford complete relief, and its interests are fully represented by Appellee.

## CONCLUSION

For the above-stated reasons, Appellant respectfully requests that the Eighth Circuit Court of Appeals reverse the order granting summary judgment for Tix and find the tribal court orders dissolving her marriage are null and void for lack of jurisdiction over her as a non-member.

Respectfully submitted,

Dated: May 23, 2025

**FIDDLER OSBAND FLYNN LLC**

By: /s/ Mark D. Fiddler
Mark D. Fiddler (#197853)
12800 Whitewater Drive, Suite 100
Minnetonka, MN 55343
Tel: (612) 822-4095
mark@fiddlerosband.com

and

Rolf T. Fiebiger (#391138)
FIEBIGER LAW, LLC
6800 France Ave S., Suite 190
Edina, MN 55435
Telephone: 612.888.6084
rolf@fiebigerlaw.com

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

The above signed hereby certify that this Reply Brief conforms to the to the requirements of the applicable rules for a brief, is produced with a proportional font, Century Schoolbook, 14 point, and the length of this document is 6,113 words. This document was prepared using Microsoft Word for Mac, Version 16.87.